# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KYAW ZAW NYUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1152 (JDB)** |
| | ) | |
| **KENNETH Y. TOMLINSON,** | ) | |
| **Chairman, Broadcasting Board** | ) | |
| **of Governors,** | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, Kenneth Y. Tomlinson, Chairman, Broadcasting Board of Governors, by undersigned counsel, respectfully moves the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing plaintiff's Complaint on the grounds that the Court lacks subject matter jurisdiction, and plaintiff has failed to state a claim upon which relief can be granted. In the alternative, defendant moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting defendant's motion for summary judgment on the grounds that no genuine issue of material fact exists, and Defendant is entitled to judgment as a matter of law.

In support of this Motion, Defendant respectfully submits the attached Memorandum of Points and Authorities with Exhibits attached thereto, a Statement of Material Facts Not in Genuine Dispute, and a proposed Order.

Respectfully submitted,


 /s/
JEFFERY A. TAYLOR, D.C. BAR #498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KYAW ZAW NYUNT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 06-1152 (JDB)** |
| | ) |
| **KENNETH Y. TOMLINSON,** | ) |
| **Chairman, Broadcasting Board** | ) |
| **of Governors,** | ) |
| **Defendant.** | ) |
| _____ | ) |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE AND RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Local Rules 7(h) and 56.1, Defendant submits the following Statement of Material Facts Not in Genuine Dispute:

1. Plaintiff, Kyaw Zaw Nyunt, is a United States citizen of Burmese national origin. Exhibit A (Complaint of Discrimination).

2. Plaintiff is an International Radio Broadcaster, GS-11, with the International Broadcasting Bureau, Voice of America, East Asia and Pacific Division, Burmese Service with the Broadcasting Board of Governors ("BBG"). Exhibit B at p. 1 (Plaintiff's Optional Application for Federal Employment-OF 612).

3. He has held that position since October of 1999. See id.

4. In the spring of 2003, the BBG announced two vacancies for the position of International Broadcaster, GS-12, under Vacancy Announcement Number M/P 03-26 and Vacancy Announcement M/P 03-29. See Exhibit C (Vacancy Announcement Number M/P 03-26) and D (Vacancy Announcement Number M/P 03-29).

5.  U San Myint, a United States citizen of Burmese national origin, was selected for the position of International Broadcaster, GS-12, under Vacancy Announcement Number M/P 03-26. Exhibit E (U San Myint's Optional Application for Federal Employment - OF 612) and Exhibit F (Selectee Information).

6.  At the time of the non-selection, U San Myint was sixty-nine years of age, and plaintiff was fifty-eight years of age.  Exhibits F and A.

7.  Lwin Htun Than was selected for the position of International Broadcaster, GS-12, under Vacancy Announcement Number M/P 03-29.  Exhibit F.

8.  Lwin Htun Than is of Burmese national origin, but is not a United States citizen.  See Exhibit G at p. 2 (Job Application of Lwin Htun Than).

9.  At the time of his selection, Lwin Than was thirty-eight years of age, and plaintiff was fifty-eight years of age.  See id. and Exhibit A.

10. Plaintiff failed to exhaust on his race and retaliation claims.  See Exhibit A; Complaint ¶¶ 49-51.

11. Plaintiff failed to bring the following claims in the administrative remedy phase:

a-  he was given a written admonishment, see Complaint at ¶ 30;
b-  restrictive conditions in use of sick leave were imposed upon him, see

Complaint at ¶¶ 31, 32; and has failed to exhaust these claims.

Pursuant to Local Rules 7(h) and 56.1, Defendant submits the following Response to Plaintiff's Statement of Material Facts as to Which There is No Dispute.  ("Plaintiff's Statement").  As detailed in defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, dismissal or summary judgment is appropriate in the case because no *material* facts

2

are *genuinely* disputed. The defendant does not, however, agree with all the assertions contained in the plaintiff's statement of facts, or that all such assertions are material to the resolution of the case. In particular, defendant does not agree with plaintiff's arguments and conclusions of law (including arguments and legal conclusions presented as facts), plaintiff's characterizations of the evidence, or the headings contained in the plaintiff's statement of facts, except to the extent that they are actually supported by the facts of record or facts that are appropriate subjects of judicial notice. Nevertheless, defendant believes that none of the parties' disagreements involve a genuine dispute of *material* fact, and that the issues presented by the case may and should be resolved as a matter of law. See Fed. R. Civ. P. 56(c).

Subject to the foregoing, the Agency hereby responds to plaintiff's numbered statement of material facts as follows:

1. The first six sentences are admitted to the extent that plaintiff's application for Vacancy Announcement No. M/P 03-29 mentions these experiences. Exhibit H (Plaintiff's Optional Application for Federal Employment). The sixth sentence is admitted to the extent that plaintiff's application for Vacancy Announcement No. M/P 03-29 reflects that he is a United States citizen. Id. The defendant has insufficient information regarding the year in which he was naturalized.

2. Undisputed.

3. Undisputed.

4. Admitted to the extent that plaintiff's name was placed on the certificate of eligibles and forwarded to the selecting official for consideration. Exhibit I at pp. 1-2 (IBB/Delegated Competitive Examining Unit, Certificate of Eligibles).

5. Admitted to the extent that plaintiff was listed with the highest point total on the

3

certificate of eligibles for citizen applicants.  Id.

6.  Undisputed.

7.  The first sentence is admitted to the extent that the curriculum vitae submitted by Lwin Htun Than in March 2003 listed his "present address" as Chiang Mai, Thailand.  Exhibit g. The second sentence is undisputed.

8.  Disputed.  This paragraph is plaintiff's characterization of the selection process and consists of his contentions and argument.  Agency rules dictate that selections of non-citizen applicants must be justified.  As such, the selecting official authored a justification memorandum that specifically stated the merits of Mr. Than, the non-citizen selectee, and why the official found that Mr. Than was better qualified. Exhibit J (Justification Memorandum).

9.  Disputed.  This paragraph is plaintiff's characterization of the selection process and consists of his contentions and argument.  The defendant, by virtue of its authority to hire non-citizens and its Manual of Administration,  selected Mr. Than for the vacancy in question.  Id.; see Exhibit K (Manual of Administration, Part V-A, Section 820).

10.  Disputed.  This paragraph consists of plaintiff's contentions and argument.  The Agency has reasonably interpreted the ambiguous term "suitably qualified" in its authority to hire non-citizens as requiring a successful non-citizen candidate to be better qualified than a U.S. citizen applicant.  This interpretation is consistent with the guidance received from both the House of Representatives' Committee on Foreign Affairs and the Senate Committee on Foreign Relations in 1982.  H.R. REP. NO. 97-480, at 2-4; S. REP. NO. 97-429, at 2.

11.  The first sentence is undisputed.  The second sentence is admitted to the extent that Mr. Than was promoted to service chief in May 2005, but the remainder of the sentence is

4

plaintiff's characterization of Mr Than's duties and consists of his contentions and argument.

<u>See</u> Exhibit L (Notification of Personnel Action, Lwin Htun Than).  As the Service Chief, Mr.

Than determines what stories are broadcast and whom should broadcast them.  He is also subject

to the supervision of a Division Director who is a United States citizen, and other senior

managers who are United States citizens.  Plus, the Service's broadcasting activities are subject

to the Voice of America's charter, which mandates balanced and comprehensive coverage of the

news.  <u>See</u> P.L. 94-350.

Respectfully submitted,


/s/
JEFFERY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KYAW ZAW NYUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1152 (JDB) |
| | ) | |
| KENNETH Y. TOMLINSON, | ) | |
| Chairman, Broadcasting Board | ) | |
| of Governors, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiff, Kyaw Zaw Nyunt, an International Radio Broadcaster, GS-11, with the

Broadcasting Board of Governors, International Broadcasting Bureau, Voice of America, East

Asia and Pacific Division, Burmese Service ("BBG" of the "Agency"), brings this suit "to

redress discrimination based on age, race, national origin and retaliation, and to obtain review of

unauthorized agency action."  Complaint at p. 1.  Plaintiff claims that his rights have been

violated under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil

Rights Act ("Title VII"), the Broadcasting Board of Governors governing law and charter, the

Administrative Procedure Act ("APA"), and the law of the District of Columbia.[1]  See id.

Specifically, plaintiff claims the defendant discriminated against him when plaintiff was

not selected for the position of International Broadcaster, GS-12, under Vacancy Announcement

---

[1]In Count 3 of the Complaint, plaintiff also claims that his rights were violated under 42
U.S.C. §§ 1981 and 1983.  Complaint at ¶ 47.

Number M/P 03-26, and under Vacancy Announcement Number M/P 03-29.  See id.  In addition, he claims that he was retaliated against "for his exercise of his right to seek relief from discrimination" in violation of Title VII and District of Columbia law.  Id. at ¶¶ 29, 51.  Finally, plaintiff claims that Title VII, the Administrative Procedure Act, 22 U.S.C. § 1474 and BBG organic law were violated when the Agency selected a non-citizen to fill Vacancy Announcement M/P 03-29 rather than plaintiff, who is a United States citizen.  See id. at ¶ 55.

As demonstrated below, plaintiff's claims of discrimination based upon race and retaliation must be dismissed for lack of subject matter jurisdiction because plaintiff has failed to exhaust his administrative remedies.  See Fed. R. Civ. P. 12(b)(1).  Plaintiff's claims of discrimination based upon age and national origin must be dismissed because plaintiff has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In the alternative, defendant's motion for summary judgment should be granted on these claims because no genuine issue of material facts exists, and defendant is entitled to judgment as a matter of law.

Finally, plaintiff's claims that his rights have been violated under the Administrative Procedure Act, 22 U.S.C. § 1474, BBG organic law, and the law of the District of Columbia should be dismissed because this Court lacks subject matter jurisdiction over the matter, and plaintiff has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12 (b)(1) and 12(b)(6).

