United States District Court
For the District of Columbia

| | |
|---|---|
| Kyaw Zaw Nyunt,<br>    Plaintiff,<br><br>v.<br><br>Kenneth Y. Tomlinson,<br>Chairman,<br>Broadcasting Board of Governors,<br>    Defendant. | )<br>)<br>)<br>)<br>)    CA No. 06 – 1152 (JDB)<br>)<br>)<br>)<br>)<br>) |

**Plaintiff's Reply to Defendant's Opposition to Motion for Partial Summary Judgment**

By motion, dated April 6, 2007, Plaintiff moved for partial summary judgment for a ruling that he was a "suitably qualified United States citizen" within the meaning of 22 U.S.C. section 1474(1) and available for the GS 12 position for which he applied in 2003. Accompanying that motion was a brief statement of material facts as to which there was no genuine issue demonstrating that Plaintiff was a US citizen when he filed a timely application for the position in question and was determined to be the best qualified US citizen applicant on the certificate referred to the selecting official. Defendant passed over Plaintiff in that selection in favor of an alien applicant based upon Defendant's finding that the alien was more qualified for the position.[1]

Under the rules of this Court, an opposition together with a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated with references to the parts of the

---

[1] As he noted in the motion, Plaintiff has a number of claims of discrimination and retaliation arising out of his employment in addition to the discrete matter raised in his motion for partial summary judgment.

record relied upon should have been filed within 11 days, on or before April 17, 2007. See Local Civil Rule 7 (b) and (h). No timely opposition or request for enlargement having been filed by Defendant, Plaintiff's statements of the material facts should be deemed admitted.

On April 20, 2007, Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment together with a supporting memorandum, once characterized on the electronic filing system as an opposition to Plaintiff's motion for partial summary judgment and once as a motion to dismiss the complaint or, in the alternative, for summary judgment ("Government Motion").  On April 23, 2007 Defendant noted on the electronic filing system the filing of a motion for summary judgment without any accompanying document. Buried in Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Government Memorandum") at pages 15 to 21 is an untimely legal argument in response to Plaintiff's motion for partial summary judgment addressing the authority of the agency to select aliens when US citizen applicants are available under section 1474. At the same time Defendant filed a Statement of Material Facts not in Genuine Dispute, and a Response to Plaintiff's Statement of Material Facts in support of Plaintiff's motion for partial summary judgment.

Without waiving any objections to the timeliness of Defendant's submission, Plaintiff hereby replies, pursuant to Local Civil Rule 7(d), to that portion of Defendant's submission in which Defendant responds to the points raised in Plaintiff's motion for partial summary judgment.

Plaintiff will oppose or otherwise move with respect to the balance of the Government Motion within 11 days from the date of its filing, as provided in the rules. Plaintiff will urge essentially that that motion is premature at this stage of discovery.

**Discussion**

**Standards for Partial Summary Judgment**

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and judgment can be entered for the movant as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251 -252. An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id*. at 248. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. *Id.* at 249. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate.

The movant's initial burden under Fed. R. Civ. P. 56 is to show the absence of evidence to support the nonmoving party's position. The movant must specify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any, which demonstrate the absence of a genuine issue of fact. See Fed. R. Civ. P. 56(c). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance.   *Anderson* at 250.

3

### No Material facts are in Dispute as to Plaintiff's Motion for a determination that he was a "suitably qualified United States citizen" within the meaning of Section 1474(1)

Defendant acknowledges, with certain unimportant clarifications,[2] that Plaintiff filed a timely application for the GS 12 broadcaster position in VA No. 03 -29at BBG in 2003; that he was ranked as the highest of three US citizen candidates on the certificate set aside for the US citizen candidates and, as such, he was qualified and eligible for selection; and that an alien was selected for the position under BBG's claim of authority under section 1474. Defendant presses its claim of authority to hire aliens based on its view that:

> The Agency has reasonably interpreted the ambiguous term "suitably qualified" in its authority to hire non-citizens as requiring a successful non-citizen candidate to be better qualified than a US citizen applicant. This interpretation is consistent with the guidance received from both the House of Representatives' Committee on Foreign Affairs and the Senate Committee on Foreign Relations in 1982. H. R. REP No. 97 - 480 at 2-4; S. REP NO. 97 - 429 at 2.

Defendant's Statement of Material Facts not in Genuine Dispute in response to Plaintiff's Statement of Material Facts at page 4, paragraph 10.

