United States District Court
For the District of Columbia

| | | |
|---|---|---|
| Kyaw Zaw Nyunt, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | CA No. 06 – 1152 (JDB) |
| Kenneth Y. Tomlinson, | ) | |
| Chairman, | ) | |
| Broadcasting Board of Governors, | ) | |
|     Defendant. | ) | |

**Plaintiff's Statements of Material Fact as to Which There are Genuine Issues**

Pursuant to Rule 56, Fed. R. Civ. Proc., and Local Rule 7(h), Plaintiff hereby submits the following statements of fact as to which there are genuine issues in support of his opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. The referenced documents, affidavits and declarations submitted herewith, are listed on the covering sheet and numbered sequentially by page. The documents will be referenced as "Attachments at [page]." Documents submitted by Defendants will be refereed to by the Exhibit number and the page of the exhibit.

Defendant did not submit a separate statement of material facts as to which there is no genuine issue as to the factual assertions made in its Motion to Dismiss or, in the alternative, for Summary Judgment. See Local Rule 7(h).[1] For that reason, this statement of issues cannot be directed at the separate statements that they contradict; rather, these statements deal with the assertions of fact in Defendant's Memorandum in Opposition to

---

[1] Defendant did submit a statement of material facts responding to Plaintiff's statement of material facts as to the discrete issue of whether Plaintiff was a "suitably qualified United States citizen " within the meaning of 22 U.S.C. section 1474 and in response to Plaintiff's motion for partial summary judgment.

1

Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Motion

to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Memorandum").

1.  The most common position at Voice of America ("VOA") is that of international

    radio broadcaster ("IRB") and international broadcaster ("IB"). The career path of

    IRB/ IB's is GS 9 for the entry level with promotion to GS 11 non-competitively.

    Promotion to GS –12 is competitive.  Henderson Deposition, Attachments at 113.

2.  VOA has delegated examining authority, lodged with the delegated examining unit

    or "DEU," from the Office of Personnel Management for IRB and IB positions

    which means that VOA conducts its own testing and rating of candidates. To this

    end VOA has facilities to administer editing and translating tests followed by

    voicing tests for IRB / IB candidates. For voicing tests, the candidates are given

    texts to read and put in a studio; agency specialists evaluate the resulting tape.

    Murphy Deposition, Attachments at 119, 120.

3.  The BBG act and rules forbid employment of non-citizens unless "suitably"

    qualified US citizens are not available. See 22 U.S.C. 1474(1); Attachments at 3-13.

4.  "As a matter of [BBG] Agency policy, non-US citizens will not be employed in or

    promoted or supervisory positions of positions which involve policy or program

    decisionmaking." Attachments at 10.

5.  The VOA personnel policy is that interview of candidates is recommended to

    selecting officials. Selecting officials are encouraged to use interview panels,

usually consisting of three members, to assist them in making selections. Attachments at 19; Fitzpatrick Deposition at 129.

6. VOA has written guidelines for conducting interviews given to selecting officials. The guidelines encourage the use of interviews panels to assist in making selections. The panel members should be given the written guidelines as part of the instructions. Attachments at 19, 21 -33.

7. The East Asia Division has more than 200 regular employees most of whom are IRB's /IB's and about 100 contract employees in similar positions. The various language specialties in VOA are referred to, as "services," as in this case the Burmese service is part of the East Asia Division.  There are more than 12 services in the East Asian Division. Mr. Jay Henderson the division chief writes efficiency reports for 15 individuals. Henderson Deposition at 111.

8. A total of 10 vacancy announcements ("VA's") for GS-12 IRB and IB positions in the East Asian Division of VOA were advertised from January 2003 to March 2006 in addition to the two from the Burmese service at issue in this case. The associated position descriptions (PD's") and crediting plans ("CP's") are included in the Attachments at 49 to 106.

9. In an undated memorandum to the personnel office Mr. Htay requested authority to fill one GS 12 position. Attachments at 34.

