**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KYAW ZAW NYUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 06-1152 (JDB) |
| | ) |
| KENNETH Y. TOMLINSON, | ) |
| Chairman, Broadcasting Board | ) |
| of Governors, | ) |
| Defendant. | ) |
| | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendant, Kenneth Y. Tomlinson, Chairman, Broadcasting Board of Governors ("BBG" or the "Agency"), by and through counsel, respectfully files this reply memorandum in response to plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Plaintiff's Opp."). Plaintiff brought this suit "to redress discrimination based upon age, race, national origin and retaliation, and to obtain review of unauthorized agency action." Complaint at p. 1. Plaintiff claims his rights were violated under Title VII, the Administrative Procedure Act ("APA"), 22 U.S.C. § 1474, BBG organic law and District of Columbia law.[1] Plaintiff's claims must fail.

Plaintiff failed to exhaust his administrative remedies with respect to the claims of racial discrimination and retaliation, as well as claims regarding receipt of a written admonishment and restrictions on the use of sick leave. Plaintiff cannot establish a prima facie case of national

---

[1] Plaintiff's arguments that his rights were violated under the APA, 22 U.S.C. § 1474, and BBG organic law are without merit, and were addressed in Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment. Docket Entry No. 15.

origin discrimination when he was not selected for Vacancy Announcement Nos. 03-26 and 03-29, and cannot establish a prima facie case of age discrimination when he was not selected for Vacancy Announcement No. 03-26. While plaintiff may be able to establish a prima facie case of age discrimination with respect to Vacancy Announcement No. 03-29, the Agency demonstrated legitimate, non-discriminatory reasons for not selecting plaintiff, and plaintiff cannot establish pretext. Accordingly, for reasons stated in defendant's motion and herein, defendant respectfully reiterates its request that the Court dismiss this suit or enter summary judgment in defendant's favor.[2]

## ARGUMENT[3]

### I. Plaintiff Has Failed to Exhaust His Administrative Remedies.

Plaintiff states that "*[i]n his written complaint to the EEO counselor* in the summer of 2003, he declared that . . . Mr. Htay[, the selecting official] ask[ed us] not to complain if we were not selected." (emphasis added). Plaintiff's Opp. at p. 8. Therefore, plaintiff claims that he exhausted his administrative remedies with respect to claims of retaliation.

---

[2] Plaintiff states that defendant did not submit a Statement of Material Facts in support of its Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Motion"). Plaintiff's Opp., Plaintiff's Statement of Material Facts as to Which There are Genuine Issues, at p. 1. However, this is incorrect. Defendant submitted a Statement of Material Facts in support of its motion, as well as in a response to plaintiff's Motion for Partial Summary Judgment. See Defendant's Motion, Defendant's Statement of Material Facts Not in Genuine Dispute and Response to Plaintiff's Statement of Material Facts at pp. 1-5.

[3] In his Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, plaintiff failed to address defendant's argument that plaintiff's claims that 42 U.S.C. §§1981 and 1983, as well as District of Columbia law were violated, must be dismissed for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. Defendant's Motion at pp. 12-15; see Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendant, therefore, assumes that plaintiff has abandoned these meritless claims.

However, plaintiff made this claim in a letter addressed to the Director of Voice of America.  <u>See</u> Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Motion"), Exhibit A, p. 4.  Claims of retaliation were not in the Informal Complaint that plaintiff made to the Equal Employment Opportunity ("EEO") Counselor on July 11, 2003, Defendant's Motion, Exhibit Q, or in the Formal Complaint of Discrimination plaintiff made to the EEO Counselor on November 5, 2003.  <u>Id</u>., Exhibit A.

In the Informal Complaint, plaintiff specifically indicated that he had been discriminated against on the basis of "Age" and "National Origin (Burmese)."  <u>Id</u>., Exhibit A.  There was an area on the Informal Complaint form in which plaintiff could have indicated that he was retaliated against, but plaintiff failed to do so.  <u>Id</u>  Plaintiff attached the above-referenced letter to the Complaint of Discrimination he submitted on November 5, 2003.  However, on the Complaint of Discrimination form, plaintiff specifically indicated that he was discriminated against on the basis of "Age" and "National Origin (Burmese)."  Defendant's Motion, Exhibit A.  Again, there was an area on the Formal Complaint of Discrimination form in which plaintiff could have indicated that he was retaliated against, but plaintiff did not do so.  <u>Id</u>.  Moreover, when plaintiff was informed, by the Office of Civil Rights ("OCR"), that the claims accepted for processing were discrimination based upon age and national origin, plaintiff did not object to these claims.  <u>See id</u>., Exhibits O and P.  Moreover, plaintiff indicated nothing about alleged restrictive use of sick leave and a written admonishment.

The purpose of the exhaustion requirement in Title VII cases is to provide the agency with notice of the claim of alleged discrimination, to provide the agency with an opportunity to rectify any wrong through the conciliation process or through administrative relief, and "to

ensure that the federal courts are burdened only when reasonably necessary." <u>Brown v. Marsh</u>, 777 F.2d 8, 14 (D.C. Cir. 1985); <u>see also</u> <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 833-35 (1976). As the Supreme Court stated in <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. 101, 108 (2002) (<u>quoting</u> <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980)).