## II.  FACTUAL BACKGROUND

Plaintiff is a United States citizen of Burmese national origin.  Exhibit A.  He is employed by the Broadcasting Board of Governors as an International Radio Broadcaster, GS-11.  Id.  He has held that position since October of 1999.  See id.  In the spring of 2003, the BBG

announced two vacancies for the position of International Broadcaster, GS-12, under Vacancy

Announcement Number M/P 03-26 and Vacancy Announcement M/P 03-29.  Exhibits C and D.

Plaintiff was not selected for either position.  See Exhibit F.  At the time of the non-selections,

plaintiff was fifty-eight years of age.  Exhibit A.

### A. Vacancy Announcement Number M/P 03-26

Vacancy Announcement M/P 03-26, GS-12, opened on March 10, 2003 and closed on

March 21, 2003.  On the Vacancy Announcement, the duties of the position were listed as

follows:

> Under the general . . . guidance of the Service Chief, incumbent serves as a
> broadcaster/writer for the Burmese Service.  Incumbent conducts interviews,
> reports on special events, writes and voices programs, in addition to translating
> the most difficult English texts into Burmese.  Incumbent files news stories in
> both Burmese and English in both script and voice form.

> He/she conceives, prepares, and presents one or more regular programs or
> programs a week.  The incumbent is fully responsible for preparing program(s) for
> final review, including conceptualizing, and selecting materials to be used,
> deciding how to line up integrate the program, how to approach complex issues to
> provide journalistic balance, and to craft a well-paced, listenable program.  The
> incumbent researches and evaluates a wide range of source material, in English or
> in Burmese.  Incumbent originates and voices live and recorded material for
> airshow, mainly in Burmese, but also in English as required.

Exhibit C at p. 1.  The Specialized Experience was listed as follows:

> Experience in the use of the broadcast language in radio broadcasting, print, TV,
> or film journalism.  Work must have including writing, editing, and/or voicing
> broadcast material from English into the broadcast language.  This experience
> must have provided a comprehensive knowledge of the history, customs, and
> psychology of the target area people, as well as their political, economic, cultural,
> and social life.

Id.  The Knowledge, Skills and Abilities were as follows:

    1. Thorough knowledge of the professional techniques of broadcast journalism

required for conducting interviews and the ability to maintain and establish effective working relationships.

2. Broadcast writing/editorial skills to write balanced, accurate, comprehensive reportage and feature material of a complex and sensitive nature, which is often difficult to convey.

3. Demonstrated experience working as a reporter/editor for on (sic) of the major international broadcaster or another mainstream journalistic entity.

4. Demonstrated organizational management skills in order to operate independently, and effectively.

5. Demonstrated skill in voice material for radio broadcast.

Id.

The Certificate of Eligibles for Vacancy Announcement M/P 03-26 indicated that eight people applied for the position. Exhibit M at pp. 1-3, IBB/Delegated Competitive Examining Unit Certificate of Eligibles. Three of the applicants were citizens, and five were non-citizens. Id. The three citizens were plaintiff, San Myint, and U Chit Oo. Id. at 1-2. The non-citizens were Win Aung, Kyaw Zan Than, May Khin, San San Tin, Sander Wynn. Id. at 3. On May 1, 2003, it was determined that plaintiff and U Chit Oo were eligible for promotion under Vacancy Announcement Number M/P 03-26. Exhibit M at p. 4 (Memorandum, dated May 1, 2003, Promotion Certificate). The memorandum also indicated that interviews for the position were optional. Id.

Interviews for Vacancy Announcement M/P 03-26 took place in June of 2003. See Exhibit N (Sworn Affidavit of Irena Burgener). After the interviews, U San Myint, a United States citizen, was selected for the position. Exhibit F.

**B. Vacancy Announcement Number M/P 03-29**

The duties for the position under Vacancy Announcement for M/P 03-29, GS-12, were listed as follows:

4

Under the general . . . guidance of the Service Chief, incumbent serves as a broadcaster/writer for the Burmese Service. Incumbent conducts interviews, reports on special events, writes and voices programs, in addition to translating the most difficult English texts into Burmese. Incumbent files news stories in both Burmese and English in both script and voice form.

He/she conceives, prepares, and presents one or more regular programs or programs a week. The incumbent is fully responsible for preparing program(s) for final review, including conceptualizing, and selecting materials to be used, deciding how to line up integrate the program, how to approach complex issues to provide journalistic balance, and to craft a well-paced, listenable program. The incumbent researches and evaluates a wide range of source material, in English or in Burmese. Incumbent originates and voices live and recorded material for airshow, mainly in Burmese, but also in English as required.

Incumbent will be responsible for designing and managing attractive visual elements on the VOA, Burmese language web site.

The position will require that the incumbent be able occasionally to travel and work for extended periods away from the Washington, DC headquarters. The incumbent must therefore have demonstrated experience working independently, preferably including being responsible for management of aspects of a professional news operation.

He/she will be responsible for journalism-related training, including developing curriculum in news writing and reporting as well as how to organize a news service.

The Specialized Experience was listed as follows:

Experience in the use of the broadcast language in radio broadcasting, print, TV, or film journalism. Experience working as a reporter/editor for one of the major international broadcasters or another mainstream journalistic entity i.e. Radio France Internationale, the BBC, etc. Work must have including writing, editing, and/or voicing broadcast material from English into the broadcast language. This experience must have provided a comprehensive knowledge of the history, customs, and psychology of the target area people, as well as their political, economic, cultural, and social life.

Exhibit D at p. 3. The Knowledge, Skills and Abilities were listed as follows:

1. Thorough knowledge of journalism and of Internet broadcasting principles, practices, and methods in order to maintain the Burmese website.

2. Thorough knowledge of writing/editing principles and practices and the ability to conceive and develop radio and Internet programs.
3. Demonstrated experience working as a reporter/editor for on (sic) of the major international broadcaster or another mainstream journalistic entity.
4. Demonstrated experience managing a professional news operation. Experience must be in the area of developing plans, procedures, and instruction for formulating and managing the operation.
5. Demonstrated organizational management skills in order to operated independently and effectively.

Id.

The Certificate of Eligibles indicated that six people were considered for Vacancy Announcement M/P 03-29. Exhibit I at pp. 1-2 (IBB/Delegated Competitive Examining Unit, Certificate of Eligibles). Three of the applicants were citizens, and three of the applicants were non-citizens. Id. The three citizens were plaintiff, San Myint, and Khin M. Soe. See id. at 2. The non-citizens applicants for the position were Lwin Htun Than, Nyi Nyi and Win Aung. See id. at 1. By memorandum dated May 20, 2003, it was determined that plaintiff was eligible for promotion for this position. Exhibit I at p. 3 (Memorandum dated May 20, 2003, Promotion Certificate for GS-12, Vacancy Announcement Number M/P 03-29). This memorandum also indicated that interviews for the position were optional. Id. at 3. On June 16, 2003, Lwin Htun Than was selected for the position. See Exhibit I at p 1.

## III. LEGAL STANDARDS

### A. Motions to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the court's jurisdiction." Gardner v. U.S., No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001) (quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987)); see also 4 Wright & Miller: Federal

6

Prac. & Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")  A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint. Herbert v. Nat'l Acad. of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; see also Cureton v. U.S. Marshal Serv., 322 F. Supp.2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).  "At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - - its very power to hear the case."  Mortensen v. First Fed. Sav. and Loan Assn, 549 F.2d 884, 891 (3rd Cir. 1977).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is appropriate if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle [plaintiff] to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46, (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  In considering a motion to dismiss under Rule 12(b)(6), the Court must view facts alleged in the complaint in the light most favorable to the plaintiff.  Conley, 355 U.S. at 45-46; Nix v. Hoke, 139 F.Supp.2d 125 (D.D.C. 2001), (citing Weyrich v. The New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001)); see, Slaby v. Fairbridge, 3 F.Supp.2d 22, 27 (D.D.C. 1998).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."

7

Akintomide v. United States, 99-MS-0055, 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000)

(citing Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996);

Kowal v. MCI Comm. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### B. **Motions for Summary Judgment**

Summary judgment is appropriate when the record shows that no genuine issue exists as

to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27

F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists,

the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most

favorable to the non-moving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587.  The mere

existence of a factual dispute, however, will not defeat summary judgment.  The non-moving

party must show that the dispute is genuine and material to the case.  That is, the factual dispute

must be capable of affecting the substantive outcome of the case and supported by sufficiently

admissible evidence that a reasonable trier of fact could find for the non-moving party.

Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir.

1987).  If the evidence favoring the non-moving party is "merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. (citing Anderson, 477 U.S. at 249-50).  "[A]

complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment

as a matter of law.'"  Celotex Corp., 477 U.S. at 323 (citations omitted).

Moreover, mere conclusory allegations are not enough to survive a motion for summary judgment.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  As the Supreme Court has instructed:  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## IV.  LEGAL ARGUMENT

### A.  Plaintiff Has Failed to Exhaust Administrative Remedies Under Title VII

On November 5, 2003, plaintiff filed a formal Equal Employment Opportunity ("EEO") Complaint of Discrimination with the Agency's Office of Civil Rights ("OCR").  Exhibit A.  In that complaint, plaintiff stated he was discriminated against based upon his national origin and age.[2]  Id.  By letter dated November 5, 2003, the OCR acknowledged receipt of plaintiff's EEO complaint.  Exhibit O (Correspondence dated November 5, 2003, from Office of Civil Rights to plaintiff).  By letter dated November 20, 2003, the OCR advised plaintiff that the following claim had been accepted for processing:

Whether you were discriminated against based on your National Origin (Burmese-

---

[2]On the Office of Civil Rights Initial Contact Sheet, plaintiff also indicated that the bases of discrimination were national origin and age.  See Exhibit Q (Initial Contact Sheet dated and signed by plaintiff on July 11, 2003).