---

[2]   No genuine disputes as to the first seven paragraphs of Plaintiff's Statements of Material Fact are set out by Defendant's Statement of Material Facts not in Dispute and Response to Plaintiff's Statement of Material Facts.
  In paragraph 8 Defendant acknowledges that a justification memorandum of the selection of the alien was prepared by the selecting official, which memorandum contended that the alien was more qualified for the position than the US citizen applicants.
  As to Plaintiff's statement of material fact No. 9, Defendant asserts that by virtue of its authority to hire non-citizens and its manual of administration, both of which relate to section 1474, it selected the alien, Mr. Htun. The notice of personnel action for the hiring action of Mr. Htun specifically cites section 1474 ["P.L. 80 – 402 Sec. 804(1) as amended"] as authority for the action. See Exhibit L to Defendant's Motion to Dismiss. BBG must necessarily have made the determination that Mr. Nyunt and other US citizen applicants were not "suitably qualified United States citizens" for the position in reliance on its construction of section 1474.
  Defendant's disagreements with Plaintiff's remaining statements are largely restatements of its legal rationalizations.

4

**BBG Construction of "suitably qualified" US Citizen as Meaning "best qualified" Candidate is At Odds with the Terms of the Act, the Explicit Legislative History and the Contemporaneous Administration of the Act**

Defendant urges in its memorandum of law that the term "suitably qualified" in section 1474 is ambiguous and the agency's interpretation of the terms is entitled to judicial deference under the two part test in *Chevron v. Natural Resources Defense Council, Inc.*, 67 U.S.837, 842, 843 (1984). Under the *Chevron* two part analysis, a court in the context of a challenge to agency authority under the Administrative Procedure Act, 5 U.S.C. section 706, must apply the unambiguous intention of a statute using the ordinary means of statutory interpretation. If the meaning of the statute is found to be ambiguous, then the court will defer to reasonable interpretations of the statute accompanied by reasonable procedures by an agency with authority to administer the law. Without conceding that this analytical framework applies,[3] BBG has certainly made no requisite showing.

First, in support of the claim of statutory ambiguity the agency insists that the term "suitable" is not a categorical term as Plaintiff has urged, but one that *requires* reference to relative qualifications of applicants. The agency considers the dictionary definition of "suitable" as "similar, matching" to support its claim. The agency reads the statute as allowing employment of aliens so long as there are no "similar or matching" qualified citizen candidates. Government Memorandum at 17.

The response to this argument is straightforward. BBG is authorized in section 1474 to employ aliens in the United States "when suitably qualified United States

---

[3] This action is primarily a Title VII action in which Plaintiff is entitled to a jury trial on all triable issues. To the extent that Plaintiff's motion for partial summary judgment may be denied, Plaintiff will seek to have the matter submitted to the jury. In that regard, the standards of the Administrative Procedure Act would not govern.

citizens are not available" when job vacancies occur. Thus, the authority to hire aliens is conditioned on an absence of "suitably qualified" citizens. These terms say nothing about the qualifications of alien candidates. A suitable person is, by definition, one who has qualifications matching the requirements of the position -- which is all that is literally required by section 1474. The word "suitable" is not itself a relative term. More than one person may be suitable for any task or activity. Nothing in the statute requires that a US citizen applicant demonstrate that he or she is the *most suitable* candidate, which is the construction urged by BBG. The standard employment advertisement seeking "suitably qualified" candidates on the internet and in the newspapers are commonly and correctly understood to seek applications from many candidates who meet the basic qualifications of the position.[4] As Plaintiff noted in his argument in support of his motion, a superbly qualified US citizen applicant would be displaced by an eminently qualified alien under the agency logic. The BBG construction would eviscerate the hiring preference for US citizen applicants.

Defendant brushes off the admonition from Representative Mundt that the priority for "suitably qualified United States citizens" should ensure that aliens not be "indiscriminately employed," with the claim that proper vetting – whatever that means -- of alien employees is sufficient to respond to the concerns of the representative. Government Memorandum at 18. The terms of section 1474, however, are restricted to the suitability of US citizen applicants, not those of competing aliens.

---

[4] See, e.g., United States Employment Service declaration of core policies undertaking to ensure that "applicants suitably qualified for job openings are referred to employers." 20 C.F.R. section 604.1 (1981); *E.J. Albrecht Company v. United States*, 63 F. Supp. 85 (Ct. Cl. 1945) (WPA contractor required to seek "suitably qualified" labor from relief rolls first).

6

Remarkably, the agency indulges the pretense that the committees accommodated the agency by providing "guidance" that strongly weighs against Plaintiff's position when the agency approached Congress in 1982 for a "legislative clarification." Defendant declares that its construction is reasonable "given the directives from the House and Senate committees." Government Memorandum at 20.