10. The fact that two GS 12 broadcaster positions were open at the same time in the Burmese service was unprecedented for the Burmese service. Declaration of KM Win, Attachments at 159.

11. In the three years since January 2003 there has never been another case in which two GS 12 positions were advertised simultaneously in the Burmese service. Attachments 49 – 106; Declaration of KM Wim, Attachments at 158.

12. Personal meetings took place between Mr. Than Lwin Htun, Mr. Robinson and Division chief Henderson in "approximately February 2003," though there is some uncertainty as to exactly when they took place. Attachments at 1,2.

13. Some time in late 2002 or early 2003, perhaps February, when Mr. Lwin Htun was in Washington for a conference, he contacted Dan Robinson, who had been the Burmese service director for approximately five years until late 2001. Mr. Robinson had meet Mr. Htun in London a few years earlier when Mr. Htun was working at BBC and Mr. Robinson had tried to recruit him to VOA but could not offer sufficient compensation to attract him. Attachments at 1,2; Robinson Deposition at 139, 140 .

14. After Mr. Robinson met with Mr. Htun in Washington, Mr. Robinson arranged for Mr. Htun to meet with Jay Henderson, the Division Director of the East Asian Division. Henderson Deposition, Attachments at 116; Robinson Deposition, Attachments at 139, 140.

15. During the February 2003 visit Messrs Henderson and Htun met at VOA and Mr. Henderson took Mr. Htun for a short tour of the facilities. Henderson Deposition, Attachments at 116 ; Htun Deposition, Attachments at 137.

16. In February 2003 Mr. Henderson initiated the process of drafting and revising the VA's, PD's and CP's for two GS 12 positions with the assistance of the staffing

specialist, Jerri Fitzpatrick. Fitzpatrick Deposition, Attachments at 124, 127, 130, 131; Attachments at 35-40.

17. Normally the selecting official would perform these activities. Yet, the selecting official for each of the vacancies, the Burmese service chief, Mr. Htay, had no involvement in the drafting of the VA's, PD's or CP's that the staffing specialist could recall.  Indeed, the staffing specialist, Jerri Fitzpatrick, identified Mr. Henderson as the selecting official, not Mr. Htay.  Fitzpatrick deposition, Attachments at 123, 127; Nyunt Affidavit at para. 10.

18. In an email dated February 4, 2003 from Mr. Henderson to Ms. Fitzpatrick Mr. Henderson set out in detail some of the knowledges, skills, and abilities ("ksa's") for "one of the two positions:"

> experience working independently, away from H.Q
> experience training journalists, including developing curriculum in news writing and reporting as well as organization of a news organization
> experience in managing a budget for a professional operation
> experience designing and managing a Burmese language web site.

Attachments at 35. These activities track the experience of Mr. Htun. See Exhibit G to Defendant's Motion to Dismiss.

19. In another email exchanges referring to their discussions Mr. Henderson referred to one of the announcements as the "inside" and the other "outside."  Fitzpatrick Deposition, Attachments at 124-125; Attachments at 35 -38.

20. In a February 26, 2003 email to Ms. Fitzpatrick, Mr. Henderson noted that one position would provide for no relocation costs and no references to web design but "the fourth ksa would not apply to this person; only to the outside candidate; none

of our current staff have any experience overseeing purchases, etc. but the other newly hired candidate might." Fitzpatrick  Deposition at 133; Attachments at 40.

21. Mr. Henderson developed certain revisions to one of the PD's, what became VA 03 -29, to parallel these administrative activities.  Fitzpatrick Deposition at 123, 133; Attachments at 41, 42.

22. The fourth ksa was demonstrated experience in managing a professional news operation and overseeing purchases. ROI 105. Mr. Henderson established the fourth ksa knowing that none of the existing staff in the Burmese section had this experience, but the new outside applicant might. Fitzpatrick Deposition, Attachments at 133.