Plaintiff's claims of discrimination based upon race and retaliation as well as his claims regarding a written admonishment and use of sick leave were never presented to the Agency at the administrative level, and the Agency was not given the opportunity to handle these claims internally. Therefore, plaintiff cannot now raise the matters before the District Court. <u>See</u> <u>Park v. Howard</u>, 71 F.3d 904, 906 (D.C. Cir. 1995) (plaintiff's judicial complaint of hostile work environment dismissed where administrative charge complained only of sex and race discrimination in connection with selection). As exhaustion of administrative remedies is mandatory, plaintiff's additional claims must be dismissed. <u>See</u> <u>Bayer v. U.S. Dep't of Treasury</u>, 956 F.2d 330, 332 (D.C. Cir. 1992).

### II.  Plaintiff Did Not File An EEO Claim Based Upon Race and Has Failed to Exhaust His Administrative Remedies.

In his Opposition, plaintiff admits that he "described the discrimination as against him as a 'Burmese[,]'"but states that "Burmese is as much a racial descriptor as national origin." Plaintiff's Opp. at p. 8. Therefore, plaintiff argues that he should be deemed to have filed an EEO claim based upon race as well.

In plaintiff's informal and formal Complaints of Discrimination, he indicated that he was

discriminated against on the basis of "Age" and "National Origin (Burmese)" only.  Defendant's

Motion, Exhibits A and Q.  Moreover, he did not object to the identification of the claims

accepted for processing.   Faced with a request for dismissal of his claim of discrimination based

upon race, plaintiff now states that "Burmese is as much a racial descriptor as national origin."

Plaintiff's Opp. at p. 8.  This Court has stated that:

> A Title VII action following the filing of the EEOC charge is limited in scope to
> claims that are like or reasonably related to the allegations of the charge and
> growing out of such allegations. . . Although the administrative charge
> requirement should not be construed to place a heavy burden on individuals . . .
> the requirement of some specificity in a charge is not a mere technicality. A court
> cannot permit a litigant to bypass the Title VII administrative process through
> liberal interpretation of an administrative charge.

Sisay v. Greyhound Lines, Inc., 34 F.Supp.2d 59, 64 (D.D.C. 1998) (internal citations and

quotation marks omitted).

     In Sisay v. Greyhound Lines, Inc., a plaintiff alleged only race discrimination and

retaliation in his EEOC charge, but contended that "national origin and race claims are so closely

related that the national origin claim could reasonably be expected to grow out of the race

discrimination charge."  34 F.Supp.2d at 64.  Plaintiff also claimed that "defendants'

investigation following notice of the EEOC charge should have covered national origin

discrimination because the alleged incidents were carried out in the same manner."  Id.  The

Court, however, determined that:

> the law recognizes that allegations of national origin discrimination are not so
> closely related to allegations of racial discrimination such that a conclusion about
> one could reasonably be expected to grow out of the other.  Indeed, Title VII
> recognizes that race and national origin are ideologically distinct.  See Kun v.
> Finnegan, Henderson, Farabow, Garrett & Dunner, 949 F.Supp. 13, 19 (D.D.C.
> 1996) (stating that allegations of race discrimination are not relevant to claims of
> national origin discrimination); see also Espinoza v. Farah Mfg. Co., 414 U.S. 86,

88 (1973)(defining national origin as "the country where a person was born, or, more broadly, the country from which his or her ancestors came"); Roach v. Dresser Indus. Valve and Instrument Div., 494 F.Supp. 215, 261 (W.D. La. 1980)(finding that the legislative history of Title VII precisely states that a person's national origin has nothing to do with race). Thus, under Title VII, allegations of race discrimination may be wholly unrelated to a claimant's country of origin. See Kun, 949 F.Supp. at 19. Such allegations, therefore do not properly put defendants on notice to investigate possible discrimination based on national origin. See id.

Sisay, 34 F.Supp.2d at 64. Clearly, plaintiff's claim of race discrimination, raised for the first time before this Court, is not equivalent to a claim based upon national origin. Therefore, plaintiff failed to exhaust his administrative remedies, and his race claim should be dismissed.

### III.  Even If Plaintiff Had Exhausted His Claims Regarding the Use of Sick Leave and the Written Admonishment, He Cannot Establish a Prima Facie Case of Discrimination or Retaliation.

On April 14, 2006, plaintiff called his supervisor requesting sick leave on that day, and through April 24, 2006. Plaintiff's Opp., Attachment 1, at pp. 5- 6. The request was made one hour after plaintiff was to have reported to work. Id. at 6. On April 18, 2006, plaintiff's supervisor wrote plaintiff indicating that he did not have sufficient sick leave for the requested period of time. Id. Plaintiff had a balance of forty-six (46) hours of sick leave and "requested to be absent from work due to . . . illness for [sixty-four] 64 hours." Id. Plaintiff was informed that the granting of additional sick leave is discretionary. Id. Plaintiff also was informed that he "failed to  follow proper procedures for requesting and obtaining approval for leave. " Id. Nevertheless, plaintiff was approved for forty-six (46) hours of sick leave. Id. He initially was informed that he would be charged as Absent Without Leave for the remaining period. However, he subsequently was informed that he could be entitled to leave under the Family Medical Leave Act, and was provided with the necessary forms for submission. Id. at 10.

6

During an investigation into an engineer's inability "to make certain equipment work at the beginning of [a] show [for which plaintiff] was the announcer," Plaintiff's Supp. Opp., Attachment 1, p. 1, plaintiff and other employees were asked for a "description of the events" that occurred.  Id.  Plaintiff reported to Jay Henderson, the Division Director of the East Asian and Pacific Division,[4] that there was a time delay before the beginning of the live show of "a few seconds."  Id.  The Chief measured the time as twenty-two seconds.  Id.  On June 20, 2005, the Chief admonished plaintiff for "lack of candor."  See Plaintiff's Supplement to Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Plaintiff's Supp. Opp."), Attachment 1 at p. 1.