American citizen), and Age (DOB: . . .), when as you claim:

On September 22, 2003, you learned that you were not selected for the position of International Broadcaster (Burmese), GS-1001-12, advertised under Vacancy Announcement No. M/P-03-29, and the selectee was a younger Burmese non-citizen. On June 16, 2003, you were also not selected for Vacancy Announcement No. M/P-03-26.

Exhibit P (Correspondence dated November 20, 2003, from Office of Civil Rights to

Plaintiff).

The letter also indicated the following:

If you believe that the claim in your complaint has not be correctly identified, please notify me in writing within **10 calendar days** after your receipt of this letter, specifying why you believe the claim has not been correctly identified. If you fail to respond during the specified time frame, the accepted claim will be investigated as identified.

(Emphasis in original)  Id.  Plaintiff did not object to the identification of the claims accepted for

processing.

When plaintiff filed suit in United States District Court, on October 23, 2006, he alleged

employment discrimination "based on age, *race*, national origin and *retaliation* . . . ." Complaint

at p. 1 (italics added).  He also alleged that he was given a written admonishment, see Complaint

at ¶ 30, and that restrictive conditions in use of sick leave were imposed upon him. See

Complaint at ¶¶ 31, 32.  Plaintiff failed to address the race and retaliation claims as well as the

claims regarding the written admonishment and use of sick leave at the administrative level.

Therefore, he cannot prevail on these claims.

A federal employee such as plaintiff may assert a Title VII complaint in federal court only

after a timely complaint has been presented to the agency involved.  See 29 C.F.R. §

1614.105(a); Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976); Siegel v. Kreps, 654 F.2d

773, 776 (D.C. Cir. 1981); Smith v. Dalton, 971 F.Supp. 1, 4 (D.D.C. 1997); see Park v. Howard

Univ, 71 F.3d 904, 905 (D.D.C. 1995), cert. denied, 519 U.S. 811 (1996)(plaintiff must first

exhaust administrative remedies by contacting an EEO counselor withing 45 days of the alleged

discriminatory events and subsequently filing an administrative complaint).  See Bowden v.

United States, 106 F.3d 433, 437-38 (D.C. Cir. 1997); Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir.

1985); see Nat'l R.R Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  The purpose of the

exhaustion requirement in Title VII cases is to provide the agency with notice of the claim of

alleged discrimination, to provide the agency with an opportunity to rectify any wrong through

the conciliation process or through administrative relief, and "to ensure that the federal courts are

burdened only when reasonably necessary."  Brown v. Marsh, 777 F.2d at 14; see also Brown v.

Gen. Servs. Admin., 425 U.S. at 833-35; see also Sommatino v. United States, 255 F.3d 704, 710

(9th Cir 2001).  Because conciliation and intra-agency resolution, rather than litigation, are the

objectives of Title VII, the courts have found exhaustion of statutory administrative remedies a

prerequisite to judicial relief.  Siegel v. Kreps, 654 F.2d at 776-77; Battle v. Rubin, 121 F.

Supp.2d 4, 7 (D.D.C. 2000) ("a party must timely file all applicable administrative complaints

and appeals in order to bring a claim in federal court"); Williams v. Munoz, 106 F. Supp.2d 40,

42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII

action").  As the Supreme Court reiterated in Morgan, "'strict adherence to the procedural

requirements specified by the legislature is the best guarantee of evenhanded administration of

the law.'"  536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).

     Here, plaintiff seeks to present claims of discrimination based upon race and retaliation as

well as claims regarding a written admonishment and use of sick leave in this federal court

proceeding.  However, these claims were never presented to the agency at the administrative

level.  The Agency was not given the opportunity to handle these claims internally.  Therefore,

plaintiff is not now permitted to raise the matters before the District Court.  See Park, 71 F.3d at

906 (plaintiff's judicial complaint of hostile work environment dismissed where administrative

charge complained only of sex and race discrimination in connection with selection).  As

exhaustion of administrative remedies is mandatory, plaintiff's additional claims must be

dismissed.  See Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 332 (D.C. Cir. 1992); Kizas v.

Webster, 707 F.2d 524, 543 (D.C. Cir.1983)).[3]

## B.  Plaintiff's Claim Based Upon a Violation of District of Columbia Law Should be Dismissed

Plaintiff claims that the actions of the Agency "have violated [his] rights under . . . the

law of the District of Columbia."  Complaint at p. 1.  However, plaintiff fails to state the

particular law to which he refers.  See id.  Plaintiff also states that the alleged "retaliation is in

violation of . . . District of Columbia law."  Id. at ¶ 1.

Title 2, District of Columbia Code, Section 1402.11(a)(1), of the District of Columbia

Human Rights Act, provides that it shall be an unlawful discriminatory practice for an employer

to "discriminate against any individual, with respect to his compensation, terms, conditions, or

privileges of employment, including promotion" "for a discriminatory reason based upon the

---

[3]In plaintiff's Complaint, he also indicates that he was harassed.  See Complaint at ¶ 50. To the extent that plaintiff is making a claim of the existence of a hostile work environment, that claim also was not presented to the agency at the administrative level.  Plaintiff is not permitted to raise the matter now before the District Court.  See Bryant v. Bell Atlantic Md., Inc., 288 F. 3d 124, 132 (4th Cir. 2002) ("the EEOC charge defines the scope of the plaintiff's right to institute a civil suit") (internal quotations and citations omitted). Because plaintiff failed to exhaust his administrative remedies regarding a hostile work environment claim, any such claim must fail.

12

actual or perceived: race, color, religion, national origin, sex, age, marital status. . . of any

individual[.]"

Sovereign immunity bars all suits against the United States except in accordance with the

explicit terms of the statutory waiver of such immunity.  Cox v. Sec'y of Labor, 739 F.Supp. 29,

30 (D.D.C. 1990); see also United States v. Testan, 424 U.S. 392, 399 (1976); United States v.

Mitchell, 445 U.S. 535, 538 (1980); Kline v. Republic of El Salvador, 603 F.Supp. 1313, 1316

(D.D.C. 1985).  That a plaintiff may have named a federal employee as a defendant in his official

capacity does not operate to evade the immunity of the sovereign.  The federal government has

waived sovereign immunity for claims arising under Title VII, the Privacy Act, and the Federal

Tort Claims Act ("FTCA").  See Parker v. Califano, 561 F.2d 320, 325 (D.C. Cir. 1977) (Title

VII "specifically waives sovereign immunity."); Cummings v. Dep't of Navy, 279 F.3d 1051,

1055 (D.C. Cir. 2002) (in the Privacy Act, there is an "unequivocally expressed waiver" of

sovereign immunity); FDIC v. Meyer, 510 U.S. 471, 475-76 (the FTCA "waived the sovereign

immunity of the United States for certain torts committed by federal employees).

Plaintiff is suing Kenneth Y. Tomlinson, Chairman of the BBG, in his official capacity.

See Complaint at p. 1.  Therefore, plaintiff's claims are deemed to be against the United States,

and he must demonstrate a statutory waiver of immunity for his claims to proceed.  However,

plaintiff cannot demonstrate a waiver of sovereign immunity for his claim based upon a violation

of District of Columbia law.  See Benham v. Rice, 2005 WL 691871 *3 and n.5 (D.D.C. March

24, 2005) (plaintiff failed to meet her burden of establishing subject matter jurisdiction for her

claim charging discrimination pursuant to the District of Columbia Human Rights Act because

Title VII provides the exclusive remedy for claims of discrimination in federal employment)

13

(citing <u>Brown v. Gen. Serv. Admin.</u>, 425 U.S. 820, 835 (1976)); <u>see</u> <u>also</u> <u>Boyd v. O'Neill</u>, 273 F.Supp.2d 92, 95 (D.D.C. 2003).  Therefore, plaintiff's claim that his rights have been violated under District of Columbia law must fail.

### C.  Plaintiff's Allegation that 42 U.S.C. § 1981 et seq. and 42 U.S.C. § 1983 were Violated By His Non-Promotion Must Fail

Plaintiff claims that the "actions of BBG have violated [his] rights under . . . 42 U.S.C. 1981 et seq."  Complaint at p. 1.  He also alleges that "[t]he BBG willfully and in disregard of plaintiff's rights under 42 U.S.C. [S]ection 1981 and 1983 failed to promote [him] . . . ." <u>Id.</u> at ¶ 47.

Title 42, United States Code, Section 1983(a) provides that:

all persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings . . . .

Title 42, United States Code Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

This Circuit has held that, in a Title VII action, "[t]here is no avenue through which a plaintiff can assert claims under 42 U.S.C. § 1981 . . . ." <u>Richardson v. Wiley</u>, 569 F.2d 140, 141 (D.C. Cir.1977) (precluding § 1981 discrimination action by federal employee covered by Title VII).  In addition, "[t]o state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting <u>under color of state law</u>."  <u>West v.</u>

14

<u>Atkins,</u> 487 U.S. 42, 48 (1988) (emphasis added).  Here, plaintiff has not alleged the violation of

a right secured by the Constitution.  <u>See</u> <u>Burrell v. Oklahoma Dept. of Transp.</u>, 28 F.3d 112(10th

Cir. 1994)(unpublished opinion), citing <u>Doyle v. Oklahoma Bar Ass'n</u>, 998 F.2d 1559, 1567

(10th Cir.1993).  Further, the defendant named here was not acting "under color of state law,"

but under the authority of federal law.  <u>See</u> <u>Abramson v. Bennett,</u> 707 F. Supp. 13, 16 (D.D.C.