This argument is more than a little facile. The agency approached Congress in 1982 for an authoritative action, an amendment to the statute. When the agency did not get an amendment, it was presented with a consolation prize in the form of "Committee Comments," not even a report on some legislative action. There is little doubt that these Congressional committees know the difference between an amendment to the statute and legislative history and the yawning gap between an amendment and comments to the agency. These 1982 Committee comments are by their terms unauthoritative suggestions. The claim of a lack of legislative history associated with section 1474 in the comments is undemonstrated and, indeed, erroneous. See Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 8, 9. By its terms and under the ordinary rules of statutory interpretation, these Congressional committee musings were far short of the Congressional "directive" or "guidance" claimed by the agency.

Defendant's submission ignores the specific Congressional declarations of intention contemporaneous with the crafting of and amendments to section 1474 set out in Plaintiff's memorandum in support of his motion. Rep. Mundt's succinct declaration in 1948 was made at the time that he explained the very language of section 1474(1). See Hearings before House Committee on Foreign Relations on HR 3342, 80th Cong., 1st

7

Session, May 13, 14, 16, 17 and 20, 1947 at page 12 ("…[T]his is the last place in the world that aliens should be indiscriminately employed. If we are going to interpret America abroad, it should be done by Americans.") The Senate Report on the 1979 amendment to section 1474 declared:

> At present, aliens are restricted to doing narration and translation work. It is frequently impossible to find American citizens to do the supervisory-level work of preparation or production of programs in several foreign languages, and the purpose of these subsections is to obtain permission for aliens to do this work *when Americans are not available.* There is a maximum of 40 such personnel slots which should be filled by aliens, most of which are at Voice of America ("VOA"), and most of which will at any time be filled by U.S. citizens. *By law, should a qualified U.S. citizen apply for a position held by an alien, the American citizen would be given the position.*

Senate Rept. No. 96-116, 96th Cong., 1st Sess. at 20, reprinted at *1979 US Code Congressional and Administrative News* 982, 1001 (July 31, 1979) (emphasis added). When section 1474 was amended again in 1990 by Pub. L. 101-246, 104 Stat. 53, by the addition of the words "when job vacancies occur," the Joint Explanatory Statement of the Conference Committee set out its understanding of the provision as follows:

> The House bill (sec. 212) amends *existing law which requires that USIA give preference for hiring U.S. citizens for VOA language services whenever a position exists.* Existing law provides preference for the employment of *qualified Americans* even if application of the preference would require the firing of alien employees who were hired at a time, and often at great expense, when *no qualified U.S. citizens were available.*

House Conference Rept. No. 101-343, 101st Cong. 2nd Session at 108, reprinted at 1990 *US Code Congressional and Administrative News* at 43, 66 (emphasis added). These authoritative declarations make clear the intention of the *enacting* Congresses was to limit authority to hire aliens to when *no qualified* United States citizens were available.

8

BBG's interpretation that the US citizen applicant must demonstrate that he is "best qualified" flies in the face of these explicit expressions of intent.

There is no dispute that *for some 25 years or more section 1474 was administered by the agency so as to prohibit hiring of aliens when minimally qualified US citizens were available for a vacancy*. An agency's contemporaneous construction of a statute strongly militates against a later reversal. *IBEW v. NLRB*, 814 F. 2d 697, 714 (D.C. Cir. 1987).

US citizenship is the general rule for positions in the competitive service of the Government. See Executive Order 11935, 41 FR 37301, September 3, 1976, redesignated Executive Order 13197, 66 FR 7853, January 25, 2001; 5 C.F.R. Part 7.3 (b) and (c) (no person shall be given an appointment in the competitive service unless such person is a citizen of national of the United States absent an exception to the extent permitted by law); 5 C.F.R. section 338.101 (A person may be given an appointment in the competitive service only if he or she is a citizen of or owes permanent allegiance to the United States). Exceptions to that rule should be construed strictly.

Ultimately, BBG's claim of authority is based on Congressional staff generated suggestions that have no weight. The desire of the agency to select candidates deemed most qualified is an equitable argument unsupported by the terms of section 1474 or the authoritative legislative history. As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 376 (1990).

**Conclusion**

In sum, Plaintiff Nyunt was a "suitably qualified United States citizen" applicant within the meaning of 22 U.S.C. § 1474(1) available for selection in filling VA No. 03-29 for a GS 12 position in the Burmese service of BBG in March 2003.  Selection of a non-citizen for the vacancy must be ruled as unauthorized by section 1474(1).

Plaintiff's motion for partial summary judgment should be granted.

Respectfully submitted,

/s/

Timothy B. Shea
DC Bar No. 234005
Nemirow Hu & Shea
1629 K Street, NW  Suite 500
Washington, DC  20006
Tel. 202 835 0300
Fax 202 835 0306

Attorney for Plaintiff Kyaw Zaw Nyunt