23. The purpose of these revisions to the vacancy announcement and crediting plans was to screen out inside applaincts like Mr. Nyunt and to advance Mr. Htun. Nyunt Affidavit at para. 10, 21, 22, 23.

**Differences in the VA's, PD's and CP's**

24. VA 03-26 was a GS 1001 – 12 IRB position. VA 03-29 was posted on the VA as a GS 1001 -12 IB position. Both were posted in March 2003. Exhibits C and D to Defendant's Motion to Dismiss.

25. The ksa's in the VA 03 -26 used a standard template focusing on five points: professional techniques of broadcast journalism, broadcast  / editorial writing skills, demonstrated experience working as a reporter / editor, demonstrated organizational management skills and "demonstrated skill in voicing for radio broadcasts."  Exhibit C to Defendant's Motion to Dismiss at pg 4.

26. VA 03 -26 was designated as open from March 10 to March 21, 2003. Exhibit C to Defendant's Motion to Dismiss at pg. 2.

27. The CP for VA 03 -26 required "demonstrated skill in voicing materials for radio broadcast" as one of the five major criteria. Attachments at 172.

28. VA 03 -29 was designated as open March 13 and remaining open until filled. VA 03 -29 declared that applications were required to be received "by close of business on 3/27/03" and every two weeks thereafter until the position is filled. Exhibit D to Defendant's Motion to Dismiss at pg. 2.

29. Under this procedure applications for VA 03 - 29 were to be grouped every two weeks beginning with the "first cutoff will be 3/27/03" and "[s]ubsequent cutoffs every two weeks until the position is filled." Exhibit D to Defendant's Motion to Dismiss at pg. 2. Priority in applications was granted to earlier received groups. Fitzpatrick Deposition, Attachment at 126.

30. The knowledges, skills, and abilities ("ksa's") for VA 03 - 29, based on the directions of Mr. Henderson, were changed by amending the standard template used for VA 03 -26 to focus on administration: journalism methods to maintain a Burmese web site; knowledge of writing and editing principles; demonstrated experience working as a reporter / editor; and demonstrated experience managing a professional news operation.  The ksa's for VA 03 -29 say *nothing about demonstrated voicing skills*. Attachments at 35 -41; Exhibit D to Defendant's Motion to Dismiss at pg. 2.

31. VA 03 -29 described the duties as "incumbent serves as broadcaster/writer for the Burmese service and "files news stories in script and voice." The PD titled the job

as "international radio broadcaster." Exhibit D to Defendant's Motion to Dismiss at
pg. 3, 10.

32. The PD for VA 03 - 29 declares that "incumbent serves as a broadcaster / writer for
the Burmese service." The incumbent "conceives, prepares, and presents one or
more regular programs a week and "originates and voices live and recorded
material for airshow." Exhibit D to Defendant's Motion to Dismiss at pg. 10.

33. The PD for VA 03 -29 consists of seven pages; the first three pages were
substituted for the first page of the standard PD [e.g., in VA 03 -26] and the last
four pages – complete with the old and inaccurate pagination – are the same as the
last four pages of the standard PD. Compare Exhibit D to Defendant's Motion to
Dismiss at pg. 9 -16; Exhibit C to Defendant's Motion to Dismiss at pg. 8 -13.

34. VA 03 -29 established as desirable qualities "advanced degree in broadcast
journalism/communications from an English-speaking university or college." VA
03 -26 had no similar requirement. Compare Exhibit D to Defendant's Motion to
Dismiss at pg. 4; Exhibit C  to Defendant's Motion to Dismiss at pg. 3.

35. As for ksa's, VA 03 -29 included internet skills and demonstrated skills managing a
news organization. Exhibit D to Defendant's Motion to Dismiss at pg. 5.  VA 03 -
26 had no similar requirements.  Exhibit C to Defendant's Motion to Dismiss at pg.
3.

36. The CP for VA 03 -29 tracks the ksa's for VA 03 - 29 and, again, does not include
voicing experience or skills as a requirement. In effect, that meant that the ranking
process for this broadcaster position was set up not to credit radio broadcast
experience. Attachments at 173 -176.