Plaintiff argues that the restriction on his use of sick leave "was used as a means of discrimination and retaliation."  Plaintiff's Supp. Opp. at p. 2.  Plaintiff also appears to argue that the written admonishment evidenced discrimination and retaliation.

Plaintiff cannot establish a prima facie case of discrimination with respect to the alleged restriction on the use of sick leave.[5]  While plaintiff did engage in protected activity in July and November of 2003, he did not suffer an adverse action in April of 2006 when he was denied the use of sick leave to which he was not entitled.  To establish an adverse employment action within the meaning of Title VII, an employee must demonstrate an objectively tangible harm.  Civil

---

[4]The Division Director of the East Asian and Pacific Division is the supervisor of the Burmese Section as well as at least ten (10) other sections.

[5]A prima facie case of discrimination under Title VII is established when an employee demonstrates that: (1) he was a member of a protected group; (2) an adverse employment action took place; and (3) the unfavorable action gave rise to an inference of discrimination.  Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir 2006) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).

Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Russell v. Principi, 257 F.3d 815,

818 (D.C. Cir. 2001). The District of Columbia Circuit has determined that "[a]n 'adverse

employment action' . . . is 'a significant change in employment status, such as hiring, firing,

failing to promote, reassignment with significantly different responsibilities, or a decision

causing significant change in benefits.'" Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C.

Cir.2006). Here, the denial of discretionary leave was not an adverse employment action.

Plaintiff did not experience serious objectively tangible employment consequences as a result of

not being permitted to use sick leave to which he was not entitled. See Brown v. Brody, 199

F.3d 446, 458 (D.C. Cir. 1999).

Plaintiff also cannot establish a prima facie case of discrimination with respect to the

written admonishment. While plaintiff did engage in protected activity when he contacted the

EEO counselor, he did not suffer an adverse action. Standing alone, a written admonishment

does not materially affect an employee in a fashion that creates tangible harm. See Brown v.

Brody, 199 F.3d at 458 (letter of admonishment was not an adverse action because it did not

affect plaintiff's grade nor his salary); Walker v. Washington Metro. Area Transit Auth., 102 F.

Supp.2d 24, 29 (D.D.C. 2000) (notice of caution was not adverse personnel action); Ware v.

Billington, 344 F.Supp.2d 63, 75 (D.D.C. 2004)(counseling memorandum alone is not an adverse

action.)

Even if plaintiff could establish that the restriction on the use of sick leave was an adverse

action, he cannot establish a prima facie case of retaliation.[6] To establish a prima facie case of

---

[6]A prima facie case alleging retaliation under Title VII is established when the plaintiff
demonstrates that: (1) he engaged in protected behavior; (2) the employer took an action against
plaintiff with material consequences such that it would dissuade a reasonable worker from

retaliation, the temporal proximity between the protected activity and the adverse personnel action must be "very close."  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  The first inquiry regarding plaintiff's use of sick leave occurred on April 14, 2006, when plaintiff requested leave.  Plaintiff's first contact with the EEO counselor occurred on July 11, 2003.  Nearly three years passed between plaintiff's July 2003 protected activity and the alleged retaliatory action in April 2006.  Therefore, too much time has elapsed for plaintiff to show the necessary causal connection.  See id. at 273 (noting that a three- or four-month lapse between a protected activity and an adverse action is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all").

Even if plaintiff could establish that he suffered an adverse action when he received a written admonishment, he cannot establish a prima facie case of retaliation.  Nearly two years passed between plaintiff's July 2003 protected activity and the June 2005 written admonishment.  Again, plaintiff cannot show the necessary causal connection.   See id.[7]

---

making or supporting a charge of discrimination; and (3) there is a causal link between the action and the protected activity.  Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006).

[7]Assuming arguendo that plaintiff could establish a prima facie case of discrimination or retaliation for the sick leave and written admonishment, the Agency had legitimate business reasons for its actions.  After plaintiff's April 14, 2006 request for sick leave, his supervisor informed him that the "Service [was] severely short handed" and "it [was] not in the agency's interest to approve discretionary annual leave or leave without pay.  Id. at 6.  In a letter dated April 26, 2006, plaintiff was told that approval of annual leave in lieu of sick leave [was] discretionary and must be based upon the needs of the office.  Id. at 10.  Plaintiff also was informed that he was "an essential part of the team that must create and broadcast a daily radio program."  Id.  Therefore, it was "not in the best interest of the agency . . . to approve discretionary leave for [him]."  Id.  Hence, it is clear that the denial of discretionary sick leave was a legitimate business decision.

During the investigation into the delay of the live broadcast, plaintiff told the Division Director of the East Asian and Pacific Division that the time delay before the beginning of the

**IV.  Plaintiff Cannot Establish that He Suffered National Origin or Age Discrimination or Retaliation Based Upon His Non-Selection for Vacancy Announcement Nos. 03-26 and 03-29.**

In its Motion, Defendant demonstrated that plaintiff could not establish a prima facie case of discrimination based upon national origin in his non-selection for Vacancy Announcement Nos. 03-26 and 03-29, because the selectees for both Vacancy Announcements were also Burmese.  See Defendant's Motion at pp. 22-23.  Defendant also demonstrated that plaintiff could not establish a prima facie case of age discrimination when he was not selected for Vacancy Announcement No. 03-26, because the selectee was older than plaintiff.  See Defendant's Motion at pp. 24-25.  In his opposition, however, plaintiff argues that "the selection of another member of plaintiff's protected class is not prejudicial to a prima facie case [of discrimination]."  Plaintiff's Opp. at p. 3.  To support this proposition, plaintiff relies upon the language in Chappell-Johnson v. Powell, indicating that "in failure-to-hire cases we impose no requirement that the employer filled the sought-after position with a person outside the plaintiff's protected class."  440 F.3d 484, 488 (D.C. Cir. 2006).  Plaintiff construes this to mean that "the selection of [a] member of plaintiff's protected class is not prejudicial to a prima facie case of discrimination."  Plaintiff's Opp. at p. 3.  Plaintiff misunderstands the Court's ruling.