1989), aff'd 889 F. 2d 291 (D.C. Cir. 1989) ("Section 1983 only applies to state officials acting

under color of state law" not federal officials acting under color of federal law); <u>Heck v.</u>

<u>Humphrey,</u> 512 U.S. 477 (1994) (stating that section 1983 provides access to a federal forum for

claims of unconstitutional treatment at the hands of <u>state</u> <u>officials</u>)(emphasis added).

Accordingly, plaintiff's claims under Sections 1981 and 1983 must be dismissed for failure to

state a claim upon which relief may be granted.

### D.  Plaintiff's Claim that the Agency Lacks Authority to Hire a Non-Citizen When Qualified Citizens are Available is Incorrect

In Plaintiff's Motion for Partial Summary Judgment, he states that the Agency's

interpretation of 22 U.S.C. § 1474(1) "to permit employment of aliens for vacancies where there

are suitably qualified US citizens, like Plaintiff, available for the position is unlawful."

Plaintiff's Motion for Partial Summary Judgment ("Pltf's Motion") at p. 3.  In his Complaint,

plaintiff argues that the hiring of a non-citizen over him violated the Administrative Procedures

Act ("APA"), 5 U.S.C. § 706.  <u>See</u> Complaint at ¶ 55.  Plaintiff's arguments are without merit.

The Administrative Procedure Act authorizes courts to "hold unlawful and set aside

agency action" that is contrary to statute.  <u>See</u> 5 U.S.C. § 706(2)(C).  When courts review legal

challenges to an agency's interpretation of its authorizing statute, they must use the two-part test

adopted by the Supreme Court in <u>Chevron, USA, Inc. v. Natural Res. Def. Counsel, Inc.</u>, 467

U.S. 837, 842-43 (1984).

Under the first part of this test, the court must determine whether Congress has directly spoken to the precise question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. Under second part of the test, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. In reviewing an agency's interpretation of its authority under a statute it administers, the court will uphold that interpretation as long as it is a reasonable interpretation of the statute. See EPA v. Nat'l Crushed Stone Ass'n, 449 U.S. 64, 83 (1980)("When construing statutes, we show 'great deference to the interpretation given the statute by the officers or agency charged with its administration.'"); Vill. of Bergen v. FERC, 33 F.3d 1385, 1389 (D.C. Cir. 1994).

In Chevron, the Supreme Court held that ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps, the Court explained, involves difficult policy choices that agencies are better equipped to make than courts. 467 U.S. at 865-866. If a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation. Id. at 843-844.

     a. First Step of the Chevron Test

Title 22, United States Code, Section 1474 states that the Agency may employ non-citizens when "suitably qualified United States citizens are not available." Plaintiff argues that

this language clearly evinces Congressional intent to equate "suitably qualified" with "minimally qualified." Pltf's Motion at p. 9. The Agency contends, however, that the term "suitably qualified" is ambiguous and, therefore, the analysis must proceed to the second part of the Chevron test.

The plaintiff, in support of his position that the language is sufficiently clear, posits several arguments. First, he states that if the terms here are construed in accordance with their ordinary meaning, "suitably qualified" must be read to mean a United States citizen who meets the "minimum qualifications" for the position. Pltf's Motion at p. 9. However, the dictionary indicates that "suitable" is defined as "similar, matching." Webster's Ninth New Collegiate Dictionary 1180 (9th ed. 1984). As a result, if the statute is read with the term's "ordinary meaning" in mind, it allows for the employment of non-citizens so long as there are no "similar" or "matching" qualified candidates.

This examination of the "ordinary meaning" of the terms also negates the plaintiff's contention that if a "highly qualified" citizen candidate was competing with a "superbly qualified" non-citizen candidate, the "highly qualified" citizen candidate would still be deemed "suitably qualified." Pltf's Motion at p. 9. Based upon the definition above, the term "suitable" is one that, by its definition, requires reference to relative qualifications.

Plaintiff seeks further support for his position regarding the definition of "suitably qualified" by looking to the statements made by Representative Mundt in 1947. Pltf's Motion at p. 10. While Rep. Mundt did say that "[i]f we are going to interpret America abroad it should be done by Americans," the statement was made within the context of his worry that aliens had been "indiscriminately employed in this service, and I surely agree that this is the last place in the

17

world that aliens should be indiscriminately employed."  Hearings before House Committee on

Foreign Relations on HR 3342, 80th Cong., 1st Session, May 13, 14, 16, 17, 20, 1947 at p. 188.

  The Agency has adhered to this guidance and has not "indiscriminately employed" aliens.

It has taken steps to ensure that when a non-citizen is hired over a citizen there is a proper

justification for the selection.  Exhibit K (Manual of Administration, Part V-A, Section 820).

Further, it is unclear how a warning regarding the "indiscriminate" employment of non-citizens is

of use in equating the term "suitably qualified" with "minimally qualified."  Instead, Rep.

Mundt's statement acknowledges that aliens may be employed so long as their skills have been

properly vetted.

  For further interpretive guidance, the plaintiff looks to the legislative history

accompanying the 1979 and 1990 amendments to 22 U.S.C. § 1474.  Pltf's Motion at pp. 10-11.

These histories do not in any way evidence a clear Congressional intent to equate "suitably

qualified" with "minimally qualified."  Instead, the history associated with the 1979 amendment

explains that an expansion of the duties that aliens could perform was necessary because it is

"frequently impossible to find American citizens who can do the supervisory-level work of

preparation or production of programs. . . ."  S. REP. NO. 96-116, at 20.  The 1990 amendment

to 22 U.S.C. § 1474 involved a change whereby non-citizen employees could no longer be

removed from a position simply because a U.S. citizen with equal or better qualifications was

available to fill it.  The legislative history explained that the law sought to "revise the existing

preference for hiring U.S. citizens to apply it only at times when positions are open, rather than

whenever such positions exist."  H.R. REP. NO. 101-343, at 108.  Neither of these amendments

definitively instruct the Agency to equate "suitably qualified" with "minimally qualified."

18

Therefore, they are of little use as proof of an unambiguously expressed Congressional intent required by the first step of the Chevron test.

       b.  Second Step of the Chevron Test

Because the intent of Congress has not been unambiguously expressed, the analysis must now proceed to the second step of the Chevron test to discern whether the Agency's interpretation is based on a reasonable construction of the statute. Chevron, at 843.

In 1982, the Agency approached Congress and sought a legislative clarification of the definition of "suitably qualified" in 22 U.S.C. § 1474. H.R. REP. NO. 97-480, at 2-4; S. REP. NO. 97-429, at 2. The Senate Foreign Relations Committee stated, in part:

> It is the view of the Committee that the phrase "suitably qualified," if interpreted in a sensible and intelligent manner, is more than adequate to protect the staffing needs of the Voice of America. The problem with respect to employment of foreign nationals was created by an incorrect administrative interpretation of existing law and should be remedied through administrative, not legislative action. The Committee views the Administration's requested remedy on this issue as unnecessary and urges the Agency to correct its hiring policy accordingly.

> S. REP. NO. 97-429, at 2.

The House Foreign Affairs Committee, when approached regarding the same issue, stated:

> The term should be interpreted to mean, in effect, that the person who best fulfills the job requirements would be hired, and that only in those cases where the American and the foreign national are equally qualified should preference be given to an American.... A suitably qualified person does not mean one who is qualified under minimum standards, but a person whose skills match the demands of the position as well as the demands of the Agency.

> H.R. REP. NO. 97-480, at 2-4

After receiving these responses, the Agency began interpreting this provision as "equally or better qualified." The fact that the Agency sought and was provided guidance regarding the interpretation of 22 U.S.C. § 1474 strongly weighs against the plaintiff's position that

Congressional intent regarding the definition of "suitably qualified" was unambiguously expressed.  Moreover, the Agency's interpretation of 22 U.S.C. § 1474 is reasonable given the directives from the House and Senate Committees.

Plaintiff's attempts to downplay the importance of these directives is meritless.  For instance, he points to the fact that amendments were not made to 22 U.S.C. § 1474 even though they were requested by the Agency.  A reading of the Reports reveals, however, that the Senate Committee told the Agency that an amendment was "unnecessary" and should be "remedied through administrative, not legislative action."  S. REP. NO. 97-429, at 2.  The fact that the Agency dutifully followed this advice makes its interpretation all the more reasonable. Therefore, it cannot be found that the Agency's actions in hiring Mr. Than violated 22 U.S.C. § 1474 or the APA.

Plaintiff's claim that the Agency lacks authority to promote non-citizens to supervisory positions is similarly unfounded.  See Complaint at ¶ 57.  Title 22, United States Code, Section 1474 does not contain a grade limitation or any similar constraints on the Agency's authority to employ non-citizens in supervisory positions.  Rather, the Agency, taking into consideration the preference for U.S. citizens, ensures that any non-citizens hired into positions are indeed better qualified than any U.S. citizen applicants.  As such, specific procedures must be followed whenever employing a non-citizen in a supervisory position.  These procedures are outlined in the Agency's Manual of Administration, Part V-A, Section 820.  See Exhibit K.  Again, neither the statute nor the APA were violated when Mr. Than was promoted.

While, in his Complaint, plaintiff argues that the promotion of Mr. Than violates Title VII, this argument also is meritless.  Plaintiff has not alleged that he applied for the supervisory

position that Mr. Than holds.  Therefore, plaintiff has not suffered an adverse employment action

which can be addressed under Title VII.  See Brown v. Brody, 199 F.3d 466, 452 (D.C. Cir.

1999)(To establish a prima facie case of discrimination based upon national origin under Title

VII, the employee must demonstrate, by a preponderance of the evidence, that: (1) he was a

member of a protected group; (2) an adverse employment action took place; and (3) the

unfavorable action gave rise to an inference of discrimination).  Generally speaking, an employee

suffers and adverse employment action within the meaning of Title VII when he suffers some

personal loss or harm with respect to "a term, condition, or privilege of employment." Von

Gunten v. Md, 243 F.3d 858, 866 (4th Cir. 2001).  Plaintiff has not so suffered.