37. The crafting of VA 03 -29 to add management skills and to eliminate voicing were intended to screen out inside candidates like Plaintiff Nyunt and to highlight Mr. Than Lwin Htun's perceived skills. Because the crediting plan and the ksa are required to track the duties of the position, the addition of irrelevant management ksa's and deletion of essential voicing measures violated the rules and good management practice. Attachments at 144; Affidavit of K Nyunt at para. 10, 21, 23.

**Plaintiff Nyunt's background**

38. Briefly, Mr. Nyunt has a broad background as a broadcaster and as a diplomat. Mr. Nyunt worked as a GS 9 and 11 IRB for VOA since May 1998 and for BBC as a broadcaster from 1968 to 1971. He has also worked as Deputy Chief of Mission for Burma in the Rome Embassy for three years and, prior to that, as an officer for the Burmese Ministry of Foreign Affairs in Rangoon for more than twelve years. He holds a bachelor's degree in international relations and political science from the University of Rangoon and a diploma in computer management from London Technical College and he earned a master's degree from the Johns Hopkins University in international public policy in 1988. His performance ratings were consistently highly successful. He has extensive training in broadcasting and internet uses. Affidavit of K Nyunt at pg 1.

39. Mr. Nyunt was 58 years of age at the time of his applications. He is of Burmese national origin.  He was a naturalized US citizen at the time of applications. Affidavit of K Nyunt at pg 1, 2.

40. Owing to the stress from his non-selection and the threats of reprisal, Mr. Nyunt has suffered a range of predictable physical effects. His eating and sleeping have suffered, as has his relationship with his family. He has been diagnosed with hypertension, depression, and type 2 diabetes; his thyroid has been adversely affected as well. He is now being treated for these conditions. Nyunt Deposition, Attachment at 109.

## Youth Movement at VOA Burmese service

41. The selecting official, Mr. Htay, and two former service chiefs for the Burmese service each acknowledge that they wanted younger broadcasters to project more energetic voices.  Affidavit of K Nyunt at para. 24.

42. Mr. Robinson, a former Burmese service chief, maintained "a vision that would appeal to younger, more contemporary audiences" and made a conscious effort to recruit broadcasters who shared this vision.  "It made sense to recruit younger broadcasters," he declared.  Mr. Robinson considered "Mr. Lwin in is a star on the rise" who he had tried to recruit prior to 2003. Attachments at 161, 162.

43. Former Burmese service chief editor Win also stated "prior to my retirement, I also pushed for younger broadcasters should be brought in." He believed that VOA lagged behind due to "a lack of fresh voices and fresh approach."   Mr. Win also noted that Mr. Lwin was known as a "rising talent" whom Mr. Robinson had targeted to recruit. Attachments at 158.

44. The selecting official, Mr. Htay, too has declared his intent to recruit younger broadcasters to get more "energetic voices" on the air. He expressly stated that he

relied on Mr. Robinson's recommendation of Mr. Htun. Affidavit of K Nyunt at

para. 24. Exhibit T to Defendant's Motion to Dismiss at pg. 6.

**Mr. Htun's resume**

45. Mr. Htun had an advanced degree from the London School of Economics in social

policy and planning; "planned, budgeted, developed and implemented a journalism

training curriculum for BBC, VOA and other agencies for nearly one year;"

experience up to six months as an editor and broadcaster; had six or more years as a

producer editor and website coordinator for BBC.   From 1995 through 2001 Mr.

Lwin claimed to have been producer and daily editor and web site coordinator for

the BBC Burmese section.  Mr. Htun was 38 years old at the time of his application

and selection and was of Burmese national origin. He was not a US citizen at the

time of application. Exhibit G to Defendant's Motion to Dismiss at pg. 2 -4.