The fact that plaintiff is not required to show that the sought-after position was filled by someone outside of his protected class to establish a prima facie case of discrimination does not

---

live show was only "a few seconds" when, in actuality, it was twenty-two seconds.  Because of plaintiff's lack of candor, the Chief deemed it appropriate to give plaintiff a written admonishment.  The second step of the McDonnell Douglas framework requires the agency simply to articulate that it took its challenged actions for legitimate, nondiscriminatory reasons. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Bd. of Trustees of Keene State Coll. v. Sweeney, 439 U.S. 24 (1978).  Defendant has done so.

mean that plaintiff establishes a prima facie case when the position is filled by someone inside of plaintiff's protected class. If the selection is of someone of plaintiff's national origin and age, then plaintiff must present some other factor to raise an inference of discrimination based upon national origin and age, or a prima facie case of discrimination cannot be established. See Kilpatrick v. Paige, 193 F.Supp.2d 145, 159 (D.D.C. 2002) ("Since the selectee is of the same race and gender as the plaintiff, the plaintiff fails to establish a prima-facie case of either race or sex discrimination concerning his non-selection for the position. . . . Therefore, it is only appropriate for this court to grant summary judgment to the defendant on all of the claims ..."). Plaintiff has proffered no such other factor here.

Plaintiff claims that a prima facie case of national origin and age discrimination has been established because "there is direct proof of discrimination . . . ." Plaintiff's Opp. at p. 11. Plaintiff claims that the direct proof is in three forms. Id. First, plaintiff states that there was a "specific threat of retaliation by the selecting official, Mr. Htay, communicated to plaintiff and other applicants during a meeting on June 13, 2003 . . . ." Id. (italics omitted). While plaintiff did engage in protected behavior, that did not take place until July 11, 2003, *after* the statements allegedly were made by Mr. Htay. Thus, plaintiff cannot establish the causal link element of a retaliation prima facie case because an action cannot cause an event that predates it. In addition, plaintiff cannot establish that he suffered any adverse action by the alleged utterance of these words by Mr. Htay. All plaintiff has alleged is that Mr. Htay uttered words that plaintiff perceived as threatening. There is no evidence that Mr. Htay acted upon them.[8]

---

[8]To the extent that plaintiff argues that Mr. Htay retaliated against plaintiff by making this statement, this argument must fail. Plaintiff cannot establish the necessary causal connection for a prima facie case of retaliation. To do so, plaintiff must be able to show that "'the employer had

Second, plaintiff alleges there is direct evidence of age discrimination because there were "direct statements by the selecting official and the former Burmese section chiefs that a youth movement was part office policy[,]" and because former Burmese Section Chief "Dan Robinson tried to recruit Lwin Htun Than some years before" believing that Mr. Than was "a star on the rise." Plaintiff's Opp. at p. 11. Plaintiff also states that Mr. Robinson was concerned "about a loss of audience share in the Burmese [S]ervice [and] . . . recruit[ed] younger broadcasters in an attempt to appeal to a diverse audience." Id. (internal quotation marks omitted.)

The fact that Mr. Robinson believed that Mr. Than was a star on the rise, and was concerned about loss of audience share, does not indicate that there was a "youth movement in the office," or that plaintiff was discriminated against. Cf. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 826 (1st Cir. 1991)("Words of praise for youth . . . do not, by themselves, indicate a bias against more mature workers."); Shager v. Upjohn Co., 913 F.2d 398, 400-02 (7th Cir. 1990)(superior's comment that "[i]t is refreshing to work with a young man with . . . a wonderful outlook on life and his job" not probative of age discrimination).

Moreover,  Mr. Than was selected because he was a better candidate.  The fact that he was younger than plaintiff was irrelevant to the selection decision.  As indicated in defendant's motion to dismiss, plaintiff's educational background and work experience were far superior to those of plaintiff.  Compare Defendant's Motion, Exhibit G at p. 1 with Defendant's Motion, Exhibit B at p. 2.  In addition, in the Knowledge, Skills and Abilities categories and on the Certificate of Eligibles, subject matter experts ranked Mr. Than the highest.  See Defendant's

---

knowledge of the employee's protected activity, and ... the adverse personnel action took place shortly *after*[, not before,] that activity.'"  Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir.2006) (quoting Mitchell v. Baldrige, 759 F.2d at 89 (emphasis added).

Motion, Exhibit I at pp. 1-2, 4, Exhibit Q.  Consistent with the opinions of the subject matter

experts, the selecting official also thought that Mr. Than's "experience was superior overall."

Id., Exhibit T.  This is the quintessential legitimate, non-discriminatory reason in a non-selection

case.  See Barnette v. Chertoff, 453 F.3d 513, 517 (D.C. Cir. 2006)(A reasonable jury can only

infer discriminatory intent when an employer fails to select the "markedly" or "significantly"

more qualified candidate.); see Tolson v. James, 315 F.Supp.2d 110, 117 (D.D.C.  2004)( "[a]n

employer has discretion to choose among qualified candidates for a position . . . and absent a

demonstrably discriminatory motive, an employer's personnel decision – such as the choice of

relevant qualifications – simply cannot be second-guessed.") (citing Fischbach v. Dist. of

Columbia Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

 Third, plaintiff appears to argue that there is direct evidence of national origin or age

discrimination because the Agency "simultaneously created, posted and filled the . . . positions

and tailored [them] . . . making it clear that in one vacancy only an outside candidate would

qualify."  Plaintiff's Opp. at substituted p. 12.  Plaintiff is incorrect.