Moreover, Mr. Than became a supervisor well after the 2003 non-selection decision

about which plaintiff complains.  Whether or not Mr. Htun became a supervisor in May of 2005

is irrelevant to the gravamen of plaintiff's Complaint - - whether or not plaintiff was

discriminated against under Title VII in 2003 when he was not selected for Vacancy

Announcement Number M/P 03-29.  Hence, plaintiff's claim of "unauthorized supervision,"

Complaint at p. 9, is without merit, and should be dismissed.

### E.  Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based Upon National Origin

Title VII of the Civil Rights Act of 1964, as amended, prohibits employment

discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. 2000e-2,

2000e-3.  The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792,

803-805 (1973), governs the analysis of plaintiff's discrimination claims based upon national

origin.  Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).  Under this test, the plaintiff has

the initial burden of proving by a preponderance of the evidence a prima facie case of

discrimination.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

   To establish a prima facie case of discrimination based upon national origin under Title VII, the employee must demonstrate, by a preponderance of the evidence, that: (1) he was a member of a protected group; (2) an adverse employment action took place; and (3) the unfavorable action gave rise to an inference of discrimination, as when the applicant is passed over for a position that he is qualified for in favor of another applicant who is not a member of a protected class.  Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006) (citing Brown v. Brody, 199 F.3d at 452.  See Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1150 (D.C. Cir. 2004); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); See Mastro v. PEPCO, 447 F.3d 843, 850-51 (D.C. Cir. 2006).

   Plaintiff can establish the first prong of the prima facie test because, based upon his national origin - - Burmese - - he is a member of a protected class.  Plaintiff can establish the second prong of the test because he suffered adverse action when he was not selected for the position of International Broadcaster, GS-12, offered through Vacancy Announcement M/P 03-26, GS-12, or through Vacancy Announcement M/P 03-29, GS-12.

   However, while plaintiff can establish the first two prongs of the prima facie test, he cannot establish the third prong which requires that the unfavorable action gave rise to an inference of discrimination based upon national origin.  See Bundy v. Jackson, 641 F.2d 934, 951 (D.C. Cir.1981) (stating, in failure-to-promote case, that plaintiff meets burden if she shows "that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied").

1)  Vacancy Announcement Number M/P 03-26

The selectee for Vacancy Announcement Number M/P 03-26 was U San Myint.  See Exhibit F.  U San Myint's national origin is Burmese.  See id.  Because plaintiff's national origin is also Burmese, plaintiff cannot establish that he was passed over for the position in favor of an applicant who was not a member of his protected class.  Therefore, with respect to Vacancy Announcement Number M/P 03-26, plaintiff cannot establish the third prong of the prima facie test of discrimination based upon national origin.

2)  Vacancy Announcement Number M/P 03-29

The selectee for Vacancy Announcement Number M/P 03-29 was Lwin Htun Than.  See Exhibit F.  Lwin Htun Than's national origin is Burmese.  See Exhibit G.  Because plaintiff's national origin is also Burmese, he cannot establish that he was passed over for the position in favor of an applicant who was not a member of plaintiff's protected class.  Therefore, with respect to Vacancy Announcement Number M/P 03-29, plaintiff cannot establish the third prong of the prima facie test of discrimination based upon national origin.

Because plaintiff has failed to establish the third of the prima facie case of discrimination based upon national origin with respect to both Vacancy Announcement Number M/P 03-26 and Vacancy Announcement Number M/P 03-29, plaintiff's claim must fail.[4]

---

[4]Assuming arguendo that plaintiff could establish a prima facie case of discrimination based upon national origin, the Agency had legitimate non-discriminatory reasons for not selecting plaintiff for either of the positions, and plaintiff cannot establish that the agency's decisions were a pretext for discrimination.  See infra at pp. 25-41.

**F.  Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based Upon Age**

The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et

seq. (the "ADEA"), provides, in relevant part, that:

> [all] personnel actions affecting employees or applicants for employment who are
> at least 40 years of age ... in executive agencies ... shall be made free from any
> discrimination based on age.

The burden-shifting framework of McDonnell Douglas, 411 U.S. at 803-805, also

governs the analysis of plaintiff's discrimination claim based upon age.  Cones v. Shalala, 199

F.3d at 516; see  Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999) (employing

McDonnell-Douglas test for ADEA claim).  Under this test, the plaintiff has the initial burden of

proving by a preponderance of the evidence a prima facie case of discrimination.  Burdine, 450

U.S. at 252-53.  To establish a prima facie case of discrimination based upon age under the

ADEA, plaintiff must demonstrate that he:  1) belongs to a protected age group; 2) was qualified

for and applied for the position; 3) was considered and denied the position; and 4) that a younger

employee was selected to fill the position.  Marshall v. Shalala, 16 F. Supp.2d 16 (D.D.C. 1998).

In a case brought under the ADEA, the plaintiff has the ultimate burden of proving that age was a

determining factor in the challenged employment decision.  Miller v. Lyng, 660 F. Supp. 1375,

1376 (D.D.C.1987) (citing Krodel v. Young, 748 F.2d 701, 706 (D.C. Cir.1984)).  The plaintiff

must demonstrate that "'but for' the discriminatory motive, the [plaintiff] would have been hired,

promoted, or retained."  Id.

Plaintiff can establish the first prong of the prima facie test because, at the time of the

non-selection, he was fifty-eight years of age.  Exhibit A.  Plaintiff also can satisfy the second

and third elements of the prima facie test, because he was qualified and applied for both of the

24

positions, and was considered and denied the positions.  However, with respect to Vacancy Announcement Number M/P 03-26, plaintiff cannot satisfy the fourth element of the prima facie test.

> a.  Vacancy Announcement Number M/P 03-26

The selectee for Vacancy Announcement Number M/P 03-29 was U San Myint.  See Exhibit F.  At the time of his selection, U San Myint was sixty-nine years of age.  See Exhibit R (Notification of Personnel Action - U San Myint).  Therefore, Mr. Myint was eleven years older than plaintiff at the time, and plaintiff cannot establish that a younger employee was selected to fill the position.  Hence, with respect to Vacancy Announcement Number M/P 03-26, plaintiff cannot establish the fourth prong of the prima facie test of discrimination based upon age.  As his claim is meritless, it must be dismissed.

> b.  Vacancy Announcement Number M/P 03-29

The selectee for Vacancy Announcement Number M/P 03-29 was Lwin Htun Than.  See Exhibit F.  At the time of his selection, Lwin Htun Than was thirty-eight years of age.  See Exhibit H.  Therefore, plaintiff can establish that a younger employee was selected to fill the position.  Hence, with respect to Vacancy Announcement Number M/P 03-29, plaintiff can establish each of the prongs of the prima facie test of discrimination based upon age.   However, as indicated infra there were legitimate, non-discriminatory reasons for the selection of Lwin Htun Than, and plaintiff cannot establish that the reasons for Mr. Than's selection were a pretext for discrimination.

## G.  The Agency's Actions Were Taken for Legitimate, Non-Discriminatory Reasons

Once a claimant establishes a prima facie case of discrimination, the burden then shifts to

25

the Agency to articulate a legitimate, non-discriminatory reason for its actions.  See

McDonnell Douglas, 411 U.S. at 802 (holding that burden shifts to defendant to articulate

legitimate, nondiscriminatory reasons for its challenged actions, once plaintiff makes out a prima

facie case of discrimination).  See Burdine, 450 U.S. at 252-53; Harding v. Gray, 9 F.3d 150, 152

(D.C. Cir. 1993).  The second step of the McDonnell Douglas framework requires the agency

simply to articulate that it took its challenged actions for a legitimate, nondiscriminatory reasons.

Bd. of Trustees of Keene State Coll. v. Sweeney, 439 U.S. 29 (1978); St. Mary's Honor Center v.

Hicks, 509 U.S. 502 (1993).  The Agency's explanation of its legitimate reasons must be "clear

and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to

demonstrate pretext."  Burdine, 450 U.S. at 258.  Indeed, defendant's only burden is to come

forward with a non-discriminatory reason for its actions, thereby rebutting the presumption raised

by plaintiff's prima facie case.  Burdine, 450 U.S. at 253-55.

      The defendant's burden is one of production, not proof.  "[I]n producing

nondiscriminatory reasons for its challenged action, the employer is not obligated to support

these reasons with objective evidence sufficient to satisfy the preponderance of the evidence

standard."  Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998).  The ultimate

burden of proving intentional discrimination always rests with the plaintiff.  Fuentes v. Perskie,

32 F.3d 759, 763 (3d Cir. 1994); accord St. Mary's Honor Center, 509 U.S. at 511 (1993)

(holding that a complainant "at all times bears the ultimate burden of persuasion") (internal

quotation marks and citations omitted).  Thus, the defendant's burden is satisfied if it simply

explains what it has done or produces evidence of legitimate, nondiscriminatory reasons.  St.

Mary's Honor Center  v. Hicks, 509 U.S. 502 (1993).  A "subjective reason can be legally

sufficient, legitimate and nondiscriminatory if the [agency] articulates a clear and reasonably specific factual basis" for its subjective opinion. Bowdre v. Richardson, 131 F. Supp.2d 179, 188 (D.D.C. 2001).