**Irregularities in filling VA 03 -26.**

46. Mr. Nyunt filed four applications for VA 03 -26 and VA 29, one for the merit

promotion program and one for the DEU for each VA. Nyunt Deposition,

Attachments at 12 107A.

47. The rating paned in VA 03 -26 assigned Mr. Nyunt a rating of 96. Exhibit M to

Defendant's Motion to Dismiss at pg. 6; Fitzpatrick Deposition, Attachments at

128; Affidavit of K Nyunt at para. 6,7.

48. The rating for Mr. Nyunt on the certificate that was provided to the selecting

official and selection panel *was misrepresented as 89, the same as Mr. Myint was*

*given.* Exhibit M to Defendant's Motion to Dismiss at pg. 6; Fitzpatrick Deposition,

Attachments at 128; Affidavit of K Nyunt at para. 6,7.

49. The claim by Ms. Murphy in her affidavit that the misrepresentation of Mr. Nyunt's score was a "mistake" and did not affect Mr. Nuyunt's ability to be considered, Exhibit U to Defendant's Motion, is not based on personal knowledge and speculative. Plaintiff Nyunt believes that it was intentional. Mr. Nyunt's score was properly totaled at 96 by the ranking panel. Ms. Murphy had no involvement in the administration of the vacancy or the preparation of the certificate with the lowered number for Mr. Nyunt. Selecting officials are given the ranking scores precisely so that they may consider them and Mr. Nyunt should properly have the highest score on the certificate.  Exhibit M to Defendant's Motion to Dismiss at pg. 2 -4; Fitzpatrick Deposition, Attachments at 128; Affidavit of K Nyunt at para. 6,7.

50. On October 10, 2003, months after the selection had been made, a substitute page was added to the VA file that purported to "correct" the misrepresented rating given to Mr. Nyunt to 96.  No notice of this action was provided to Mr. Nyunt, and the purpose of the action too is obscure. Exhibit M to Defendant's Motion to Dismiss at pg. 2 -4; Fitzpatrick Deposition, Attachments at 128; Affidavit of K Nyunt at para. 6,7.

51. The selecting official Mr. Htay refused to make a selection from the first certificate dated May 1, 2003, which included Mr. Nyunt and one other candidate. No explanation for that refusal has been provided. Exhibit M to Defendant's Motion to Dismiss at pg. 5; Fitzpatrick Deposition, Attachments at 128; Affidavit of K Nyunt at para. 6,7.

52. Mr. Nyunt was rated higher than Myint, but the selecting panel was advised otherwise in the certificate. Exhibit M to Defendant's Motion to Dismiss at pg. 6; Fitzpatrick Deposition, Attachments at 128; Affidavit of K Nyunt at para. 6,7.

53. After the VA's were posted, Mr. Htay had told the Burmese service staff that to avoid personal favoritism he would not be involved in the selections but, rather, would defer to a selection panel made up from language service chiefs. Affidavit of K. Nyunt at para. 9.

54. The selection panel on VA 03 -26 convened to interview and rank candidates on the certificate should have been drawn from language service chiefs outside the Burmese service. In fact, it was not so constituted. Mr. Htay was on the panel. Panel member Mr. Bageshwar Verma, a personal friend of Mr. Htay, was not a service chief and, in fact, had never served on such a panel before or after in his year career at VOA. Verma Deposition, Attachments  at 10 142, 143; Affidavit of K. Nyunt at para. 9.

55. The panel members were not given any instructions on how to interview.  The VOA instructions on interviews were not provided to them. Although the panel followed a set of standard questions, Mr. Htay prepared the questions and panel members posed their own questions too. Verma Deposition, Attachments at 142; Attachments at 19, 21.

56. On June 13, 2003, in the course of the meeting with staff from the Burmese service, including Mr. Nyunt, *Mr. Htay openly warned staff members not to complain about the selections on these two vacancies.*  Mr. Htay pointedly told them that even jobs as waiters were hard to get nowadays. The inference to the listeners was that they

would be the subject of retaliation if they were to complain about the selections. Affidavit of K Nyunt at para. 3.