 Vacancy Announcement No. 03-26 indicated that "All Qualified Candidates" would be

considered.  See Defendant's Motion, Exhibit C.  Vacancy Announcement No. 03-29 also

indicates that "All Qualified Candidates" would be considered.  See id., Exhibit D.  Although

"Mr. Henderson [may have] referred to one of the announcements as . . . 'inside' and the other

[as] 'outside[,]'" see Plaintiff's Opp., Statement of Material Facts at ¶ 19, the fact remains that

both positions were open to candidates from inside and outside of the government.  See

Deposition Transcript of Myra Laprell Murphy ("Murphy Dep."), attached hereto as Exhibit 1, at

pp. 30-31 (candidates were accepted from all sources anywhere, citizens, noncitizens, inside the

federal government, outside the federal government.")

Because plaintiff's claims of three alleged forms of "direct proof" of discrimination are meritless, his argument that they establish a prima facie case of discrimination and/or retaliation based upon national origin or age must fail.

**V.  There Were No Irregularities in the Selection Process.**

A-  Vacancy Announcement No. 03-26

Plaintiff contends that "an inference of discrimination" can be drawn from the existence of alleged irregularities in the selection process for Vacancy Announcement No. 03-26. Plaintiff's Opp. at substituted p. 12, 13.  However, each of these claims of irregularity can easily be dismissed.

First, plaintiff argues that Mr. Myint, the selectee [for Vacancy Announcement 03-26,] was rated lowest candidate by rating panels for both positions.  Id. at 13.  This is incorrect.  Khin M. Soe was rated the lowest for Vacancy Announcement No. 03-26, Defendant's Motion, Exhibit I at p. 2, and San San Tin was rated the lowest for Vacancy Announcement No. 03-29. Id., Exhibit M at p. 3.  Moreover, where Mr. Myint was rated on the rating panel was inconsequential because, after each candidate for Vacancy Announcement 03-26 was rated, he was interviewed.  Each interview panel member found that Mr. Myint was better qualified for the position than plaintiff.  See id. at 28-29.

Plaintiff next claims that there was an irregularity in the selection process because "Mr. Myint was well known to have very poor voicing skills and English by his colleagues and former supervisors."  Plaintiff's Opp. at p. 13.  Plaintiff contends that because this contradicts the claim that Mr. Myint was better qualified, "the differences in the question of qualifications must be

resolved by the trier of fact." Id. at 18-19. This is incorrect as well.

Plaintiff's colleagues may have perceived that plaintiff was the better candidate for the position. However, it is the perception of the decision maker which is relevant. See Waterhouse v. Dist. of Columbia, 124 F.Supp.2d 1, 7 (D.D.C. 2000), aff'd, 298 F.3d 989, 997 (D.C. Cir. 2002). These colleagues were not present for any of the interviews. Importantly, they were not present for the plaintiff's poor performance during his interview. Moreover, despite the colleagues' perceptions, a defendant is not required to prove that the Agency made the wisest choice, but only that the reasons for the decision were non-discriminatory. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986)(citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258-59 1981).

While plaintiff may believe that he was the better qualified candidate, this does not discredit the panelists' legitimate explanations for selecting Mr. Myint. See Waterhouse v. Dist. of Columbia, 124 F.Supp.2d at 7. A "[p]laintiff cannot establish pretext simply based on [his] own subjective assessment of [his] own performance, for plaintiff's perception of [himself], and of [his] work performance, is not relevant. It is the perception of the decision maker which is relevant." Id.

Plaintiff next argues that his "rating was misrepresented on the certificate to the selecting official. . . ." Plaintiff's Opp. at p. 13. However, Personnel Specialist Jerri Lynn Fitzgerald indicated that the incorrect score for plaintiff "was [merely] a tabulation error." Deposition of Jerri Lynn Fitzgerald ("Fitzgerald Dep."), attached hereto as Exhibit 2 at p. 26. The Agency's Director of Personnel, Myra Laprell Murphy, indicated that it was clear on the record that the incorrect score was a mistake. Murphy Dec. at p. 15. Importantly, the incorrect score did not

15

affect the selection decision, and cannot evidence discrimination.[9]

Plaintiff made the Certificate of Eligible applicants for Vacancy Announcement Number M/P 03-26 because, by virtue of his rating, he was ranked among the top three applicants. Defendant's Motion, Exhibit U at ¶ 5. "Pursuant to 5 C.F.R. § 332.404, commonly referred to as the 'Rule of Three,' a selection [of the individual to fill the position] must be made from among the three highest-ranked applicants on the certificate of eligibles." Id. The score for plaintiff that was mistakenly indicated on the Certificate of Eligibles was 89 instead of 96. Id. at 7 and Exhibit M at p. 1. However, because plaintiff's score was still one of the top three of the applicants, the incorrect score had no effect. See id. Plaintiff was still selected to be interviewed for the position. See Murphy Dep. at pp. 26-27; Defendant's Motion, Exhibit U. However, plaintiff performed poorly during his interview. See Defendant's Motion, Exhibits T and U.