Notably, a defendant is not required to prove that the Agency made the wisest choice, but only that the reasons for the decision were non-discriminatory. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986)(citing Burdine, 450 U.S. at 258-59). "Title VII, it bears repeating, does not authorize a federal court to become a super-personnel department that reexamines an entity's business decision." Barbour v. Browner , 181 F.3d 1342, 1346 (D.C. Cir. 1999) (internal quotation marks and citation omitted). Moreover, "the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment." St. Mary's Honor Center, 509 U.S. at 509. Thus, even if the plaintiff establishes a prima facie case, summary judgment is still available to the defendant if it sufficiently articulates a nondiscriminatory reason for the challenged action and the plaintiff fails to present objective evidence that undermines the defendant's proffered explanation for its actions. See Aka, 156 F.3d at 1289.

a. Vacancy Announcement Number M/P 03-26

As established supra pp. 21-25, plaintiff cannot establish a prima facie case of discrimination based upon national origin or age with respect to Vacancy Announcement Number M/P 03-26. The selectee, Mr. Myint, was of the same national origin as plaintiff. The selectee also was older than plaintiff. Therefore, it is clear that plaintiff's claims with respect to Vacancy Announcement Number M/P 03-26 are without merit and call for no further discussion. However, assuming arguendo that plaintiff could establish a prima facie case, the Agency had

legitimate, nondiscriminatory reasons for not selecting plaintiff for Vacancy Announcement Number M/P 03-26.

In his Complaint, plaintiff argues that the qualifications of the selectee "were substantially inferior to [his]."  Complaint at ¶ 16.  However, plaintiff is incorrect.  Mr. Myint was selected by a panel comprised of three individuals, Irena Burgener,[5] Bageshwar Verma,[6] and Khin Maung Htay.[7]  See Exhibits N, T and U.  Each panel member found that Mr. Myint was better qualified for the position.

On February 4, 2004, Irena Burgener provided a sworn affidavit.  Exhibit N at p. 3.  In that affidavit, Ms. Burgener indicated that she reviewed the application packets of all of the candidates for Vacancy Announcement Number M/P 03-26.  Id.  She rated U San Myint the highest and rated plaintiff third.  Id.  Ms. Bergener indicated, during the interview, Mr. Myint:

> was much more specific in his responses to various questions.  He had specific ideas about how he would change . . . certain aspects of the service.  He seemed to have generated more original materials/reports as opposed to just reporting or passing along news stories . . . generated by other news services.  His ability to

---

[5]Irena Burgener has been employed by the BBG for twenty-eight (28) years.  Exhibit N at p. 1.  At the time of the interview, she was the Special Events Coordinator for BBG's Voice of America WorldNet Television, GS-14.  Id.  Prior to that she was the Chief and Executive Producer for the Voice of America Program, "Talk to America."  Id.

[6]Bageshwar Verma has been employed by the BBG for twenty-two (22) years.  Exhibit S at p. 1 (Sworn Affidavit of Bageshwar Verma).  At the time of the interview, he was the senior most Program Review Analyst in the BBG International Broadcasting Bureau, Office of Program Review.  Id.  He held that position for ten (10) years.  Id.  Prior to that, he was the News and Current Affairs Editor in the Voice of America Hindi Service for ten (10) years.  Id.  Prior to that, he worked as an International Broadcaster at the British Broadcasting Corporation ("BBC") in London for seven and one-half (7½) years.  Id.

[7]At the time of the interview, Khin Maung Htay was the Chief of the BBG's Burmese Service.  Exhibit T (Sworn Affidavit of Khin Maung Htay).  Prior to this retirement, he had been employed with the Burmese Service for nearly twenty-four (24) years.  Id.

> speak and comprehend English seemed perfectly fine. I do not think that there
> was a considerable difference between him and [plaintiff]. In fact, Mr. Myint was
> very concise and to the point in his manner of speaking, which I though to be a
> good quality for a broadcaster.

Id. According to Ms. Burgener, after all of the interviews were completed, she gave Mr. Myint

the highest score. In addition, the panel discussed the applicants and Mr. Myint was the favorite.

"There was no discussion of . . . age, citizenship, national origin, etcetera." Id.

On February 2, 2004, Bageshwar Verma provided a sworn affidavit. See Exhibit S. In

that affidavit, he stated that he rated Mr. Myint as the best candidate. Id. Plaintiff was close

behind, but several factors swayed Mr. Verma to select Mr. Myint.

> First, his answers were direct and to the point. Mr. Nyunt's answers dragged on,
> and sometimes he lost me. Second, Mr. Myint had worked as a broadcaster and
> editor for most of his professional life, while I recall from Mr. Nyunt's resume he
> had initially worked for the BBC as a broadcaster in the 70s, then left
> broadcasting for over 25 years until he came to the VOA in 1998. As a result, Mr.
> Myint's experience as a broadcaster was longer and more in depth. Third, Mr.
> Myint gave a better account of himself during the interview with respect to the
> responsibilities and role of an editor in the Burmese service. Finally, as to the
> issue of whether Mr. Myint spoke or understood English better than Mr. Myint, I
> found them to be equal.

Id. at 2.

On January 22, 2004, Mr. Htay provided a sworn affidavit. See Exhibit T. In that

affidavit, he noted that Mr. Myint had "been an active journalist for over 30 years and in the

VOA Burmese Service for 10 years and longer than Mr. Nyunt on both counts." Id. at 2.[8] Mr.

Htay also stated that Mr. Myint was "a better and more experienced translator from English to

---

[8]At the time, U San Myint had been employed by the BBG as an International
Broadcaster, GS-11, since February of 1993, over ten years. See Exhibit E (U San Myint's
Optional Application for Federal Employment-OF 612). Plaintiff had been employed as an
International Radio Broadcaster, GS-11, since October 1999, less than four years. See Exhibit B

Burmese and his voicing skills [were] on par if not better than Mr. Nyunt." Id. at 3. In addition,

"[o]verall, [Mr. Nyunt's] responses were long-winded and he rambled on." Id. "On the whole,

the panel found Mr. Myint's answers to be crisp and succinct like a seasoned journalist." Id.

The entire panel believed that Mr. Myint was the best person for the position. See Exhibits T, N

and U. See Laboy v. O'Neill, 180 F. Supp.2d 18, 23 (D.D.C. 2001)(Courts have held that an

employer's articulated reasons may be subjective, and based on the supervisors' observations.);

Marshall v. Dist. of Columbia, Civ. A. No. 89-496, 1993 WL 468448 (selection based on

selecting official's observations of selectee is valid).

　　　While plaintiff may believe that he was the better qualified candidate, this does not

discredit the panelists' legitimate explanations for selecting Mr. Myint. See Hastie v. Henderson,

121 F.Supp.2d 72, 81 (D.D.C. 2000), aff'd sub nom., Hastie v. Potter, No. 00-5423, 2001 WL

793715, at *1 (D.C. Cir. June 28, 2001) (finding no genuine issue of material fact where the sole

evidence plaintiff provided was "her own self-serving and conclusory statement" that she was

more qualified). Cf. Waterhouse v. Dist. of Columbia, 124 F.Supp.2d 1, 7 (D.D.C. 2000), aff'd,

298 F.3d 989, 997 (D.C. Cir. 2002)(A "[p]laintiff cannot establish pretext simply based on [his]

own subjective assessment of [his] own performance, for plaintiff's perception of [himself], and

of [his] work performance, is not relevant. It is the perception of the decisionmaker which is

relevant."). Even assuming arguendo that plaintiff were more qualified, a court cannot infer

discriminatory intent absent a showing that plaintiff's qualifications were far superior to those of

Mr. Myint. See Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir.2003) (emphasis added). See

Vasilevsky v. Reno, 31 F.Supp.2d 143, 150 (D.D.C.1998)("It is the plaintiff's duty to put forth

evidence of discrimination, not to "quibble about the candidates' relative qualifications.")(citing

Skelton v. ACTION, 668 F.Supp. 25, 26 (D.D.C.1987), aff'd, No. 87-5353, 1988 WL 156306, at *1 (D.C. Cir. May 12, 1988).  Plaintiff cannot make that showing.

b.  Vacancy Announcement Number M/P 03-29

As established supra pp. 21-257, plaintiff cannot establish a prima facie case of discrimination based upon national origin with respect to Vacancy Announcement Number M/P 03-29, but can establish a prima facie case for discrimination based upon age.  However, the record establishes that the Agency had legitimate, nondiscriminatory reasons for not selecting plaintiff for Vacancy Announcement Number M/P 03-29.  Lwin Htun Than was clearly a superior candidate.

Lwin Htun Than graduated from the London School of Economics and Political Science.  See Exhibit G at p. 1.  He worked with the British Broadcasting Corporation for eleven (11) years.  See id.  While at the BBC, he worked as a part-time producer in the Burmese Section while he was a full-time undergraduate student.  See id.  He next became a Senior Producer, Duty Editor and Website Coordinator in the Burmese Section, World Service.  See id.  After that, Mr. Than became a Reporter with the Bangkok Bureau where he inter alia "[c]losely monitored the events in Burma . . . ."  See id.  He then advanced to a Regional Expert and Broadcast Journalist for BBC's World Service, working on "The World Today," for East Asia.  See id.  Mr. Than took a two year sabbatical from the BBC from May 2002 through March 2004 to become a Resident Journalist and Training Adviser where he "planned, budgeted, developed and implemented journalism curriculum," see id., in "reporting, interviewing, feature writing and analysis, newsroom organization and ethics of journalism[,]" id., for regional journalists, including reporters for the BBC, Voice of America, Democratic Voice of Burma and Radio Free Asia.  See

31

<u>id</u>.

In contrast, plaintiff worked for the BBC for a little over two and one half years.  Exhibit

B at p. 2.  He did so from May 1968 through November of 1971, over thirty years before the

selection decision about which he complains.  <u>See</u> <u>id</u>.  At the BBC, plaintiff held only the

position of International Radio Broadcaster (Burmese), and described his duties as "a full time

Announcer/Translator."  <u>Id</u>. at 5.  He "translat[ed] news and features from English into Burmese

and voic[ed] them on air.  [He] . . . also researched, drafted, edited, and presented interesting

programs on air."  <u>Id</u>.