57. One member of the Burmese service who had applied for the vacancies, Mr. Hla, complained to the EEO officer about the threat at the meeting. Mr. Hla was later pressured by Burmese service managers, became sick and removed from the federal service. Affidavit of K Nyunt at para. 4.

58. Mr. Myint was well known to have poor voicing skills and interviewing skills in English. He lacked the screen out factor term of VA 03 -26, particularly fluent English and Burmese. Affidavit of K Nyunt at para. 5, 6; Declaration of K Win, Attachments at 157.

59. Mr. Nyunt has excellent voicing skills and is a much stronger candidate than Mr. Myint. Former senior editor Mr. Win, the former supervisory editor for the Burmese service who worked for the service for over 35 years and supervised and rated Mr. Myint and Mr. Nyunt, declared that:

> However, Mr. Myint has problems with voicing and interviewing in English. He does not speak clearly. Also his understanding of the English language is not as strong as almost all the other VOA candidates. … Mr. Nyunt has excellent voicing skills… Mr. Nyunt has better communication skills and is clearly a much stronger candidate for that position than Mr. Myint…. Selecting Mr. Myint over Mr. Nyunt was a surprise to me and can only say that some favoritism was shown in the selection process.

Declaration of K Win, Attachments at 157. Mr. Hla and Mr. Aung also declare that Plaintiff Nyunt was better qualified than Mr. Myint. Declaration of A Hla and W Aung, Attachments at 163 and 166.

60. Mr. Nyunt was rated higher than Mr. Myint by the rating panels on both positions 96 vs 89 in VA 03 -26 and 94 vs 84 in VA 03 -29. Exhibit M to Defendant's Motion to Dismiss at pg. 6; Exhibit I to Defendant's Motion to Dismiss at pg. 3.

61. The duration of a certificate was 30 days. Fitzpatrick Deposition, Attachments at 134. The selection of Mr. Myint was made more than 30 days after the issuance of the certificate. Mr. Myint was not on the initial certificate. In accordance with the terms of the certificate, the selection should ordinarily be mad in accord wit hthe "rule of three," that is, from among the top three rated candidates. Mr. Myint was not among the top three candidates under the ranking. Exhibit M to Defendant's Motion to Dismiss at pg. 2, 5.

**Irregularities in filling VA 03 -29**

62. The Division Chief Mr. Henderson devoted substantial time and effort to crafting the VA, PD and CP for these position with little or no input from the selecting official. Indeed, the staffing specialist identified Mr. Henderson as the selecting official. Normally, Mr. Haty should have been responsible for that activity. Fitzpatrick Deposition, Attachments at 123; Attachments at 35-40; Affidavit of K Nyunt at para. 10.

63. The PD and CP describe the position as "International Radio Broadcaster (Burmese)" which is at odds with the VA, which described the title as "International Broadcaster." Attachments at 173; Exhibit D to Defendant's Motion at pg 2.

64. The CP does not match the PD insofar as the CP credits experience developing plans, procedures, and instructions and credits supervision of a team of at least five

staff when there are no corresponding duties in the PD. Compare Attachments at 173; Exhibit D to Defendant's Motion at pg. 9.

65. The ksa's and CP in VA 03 -29 were skewed to meet the experience of Mr. Htun specifically by focusing on web maintenance, writing and editing and management of a news operation and by excluding voicing. Affidavit of K Nyunt at para. 20,21; Compare Attachments at 173 with 170; Exhibits C and D to Defendant's Motion.

66. The ksa's and the CP for VA 03 -29 disagreed on their face with the PD insofar as *no voicing* requirement was included in the ksa's or CP even though the position was that of an International Radio Broadcaster who would file stories in voice. Compare Attachments at 173 with Exhibit D to Defendant's Motion.