Plaintiff complains that "the personnel office for some unexplained purpose amended the vacancy file to 'correct' [the] score . . . without notice to [plaintiff]." Plaintiff's Opp. at p. 13. However, "under the Delegating Examining rules, [an Agency] has to audit each . . . case file for the certificate of eligibles that was issued prior to closing it out." Murphy Dep. at p. 27; see Fitzgerald Dep. at p. 29. Therefore, the files must be updated for accuracy. See Delegated Examining Operations Handbook, Section C, Audit a Certificate, attached hereto as Exhibit 4. In addition, for candidates for the GS-12 level positions, like Vacancy Announcement Nos. 03-26

---

[9]This error in plaintiff's score is considered a "Lost Certification" because plaintiff was misranked on the certificate. However, even with that misranking, plaintiff was still within reach for employment consideration. See Delegating Examination Operations Handbook, Lost Certification, attached hereto as Exhibit 3.

and 03-29, no notification is provided "regarding their scores." Murphy Dep. at p. 27.[10] Therefore, there was no requirement that plaintiff be notified. Id.

Plaintiff next states that there was an irregularity in the selection process because "Mr. Htay prepared the interview questions and sat on the panel." Plaintiff's Opp. at p. 13. Plaintiff relies upon Salazar v. WMATA, 401 F.3d 504 (D.C. Cir. 2005) to support this claim of discrimination. Id. at 6. However, Salazar is distinguishable from this case.

In Salazar, the plaintiff applied for promotions on four previous occasions and was not selected. In at least some of these promotion denials, Gary Lewis, the Superintendent for Plant Equipment Maintenance, had selected the panel members, and Salazar believed that Lewis was discriminatory against Latinos. Id. at 506. "Indeed, Salazar had filed at least one grievance accusing Lewis of supporting a racially discriminatory supervisor." Id. Therefore, when Salazar applied for the fifth position, he contacted "Charles Thomas, the Deputy General Manager at Metro." Id. Salazar asked him to ensure that Lewis would not select the panel members for the interview panel. According to Salazar, Thomas selected the panel. Salazar acknowledged that the selected individuals were not likely to be discriminatory. Id.

Six applicants advanced to the interview round, and Salazar had the most seniority by several years. Id. However, when the interviews took place, there was a fourth panel member, who was "serving as chair of the panel." Id. "[A]ll [of] the panels [Salazar] had interviewed with in the past years had been made up of three members, not four." Id. This fourth man,

---

[10]GS-12 positions do not receive notice of their scores because they are not maintained on an active roster. An active roster is used for a continuing announcement or "Competitive Inventory" jobs that seek to fill GS-9 through 11 positions. Competitive Inventory jobs require continual maintenance. See Delegating Examining Operations Handbook, Section C, Establishing an Inventory, attached hereto as Exhibit 5.

Buddy Jaggie, Assistant Superintendent for Plant Maintenance, was Lewis' assistant and close friend.  Id.  In the past, Salazar had "consistently failed a test administered by Jaggie [and] pass[ed] only after filing a grievance to obtain outside review."  Id.  "Jaggie acknowledged that he was 'probably' appointed to th[is] panel by Lewis."  Id.  Jaggie also consulted with Lewis on what weight to assign each question asked during the interviews.  Id. at 506-07.  Salazar did not receive the promotion.

In the matter at hand, there is no evidence that plaintiff complained that Mr. Htay discriminated against him in the past.  There is no indication that Mr. Htay discriminated against people of Burmese descent.  Indeed, Mr. Htay is Burmese.  See Application for Employment, Khin Maung Htay, attached hereto as Exhibit 6.  There also is no evidence that, fearing that Mr. Htay would discriminate against him, plaintiff asked an official that Mr. Htay not be a part of the interview panel.  Unlike in Salazar, there is no indication that Mr. Htay "placed himself squarely at the center of a process designed to exclude him."  Salazar, 401 F.3d at 508.  While Mr. Htay prepared the interview questions, according to panelist, Bageshwar Verma, "Mr. Htay did not try to force or persuade [him or panelist Irena Burgener] to choose Mr. Myint . . . or tell [them] how to vote."  Defendant's Motion, Exhibit S at p. 2.  In addition, according to panelist Ms. Burgener, she did not recall:

> Mr. Htay telling [the panelists] that [they] should favor any certain candidate or treat any of them differently.  In fact, Mr. Htay somewhat remained in the background while Mr. Verma and I did most of the questioning . . . Mr. Htay did not try to force or persuade us to choose Mr. Myint."

Id. at Exhibit N at p. 2.

Moreover, it is permissible for a selecting official to draft interview questions, Murphy

18

Dep. at p. 38, and be a member of the panel.  This helps to ensure uniformity.  Nevertheless, "[e]ven if a court suspects that a job applicant 'was victimized by [] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'"  <u>Milton v. Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982).  Here, the Agency followed its own regulations and procedures, and had no discriminatory motive.

Plaintiff next contends that "[t]he selection panel was not given the VOA standard instructions for panels on interviews, as required, and the members asked questions of their own."  Plaintiff's Opp. at p. 14.  However, the agency is not required to give standard instructions to interview panelists.  <u>See</u> BBG, Memorandum of Administration, Part V-A, Section 468, Selection, attached hereto as Exhibit 7.   Panel members are given guidance on how conduct interviews.  Murphy Dep. at p. 38.  Defendant's Motion, Exhibit U at ¶ 8. Therefore, the fact that no "VOA standard instructions" were given was not an irregularity in the selection process.  Further, each of the members of the selection panel had been employed by the BBG for over twenty-two (22) years and each held a supervisory position.  <u>See</u> <u>id</u>., Exhibits N, T and U. Surely, whether or not instructions were given, each individual was familiar with what is required to identify an appropriate candidate for promotion.