On his application materials, plaintiff did not indicate what type of work he did from

November 1971 through December 1974.  <u>See</u> <u>id</u>.  However, from December 1974 though

December 1978, plaintiff was the Ministry of Foreign Affairs in Rangoon, Burma.  <u>See</u> <u>id</u>.  There

he "selected and analyzed the most important news from the daily broadcasts of the . . . VOA,

BBC, and FEBC[and], edited and submitted the analysis to the Minister for Foreign Affairs prior

to his morning meetings . . . ."  <u>Id</u>. at 6.  "[W]ith other staff members, [plaintiff also] prepared

press releases, notifications and other documents of the Ministry for publication."  <u>Id</u>.

Plaintiff did not indicate what type of work he did from December 1978 through May

1998.  <u>See</u> Exhibit B.  However, in May of 1998, plaintiff joined the Agency.  <u>See</u> <u>id</u>.  He worked

as an International Radio Broadcaster, GS-9, until September 1999.  <u>Id</u>. at 1.  In October 1999,

plaintiff became an International Radio Broadcaster, GS-11.  <u>Id</u>.

Subject matter experts ranked each of the applications that were received for Vacancy

Announcement Number 03-29.  <u>See</u> Exhibit U, Declaration of M. Laprell Murphy ("Murphy

Decl.") at ¶ 6.  These individuals were Vohaheng Chuon, Supervisory International Radio

Broadcaster (Khmer), GS-13/10; Peter Chen, Placement Coordinator (Chinese), GS-13; and

Eugene Nojek, Program Manager (East Asia), GS-13/10.  See Exhibit I at pp. 6, 8 and 9.  After

ranking each of the applicants on their Knowledge, Skills and Abilities, Chuon Vohaheng scored

Lwin Htun Than with thirty (30) total points, and wrote "Best candidate for the job" on the

Rating Form.  Id. at 5.  Ms. Vohaheng scored plaintiff with eighteen (18) total points.  Id.  Peter

Chen scored Lwin Htun Than with twenty-seven (27) total points, and plaintiff with twenty-four

(24) points.  See id at 6.  Eugene Nojek gave both Lwin Htun Than and plaintiff thirty (30)

points.  Id. at 7.  However, next to Lwin Htun Than's scoring Mr. Nojek wrote, "BBC experience

very substantial - like Sr. Editor here."  Id.  Moreover, on the Certificate of Eligibles, Lwin Htun

Than was rated the highest of all of the candidates, with a score of 99.  See Exhibit I at pp. 1-2, 4

(Tabulations Rating Sheet, Vacancy Announcement Number 03-29).  Plaintiff was rated the

second highest, with a score of 94.  Id. at 6.  Lwin Htun Than also received the highest score in

each of the Knowledge, Skill and Abilities categories rated.  Id. at 8.  He was tied with plaintiff

in one of these categories.  See id.

Mr. Htay, the Chief of the Service for which the selectee would work, made his selection

from the candidates.  Based upon his own assessment of the candidates qualifications, and from

"the Certificate of Eligibles that was sent to [him] by the Office of Personnel through the

Director of East Asia and Pacific Division," Mr. Htay selected Lwin Htun Than.  Exhibit T at p.

4.  See Tolson v. James, 315 F. Supp.2d 110, 117 (D.D.C.  2004)( "[a]n employer has discretion

to choose among qualified candidates for a position . . . and absent a demonstrably discriminatory

motive, an employer's personnel decision – such as the choice of relevant qualifications – simply

cannot be second-guessed.") (citing Fischbach v. District of Columbia Dep't of Corrections, 86

F.3d 1180, 1183 (D.C. Cir. 1996)).  Mr. Htay's selection was consistent with the subject matter

experts' ranking of the candidates.

On January 4, 2004, Mr. Htay provided a sworn affidavit about his selection.  In that

affidavit, he stated that Lwin Htun Than:

> was chosen because his experience was superior overall.  To cite a few, he has
> been a broadcast journalist with the BBC, London, since 1991.  He is experienced
> in field and internet-sourcing in reporting, web designing and web management
> work from 1995 to 1991 with the BBC Burmese Service, as well as Senior
> Producer and Duty Editor there for the same period. . . He has strong editing,
> journalism and leadership skills.  He has also accomplished many significant
> projects that include[] publishing translations from English to Burmese.  Mr.
> Nyunt has not the same amount of experience at the same level . . . .
>
> I selected Than Lwin Htun not because I did not want a U.S. citizen nor because
> he is younger than Mr. Nyunt.  Everybody in the Service was told from the outset
> that outside candidates would ALSO be considered for this job.

Exhibit T at pp. 4-5.  According to Mr. Htay, Lwin Htun Than's "experience was superior

overall."  Id. at 4.

After making his selection decision, Mr. Htay submitted, to senior management and the

Office of Personnel, a memorandum justifying his selection of Lwin Htun Than along with

supporting documentation.  See id. at 5.  "Senior management and the Office of Personnel

reviewed and approved [his selection]."  Id.  M. Laprell Murphy, Supervisory Human Resources

Specialist, approved the selection of Than Lwin Htun for the position.  See Exhibit U, Murphy

Decl. at ¶ 13.[9]

Clearly, Mr. Than was selected because he was, by far, a better-qualified candidate than

plaintiff.  This is the quintessential legitimate, non-discriminatory reason in a non-selection case.

---

[9]Ms Murphy is now the Agency's Director of Human Resources.  See Exhibit U, Murphy
Decl. at p. 1.

See Barnette v. Chertoff, 453 F.3d 513, 517 (D.C. Cir. 2006)(A reasonable jury can only infer discriminatory intent when an employer fails to select the "markedly" or "significantly" more qualified candidate.).  The decision to hire Mr. Than was in the best interest of the Agency. Moreover, the reasons for selecting Mr. Than were wholly unrelated to age or national origin.

### H.  Plaintiff Cannot Establish that the Agency' Explanations Were a Pretext for Discrimination

Clearly, the Agency established overwhelming evidence that it acted for legitimate, nondiscriminatory reasons in not selecting plaintiff for Vacancy Announcement Number M/P 03-26 or Vacancy Announcement Number M/P 03-29.  Under the McDonnell-Douglas framework then, this showing shifts the burden to plaintiff  to "demonstrate that the proffered reasons were not the true reason for the employment decision."  Burdine, 450 U.S. at 256.  The District of Columbia Circuit has emphasized that a court "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive."  Fishbach, 86 F.3d at 1183; see Marshall v. Fed. Express Corp.,130 F.2d 1095, 1100 (D.C. Cir. 1997); Mungin, 116 F.3d at 1556.  Rather, "[s]hort of finding that the employer's stated reason was indeed a pretext . . . the court must respect the employer's unfettered discretion to choose among qualified candidates."  Mungin, 116 F.3d at 1556 (quoting Fishbach, 86 F.3d at 1183).

In a non-selection case, pretext may be demonstrated by showing that the qualifications of the plaintiff are **far** superior to those of the selectee.  Bauer v. Bailar, 647 F.2d 1037, 1048 (10th Cir. 1981)(emphasis added).  See also Barnette, 453 F.3d at 517 (finding no evidence of pretext even where selectee had less supervisory experience over all.)  Only where a reasonable employer would have found plaintiff "**significantly better qualified**" can a fact finder infer that the employer consciously selected the less qualified applicant.  Carter v. George Washington

35

Univ., 387 F.3d 872, 881 (D.C. Cir. 2004)(emphasis added)(quoting Aka, 156 F.3d at 1294); see

Walker v. Dalton, 94 F. Supp.2d, 8, 16 (D.D.C. 2000) ("slight questions of comparative

qualifications do not warrant jury trial").

       In this context, in order to find evidence of pretext, the Court would have to be convinced

that the "disparities in qualifications must be of such weight and significance that no reasonable

person, in the exercise of impartial judgment, could have chosen the candidate selected over the

plaintiff for the job in question." Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004).

Essentially, in order to show pretext, plaintiff must show that defendant's reason for not selecting

him were a lie. Crim v. Bd. of Educ. of Cairo School Dist. No. 1, 147 F.3d 535 (7th Cir. 1998).

Merely casting doubt on an employer's stated reason for its employment decision is insufficient

to establish pretext. Id.; see Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 677 (7th

Cir.1997) ("[A] reason honestly described but poorly founded is not a pretext as that term is used

in the law of discrimination.")(quotations and citations omitted).

       Here, "[p]laintiff fail[ed] to present any evidence to show defendant's proffered reason[s]

for [not selecting him were] a lie. Plaintiff merely relies on his unfounded personal beliefs and

suppositions[, but] this is legally insufficient to establish pretext." Rozkowiak v. Baxter

Healthcare Corp., 1998 WL 422284, *5 (N.D. Ill. July 22, 1998) (citing Kizer v. Childrens'

Learning Ctr.,962 F.2d 608, 613 (7th Cir. 1992). See Saunders v. DiMario, No. 97-1002, 1998

WL 525798, at *4 (D.D.C. Aug. 14, 1998), aff'd, 194 F.3d 175 (D.C.Cir.1999) ("Plaintiff has

otherwise offered the type of self-serving allegations that are simply insufficient to establish

pretext."); Kariotis, 131 F.3d at 677(("rebuttal [of an employer's proffered reason for its action]

must include facts tending to show that the employer's reasons for some negative job action are

false, thereby implying (if not actually showing) that the real reason is illegal discrimination.")).

      a. <u>Vacancy Announcement Number 03-26</u>

In an apparent attempt to establish pretext, plaintiff argues that the selection panel was "not given standard instructions on interviews of candidates as required by agency procedures." Complaint at ¶ 19. However, "agency procedures do not require that standard instructions be given to interview panelists." Exhibit U, Murphy Decl. at ¶ 8. Moreover, each of the members of the selection panel had been employed by the BBG for over twenty-two (22) years and each held a supervisory position. <u>See</u> Exhibits N, T and U. Surely, whether or not standard instructions were given, each individual was familiar with what is required to identify an appropriate candidate for promotion. Most importantly, the record has established that each panel member's reasons for selecting Mr. Myint were not based upon national origin or age. In the final analysis, the selection panel believed that Mr. Myint was a better candidate for the position. Moreover, a failure to follow agency procedures - - that applied equally to all applicants - - is not evidence of discrimination against plaintiff. <u>See</u> <u>Fischbach</u>, 86 F.3d at 1183-84 ("Even if a court suspects that a job applicant 'was victimized by [] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'") (citing <u>Milton v. Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982); Mungin, 116 F.3d at 1556 (employer's failure to follow own regulations and procedures alone not sufficient to support conclusion that explanation was pretextual).