67. The focus in VA 03 -29 of the ksa's and the CP on web design and administrative planning skills were deliberately intended to screen out inside applicants like Mr. Nyunt. Fitzpatrick Deposition, Attachments at 133; Attachments at 39, 40; Affidavit of K Nyunt at para. 21, 22.

68. Similarly, the absence of demonstrated voicing skills in the ksa's in the crediting plan was intended to include Mr. Htun who had limited broadcast experience. Affidavit of K Nyunt at para. 21; Exhibit G to Defendant's Motion.

69. Mr. Nyunt's application was received on March 27, 2003. Complaint and Answer at Para  24; Exhibit H to Defendant's Motion; Exhibit U to Defendant's Motion at para. 10, Affidavit of M Murphy,

70. Mr. Htun's application was received on March 31, 2003, after the initial cut off date in VA 03 -29 of March 27, 2003.  Complaint and Answer at Para  25; Exhibit G to

Defendant's Motion; Exhibit U to Defendant's Motion at Para 19, Affidavit of M. Murphy; Fitzpatrick Deposition, Attachments at 126.

71. The vacancy announcement stated that the "[f]irst cutoff will be 3/27/2003" and that there would be "[s]ubsequent cutoffs every two weeks until the position is filled." Mr. Htun's application should not have been forwarded to the selecting official with the first batch of applications but with the second batch of applications in the event that no selection was made on the first certificate. Fitzpatrick Deposition, Attachments at 126.

72. The agency staffing specialist that handled this vacancy, Ms. Fitzpatrick, affirmed in her deposition that the two week cutoffs established a priority for earlier batched of applications. Fitzpatrick Deposition, Attachments at 126. The declaration of Ms. Murphy that nothing in the agency manual of administration of the Code of Federal Regulations prevented the applications from being considered together, see Exhibit U to Defendant's Motion at 3, is mere argument that, at best, does nothing but contradict the terms of the announcement and the testimony of the specialist who staffed the vacancy itself.

73. Mr. Htun's application later filed application was therefore wrongly sent to the selecting official with the first batch of applicants, including Plaintiff Nyunt's application, in contravention of the terms vacancy announcement and the practice.

74. *Mr. Nyunt should have been evaluated based on the first cut off without competition from second batch applicants like Mr. Htun*. Fitzpatrick Deposition, Attachments at 126.

75. No second batch of applications was forwarded to the selecting official. Subsequent applications for VA 03 -29 were not rated or considered or, indeed, acknowledged. Fitzpatrick Deposition, Attachments at 126.

76. Mr. Htay did not conduct interviews or use a selection panel for VA 03 -29. Mr. Htay declared in his justification of the selection "I do not personally know Mr. Than Lwin Htun." Exhibit T to Defendant's Motion at pg. 6; Htun Deposition at 9, 10. In his affidavit submitted at Exhibit T at page 6 to Defendant's Motion, Mr. Htay indicated that his selection was based on the fact that his predecessor at the Service chief position had met Mr. Htun and "VOA was unable to get him then." *Id.* Mr. Robinson, of course, had specifically endorsed the effort to recruit younger announcers for the service. Attachments at 161, 162.

77. Mr. Htay previously had advised the Burmese staff that interviews would be used on both positions. Affidavit of K Nyunt at para. 9.

78. *Incredibly, Mr. Htay selected Mr. Htun for this senior radio broadcaster position without any interview and without ever meeting him. No measure of Mr. Htun's voicing skills was sought or obtained. This is wholly at odds with the usual practice and the terms of other GS 12 vacancies.* Attachments at 178.

79. Mr. Htay, the selecting official, was aware of the prior unsuccessful attempt to recruit Mr. Htun for the service. Exhibit T at page 6 to Defendant's Motion.