Finally, plaintiff argues that there was an irregularity in the selection process because "Mr. Myint was not on the initial promotion certificate dated May 1, 2003 . . . [and] . . . was not ranked within the top three candidates which is the usual field for selection under the Rule of Three . . . ."  Plaintiff's Opp. at p. 14.  It is correct that Mr. Myint was not on the *Merit* Promotion Certificate.  <u>See</u> Defendant's Motion, Exhibit M at p. 4.  However, Mr. Myint *was* on the *Delegated Unit* Promotion Certificate, and was appropriately considered for the position.  <u>See</u>

Defendant's Motion, Exhibit M at p. 2.

Moreover, Mr. Myint *was* ranked within the top three candidates.  Id.  A list of ranked candidates is created for applicants who are citizens.  See id. at 2.  A list of ranked candidates also is created for applicants who are non-citizens.  See id. at 3.  Mr. Myint appeared on the list of ranked candidates for the applicants who are citizens, id. at 2, and was ranked within the top three of those citizen candidates.  Id.

B-  Vacancy Announcement No. 03-29

Plaintiff also claims that there were a number of irregularities in the selection process for Vacancy Announcement No. 03-29.  Plaintiff's Opp. at p. 13, 14-16.  First, plaintiff appears to argue that because the Crediting Plan and the justification for hiring Mr. Than did not include a "voicing" requirement, discrimination can be inferred.  See id. at 14-15.  However, Vacancy Announcement 03-29 *did* have a voicing requirement.  The duties required for the position listed in the Vacancy Announcement included "writ[ing] and **voic[ing]** programs [and] . . . . filing news stories in . . . both script and **voice** form[,]" and "originat[ing] and **voic[ing]** live and recorded material for airshow . . . ."  See Defendant's Motion, Exhibit D at p. 2 (emphasis added).  The Specialized Experience called for "[e]xperience working as a reporter/editor for [a] major international broadcaster . . . including writing, editing, and/or **voicing** broadcast material . . . ."  Id. (emphasis added.)  Moreover, the justification memorandum for hiring Mr. Than highlighted his experience as a Broadcast Journalist.  Id., Exhibit J at pp. 1-4.  Whether or not voicing was listed in the Crediting Plan does not mean that voicing ability was not considered.  Mr. Than's application materials clearly indicated that he had voicing experience because he was a Reporter and "Regional Expert and Broadcast Journalist" for the British Broadcasting Corporation

20

("BBC").  Defendant's Motion, Exhibit G at pp. 1-2.  He also wrote and presented news as a

part-time producer for the BBC, id., and trained reporters from the BBC, VOA and Radio Free

Asia in reporting.  Id. at 1.

Moreover, Vacancy Announcement 03-29 was for the position of International

Broadcaster, id., Exhibit 6, while the Vacancy Announcement 03-26 was for the position of

International *Radio* Broadcaster.  Id., Exhibit D.  "An [I]nternational [B]roadcaster is generic[

with] primary specialization in several different media, whereas an [I]nternational [R]adio

[B]roadcaster would tend to be primarily *radio* broadcasting."  Murphy Dep. at pp. 35-36.

Therefore, for Vacancy Announcement No. 03-29, the Agency desired an individual who had

additional experience in more media besides radio, and many of these experiences did not require

voicing.

Next, plaintiff complains that there was an irregularity in the selection process because

Mr. Than's application was received on March 31, 2003, but "evaluated with the first batch of

applicants . . . ."  Plaintiff's Opp. at p. 14.  Plaintiff states that his application, which was

received four days earlier, "should have been evaluated . . . without competition from applicants

in later periods like Mr. [Than]."  Id.  Plaintiff is incorrect.

"There is nothing in . . . the Agency's Manual of Administration or the Code of Federal

Regulations that prevented [plaintiff's] and Lwin Htun Than's applications from being forwarded

to the selection official at the same time.  [Plaintiff], by virtue of submitting his application on

March 27, 2003, was not, and would not have been, afforded any priority in consideration for the

position over Mr. Than, who submitted his application [on March 31, 2003]."  Id. at ¶ 11.  In

fact, in Ms. Fitzgerald's deposition, she stated that:

21

> when we get a group of applications in, if they aren't substantial enough we may hold off on sending them forward so that we can get enough to send all of them forward at one time. So we can let the managers look at them, and if they say okay, we can keep recruiting, then we'll keep sending them applications as they come in.

Fitzgerald Dep. at p. 30. In Ms. Murphy's deposition, she stated that whether or not the applications are reviewed after the first cut off, depends upon the number of applicants because "our goal is always to provide the highest number of qualified candidates to be considered." Murphy Dep. at p. 18. It also "depends on the individual circumstances of the case and the specialist that is doing the recruiting." Id. Therefore, there was no requirement that plaintiff's application be forwarded and reviewed independently of the application of Mr. Than.

Plaintiff next contends that there was an irregularity in the selection process because the Agency had been trying to recruit Mr. Than, who had been described as a "star on the rise." Plaintiff's Opp. at p. 15. This, again, cannot support an inference of discrimination because it is not a violation of agency policy to recruit individuals for positions. See Memorandum of Administration, Part V-A, Section 310, Parts 312, 316, attached hereto as Exhibit 9. In fact, as Ms. Murphy stated in her deposition, "we attend many job fairs and recruitment fairs for that purpose [and] managers are going overseas on site to specifically recruit." Murphy Dep. at p. 37.