In another apparent attempt to establish pretext, plaintiff also complains that "the certificate of ratings to the selecting official . . . showed Plaintiff's rating as 89, the same rating assigned to the selectee . . . ." Complaint at ¶ 18. Plaintiff appears to be alleging that this

affected his non-selection for the position.  Id.  Although this in no way can establish that the selection of Mr. Myint was based upon a discriminatory reason, this allegation will be addressed.

Plaintiff made the Certificate of Eligible applicants for Vacancy Announcement Number M/P 03-26 because, by virtue of his rating, he was ranked among the top three applicants. Exhibit U, Murphy Decl. at ¶ 5.  "Pursuant to 5 C.F.R. § 332.404, commonly referred to as the 'Rule of Three,' a selection [of the individual to fill the position] must be made from among the three highest-ranked applicants on the certificate of eligibles."  Id.  The score for plaintiff that was mistakenly indicated on the Certificate of Eligibles was 89 instead of 96.  Id. at 7 and Exhibit M at p. 1.  However, because plaintiff's score was still one of the top three of the applicants, the incorrect score had no effect.  See id.  Plaintiff was still selected to be interviewed for the position.  The interviews of the three highest rank applicants were conducted and plaintiff performed poorly at his interview.  See Exhibits T and U.  Therefore, plaintiff was not selected for the position.  Nevertheless, plaintiff's score as reflected on the Certificate of Eligibles did not effect his ability to be fairly considered for the position.  Exhibit U, Murphy Decl. at ¶ 7. Notably, if the score on the Certificate of Eligibles determined who ultimately would be selected for this position, U Chit Oo would have been the selectee because his score of 97.00 was higher than that of plaintiff and Mr. Myint.  See Exhibit M at p. 1.[10]  Clearly, the agency has established legitimate, non-discriminatory reasons for selecting Mr. Myint for Vacancy Announcement Number 03-26, and plaintiff has not established pretext.

---

[10]Plaintiff also states that the file was later corrected to reflect his score of 96.00.  See Complaint at ¶ 18.  However, again, this score had no effect on the ultimate selection process and whether or not the file was updated for accuracy, and whether or not plaintiff was informed of such, is irrelevant.

b.  Vacancy Announcement Number 03-29

In an apparent attempt to establish pretext, plaintiff argues that Lwin Htun Than was "preselected" for Vacancy Announcement Number M/P 03-29.  See Complaint at ¶ 14 (the "duties and qualifications in VA 03-29 were established for a preselected candidate, Mr. Than Lwin Htun."); Id. at ¶ 20 ("the requirements of the position and the crediting plan were skewed to meet the experience of Mr. Than.)  However, there is no evidence to support this conclusory allegation.  In order to establish that Lwin Htun Than was "preselected" for the Vacancy Announcement, plaintiff states that Vacancy Announcement Number M/P 03-29 did not have a voicing requirement "even though the position was that of an international radio broadcaster . . . ."  Id. at ¶ 21.  Plaintiff is incorrect.

The duties required for the position under Vacancy Announcement M/P 03-29 included "writ[ing] and **voic[ing]** programs [and] . . . . filing news stories in . . . both script and **voice** form."  See Exhibit D at p. 2 (emphasis added).  Moreover, the duties included "originat[ing] and **voic[ing]** live and recorded material for airshow . . . ."  Id. (emphasis added).  The Specialized Experience called for "[e]xperience working as a reporter/editor for [a] major international broadcaster . . . including writing, editing, and/or **voicing** broadcast material . . . ."  Id. (emphasis added.)

"Plaintiff's self-serving speculations and conclusions are not enough to survive a motion for summary judgment."  Rozkowiak v. Baxter Healthcare Corp., 1998 WL 422284, *5 (N.D. Ill.)(citations omitted)(copy attached); see Tyler v. Runyon, 70 F.3d 458, 469 (7th Cir. 1995)("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."); Williams v. Williams

39

Electronics, Inc., 856 F.2d 920, 924 (7th Cir.1988) (more than self-interested assertions challenging superiors' business judgment required to "create a basis upon which a reasonable trier of fact could find that employer's explanation of a genuinely and honestly made performance-based decision was unworthy of credence"); Rothman v. Emory Univ., 123 F.3d 446, 453 (7th Cir. 1997)(Plaintiff's perceptions of alleged discriminator's motivations are an ineffectual means of proving discrimination).

In another apparent attempt to establish pretext, plaintiff argues that "Mr. Htun's application for [Vacancy Announcement Number M/P] 03-29 should not have been forwarded to the selecting official with the first batch of applications . . . ," Complaint at ¶ 26, thereby allowing plaintiff to be evaluated for the position "without competition from other candidates like Mr. Htun." Id. at ¶ 28.

However, Vacancy Announcement Number M/P 03-29 indicated "that the position would be 'Open until filled.'" Exhibit U, Murphy Decl. at ¶ 9. "The position was posted on March 13, 2003. The announcement also stated that the '[f]irst cutoff will be March 27, 2003' and that there would be '[s]ubsequent cutoffs every two weeks until the position is filled.'" Id. Plaintiff "submitted his application to the Agency on March 27, 2003. . . Lwin Htun Than submitted his application to the Agency on March 31, 2003." Id. at ¶ 10.

"There is nothing in . . . the Agency's Manual of Administration or the Code of Federal Regulations that prevented [plaintiff's] and Lwin Htun Than's applications from being forwarded to the selection official at the same time. [Plaintiff], by virtue of submitting his application on March 27, 2003, was not, and would not have been, afforded any priority in consideration for the position over Mr. Than, who submitted his application [three days later]." Id. at ¶ 11.

40

Therefore, this allegation does not establish that the Agency's reasons for selecting Lwin Htun Than were a pretext for discrimination.  Plaintiff clearly was not "significantly better qualified" that Mr. Than, see Carter, 387 F.3d at 881, and the Agency had legitimate, non-discriminatory reasons for selecting him.

## V.  **CONCLUSION**

For the foregoing reasons, plaintiff's claims of discrimination based upon race and retaliation, and his claims regarding a written admonishment and use of sick leave, should be dismissed for lack of subject matter jurisdiction because plaintiff failed to exhaust his administrative remedies.  See Fed. R. Civ. P. 12(b)(1).  Plaintiff's claims that his rights have been violated under the Administrative Procedure Act, 22 U.S.C. § 1474, 42 U.S.C §§ 1981 and 1983, and District of Columbia law should be dismissed because this Court lacks subject matter jurisdiction over the matters, and plaintiff has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Plaintiff's claims of discrimination based upon age and national origin should be dismissed because plaintiff has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In the alternative, summary judgment should be granted on these claims because no genuine issue of material fact exists, and defendant is entitled to judgment as a matter of law.

Respectfully submitted,

_/s/_____

JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_/s/_____

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_/s/_____

MARIAN L. BORUM, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 415-6531
Attorneys for Defendant


Of Counsel:
Stephen A. Reynolds
Assistant General Counsel
Broadcasting Board of Governors
330 Independence Avenue, SW, Room 3349
Washington, D.C.  20237

42

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2007, the foregoing was served upon

counsel for plaintiff via the Court's ECF e-mail system.


                                      /s/_____

                                      MARIAN L. BORUM, D.C. Bar #435409

                                      Assistant United States Attorney

43

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KYAW ZAW NYUNT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Civil Action No. 06-1152 (JDB)** |
| | ) |
| **KENNETH Y. TOMLINSON,** | ) |
| **Chairman, Broadcasting Board** | ) |
| **of Governors,** | ) |
| **Defendant.** | ) |
| _____ | ) |

**ORDER**

Upon consideration of Defendant's Motion to Dismiss or, in the Alternative, for

Summary Judgment, Plaintiff's Opposition, and the entire record herein, it is this _____ day

of _____, 2007,

ORDERED that Defendant's Motion to Dismiss be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

with prejudice.

_____
United States District Judge

Copies to:

Marian L. Borum
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, DC  20530

Timothy B. Shea
Nemirow Hu & Shea
1629 K Street, N.W., Suite 500
Washington, D.C.  20006

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KYAW ZAW NYUNT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-1152 (JDB)** |
| ) | |
| **KENNETH Y. TOMLINSON,** ) | |
| **Chairman, Broadcasting Board** ) | |
| **of Governors,** ) | |
| **Defendant.** ) | |
| _____ ) | |

## ORDER

Upon consideration of Defendant's Motion to Dismiss, or in the Alternative, for

Summary Judgment, Plaintiff's Opposition, and the entire record herein, it is this _____ day

of _____, 2007,

ORDERED that Defendant's Motion for Summary Judgment be and is hereby

GRANTED.

_____
United States District Judge

Copies to:

Marian L. Borum
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, DC  20530

Timothy B. Shea
Nemirow Hu & Shea
1629 K Street, N.W., Suite 500
Washington, D.C.  20006