80. Every other GS 12 VA for IRB's or IB's from the East Asian Division from January 2003 to February 2006 open to outside applicants included voicing experience as one of the five ksa's. VA 03-16 ("Ability to broadcast live and pre-recorded material in Mandarin."); VA 03-22A ( "Demonstrated skill in voicing

materials for radio broadcast."); VA 04-25 ("Ability to broadcast live and pre-recorded material in Mandarin."); VA 04-32 (" Demonstrated ability to voice material for or during radio and or television broadcasts."); VA 04-43 ("Ability to broadcast live and pre-recorded material in Mandarin."); VA 05-10 ("Ability to broadcast live and pre-recorded material in Mandarin");VA 05-88 (" Skill in radio reporting or videography that enables the incumbent to voice, digitally edit and prepare audio…"); VA 05-127 ("Demonstrated skills in announcing to present and voice effectively material broadcast by VOA Tibetan Service…");  VA 5-201 ("Demonstrated ability …[to] conduct interviews in Mandarin for radio or TV and to translate and voice materials in Mandarin."). Attachments at 51, 58, 65, 71, 77, 83, 93, 98, 103.

81. In the other ten GS 12 IRB/ IB VA's posted since January 2003, the positions for the Mandarin service, which apparently were hard to fill, frequently authorized payment of relocation expenses.  Out of the non-Mandarin positions posted since 2003, only one, VA 5-67, an IB (Khmer) position limited to VOA status employees, provided for payment of relocation expenses. Attachment at 89.

82. The certificate submitted by the personnel specialist to Mr. Htay shows a Social Security number for Mr. Htun even though no such number was on his application. The staffing specialist assigned to this vacancy could not explain this anomaly. Fitzgerald Deposition, Attachments at 132A.

83. Mr. Htay in a memorandum to the personnel office dated September 9, 2003 declared that he had been trying to recruit Mr. Htun for "more than six months" - -

*in effect prior to March 9, 2003* the date VA 03 -29 was posted. Attachments at 176, 177.

84. Mr. Htay justification his selection of a non-citizen, Mr. Htun, based on the CP criteria, said *nothing about voicing* even though the job was an international radio broadcaster position with radio broadcasting as a primary responsibility. This rationalization was completely at odds with the claim that the service wanted to recruit younger voices or better voices. Attachments at 178.

85. Mr. Nyunt's qualifications for the actual duties of the PD were superior to those of Mr. Htun. Affidavit of K Nyunt at para. 21, 22; Affidavit of K Win, Attachments at 159.

86. Mr. Nyunt met and exceeded the minimum qualifications for VA 03 -29. He was a suitably qualified United States citizen within the meaning of 22 USC § 1474(1); accordingly, selection of Mr. Htun, a non-citizen, was unauthorized.

87. Mr. Henderson selected Mr. Htun on for the GS-13 service chief position effective May 2005. Henderson Deposition, Attachments at 112.

88. Mr. Htun's promotion to supervisor in May 2006 was made notwithstanding that BBG policy against promotion of non-citizens to supervisory positions. Attachments at 6.

89. Promotion of Mr. Htun to supervisor also required a special exemption owing to the fact that as a non-citizen he was not eligible to get the normal security clearance. There is no evidence that he received any such approval.  Attachments at 48.

90. These irregularities and departures from policies and sound management were part an elaborate ruse to discriminate against Mr. Nyunt owing to his age, race, national

origin and US citizenship and to retaliate against him. Affidavit of K Nyunt at para. 23 and entire.

91. The main object of this irregular activity was to bring in a young individual from outside BBG to purge the office of the older, Asian, Burmese announcers or marginalize them and to bring in younger announcers. This object was accomplished with the rapid promotion of Mr. Htun to service chief and the departure of five Burmese service members who were over the age of 55. See Attachments at 169.  Those vacancies were filled with GS employees all but one of whom were under 40.  Affidavit of K Nyunt at para. 23 and entire.

Respectfully submitted,

Timothy B. Shea
DC Bar No. 234005
Nemirow Hu & Shea
1629 K Street, NW  Suite 500
Washington, DC  20006
Tel. 202 835 0300
Fax 202 835 0306

Attorney for Plaintiff Kyaw Zaw Nyunt