Plaintiff also contends that, because no interviews were conducted for Vacancy Announcement No. 03-29, discrimination can be inferred. Plaintiff's Opp. at substitute p. 12. However, in a Memorandum, the Division Director of the East Asian and Pacific Division, Jay Henderson, was informed that interviews for the position were "optional." See Defendant's Motion, Exhibit I at p. 3. In addition, three subject matter experts ranked each of the applications for this Vacancy Announcement, and each of the experts ranked Mr. Than the highest in each of

22

the Knowledge, Skills and Abilities categories rated, and on the Certificate of Eligibles.  See

supra at 13; Defendant's Motion at p. 33.  Based upon Mr. Htay's own assessment and from the

Certificate of Eligibles, he selected Mr. Than as well.  See Barnette v. Chertoff, 453 F.3d 513,

517 (D.C. Cir. 2006)(A reasonable jury can only infer discriminatory intent when an employer

fails to select the "markedly" or "significantly" more qualified candidate.).  Therefore, he was the

best candidate for the position.

Finally, plaintiff contends that Mr. Henderson prepared the documents for the position,

and the Vacancy Announcement was structured to fit Mr. Than's "experience and education ...."

Plaintiff's Opp. at p. 16.  However, as indicated supra at 21, the position of International

Broadcaster, under Vacancy Announcement 03-29, required different skills than those required

for an International *Radio* Broadcaster, under Vacancy Announcement No. 03-26.  Mr. Than had

additional experience which the Agency desired, and was better qualified for the position than

plaintiff.

Even if these alleged irregularities in the selection processes for Vacancy Announcements

03-26 and 03-29 could support plaintiff's prima facie case of national origin or age

discrimination, the Agency had legitimate, non-discriminatory reasons for selecting Mr. Myint

for Vacancy Announcement No. 03-26, and Mr. Than for Vacancy Announcement No. 03-29.

Defendant's Motion at pp. 27-31.  In addition, plaintiff cannot show that defendant's reasons for

not selecting plaintiff were pretextual.  In order to find evidence of pretext, the Court would have

to be convinced that the "disparities in qualifications must be of such weight and significance

that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate

selected over the plaintiff for the job in question."  Cooper v.  Southern Co., 390 F.3d 695, 732

(11th Cir. 2004).  Essentially, in order to show pretext, plaintiff must show that defendant's

reason for not selecting him were a lie.  Crim v. Bd. of Educ. of Cairo School Dist. No. 1, 147

F.3d 535 (7th Cir. 1998).  Plaintiff cannot do so.  See Milton v. Weinberger, 696 F.2d 94, 100

(D.C. Cir. 1982)("Even if a court suspects that a job applicant 'was victimized by [] poor

selection procedures' it may not 'second-guess an employer's personnel decision absent

demonstrably discriminatory motive.'").

### VI.  The Agency Does Not Have a Policy Against Promoting Non-Citizens

Plaintiff argues that Mr. Than was promoted in May 2005 despite the fact that the Agency

has a "policy against promoting non-citizens."  Plaintiff's Opp. at p. 16.  The Agency does not

have such a policy.  See 22 U.S.C. § 1474.  The agency follows specific procedures when

employing a non-citizen in a supervisory position, which are outlined in the Agency's Manual of

Administration, Part V-A, Section 820.  See Defendant's Motion, Exhibit K; see also

Defendant's Motion at pp. 15-20.  Assuming arguendo that the Agency had such a policy,

however, whether or not Mr. Than was promoted two years after the selection process about

which plaintiff complains is irrelevant.  Plaintiff has not alleged that he applied for the

supervisory position Mr. Than holds.  Therefore, plaintiff has not suffered an adverse

employment action.  See Brown, 199 F.3d at 446.

### CONCLUSION

Plaintiff's claims of discrimination based upon race, retaliation, restrictive use of sick

leave and receipt of a written admonishment must be dismissed for lack of subject matter

jurisdiction because plaintiff failed to exhaust his administrative remedies.  See Fed. R. Civ. P.

12(b)(1).  Plaintiff cannot establish a prima facie case of national origin discrimination based

upon his non-selection for Vacancy Announcement Nos. 03-26 and 03-29, and cannot establish a prima facie case of age discrimination based upon his non-selection for Vacancy Announcement 03-26.  Therefore, plaintiff fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Plaintiff may be able to establish a prima facie case of age discrimination based upon his non-selection for Vacancy Announcement 03-29.  However, the Agency demonstrated legitimate, non-discriminatory reasons for not selecting plaintiff, and plaintiff cannot establish pretext.  Therefore, plaintiff's claims must be dismissed.  In the alternative, defendant's motion for summary judgment should be granted on these claims because no genuine issue of material fact exists, and defendant is entitled to judgment as a matter of law. Finally, plaintiff's claims that his rights have been violated under the Administrative Procedure Act, 22 U.S.C. § 1474, BBG organic law, and the law of the District of Columbia should be dismissed because this Court lacks subject matter jurisdiction, and plaintiff has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12 (b)(1) and 12(b)(6).  Therefore, defendant respectfully requests that its motion be granted.

Respectfully submitted,


_/s/_
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_/s/_
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_/s/_
MARIAN L. BORUM, D.C. Bar #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on this 5th day of June, 2007, a copy of the foregoing

was sent by First-Class Mail, postage prepaid, to:


Timothy B. Shea
Nemirow Hu & Shea
1629 K Street, N.W., Suite 500
Washington, D.C.  20006


/s/
MARIAN L. BORUM
ASSISTANT UNITED STATES ATTORNEY