United States District Court
For the District of Columbia

| | |
|---|---|
| Kyaw Zaw Nyunt,<br>    Plaintiff,<br><br>v.<br><br>Kenneth Y. Tomlinson,<br>Chairman,<br>Broadcasting Board of Governors,<br>    Defendant. | )<br>)<br>)<br>)<br>)     CA No. 06 – 1152 (JDB)<br>)<br>)<br>)<br>)<br>) |

**Plaintiff's Sur-Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment**

Plaintiff respectfully submits this sur-reply memorandum in response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Reply").

This memorandum is limited to two points from Defendant's Reply which warrant clarification relating to retaliation and to testimony of an agency witnesses dated May 11, 2007.

**Retaliation is Not Limited to Adverse Actions**

In *Burlington Northern & Santa Fe Railway, Co. v. White*, 126 S. Ct. 2405 (2006) the Supreme Court held that the scope of the protection against retaliation in Title VII is so broad as to include "taking actions not directly related to [the employee's] employment or by causing him harm *outside* the workplace." *Id.* at 2412 (emphasis in the original). A reassignment of duties was found by the Court to be a sufficient basis of a

complaint of retaliation even though the reassigned duties were within the employee's original job description. "[T]he Supreme Court held that a Title VII plaintiff need not allege an adverse employment action to state a claim for retaliation, but rather must show that the employer's actions are 'harmful the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Velikonja v. Gonzales*, 446 F. 3d 122 (D.C. Cir. 2006) (per curiam) (granting plaintiff trial on claim of retaliatory investigation that put plaintiff's career under cloud) citing *Burlington Northern & Santa Fe Railway, Co. v. White*, *supra* at 2409.

Accordingly, the agency contention that retaliation is confined to adverse actions is erroneous. See Defendant's Reply at 8 citing *Broderick v. Donaldson*, 437 F. 3d 1226, 1233 (D.C. Cir 2006).

Defendant's Reply at 3 urges that Plaintiff's written statement of August 1, 2003 complaining of, among other things, a threat of removal from his supervisor at a meeting on June 13, 2003 was "made in a letter addressed to the Director of Voice of America" but "not in the Informal Complaint that plaintiff made to the Equal Employment Opportunity ("EEO") Counselor on July 11, 2003." Certainly, if a letter to the agency head was not sufficient for notice to the agency, the copies to the head of the personnel office and the head of the Office of Civil Rights should suffice. See Defendant's Motion to Dismiss or, in the Alternative, for Summery Judgment at Exhibit A. This letter was clearly part of the counseling process and was investigated by the agency investigator. The manager who made the statements, Mr. Htay, responded to the allegations. See Defendant's Motion to Dismiss or, in the Alternative, for Summery Judgment at Exhibit T at 4.

2

The contention by the Broadcasting Board of Governors ("BBG") that a direct threat from the selecting official to applicants and employees not to complain about the selections he was making at the very time that the selections were being made is immune from challenge because it predated protected activity, Defendant's Reply at 11, 12, is a little brazen. If that were correct, an employer could immunize any retaliatory activity by the expedient of making threats beforehand. The standard analytical approach for an inference of retaliation set out at Defendant's Reply at 11, is a model that does not exclude direct evidence of retaliation. Likewise, BBG urges that the admonishment administered by Mr. Henderson to Plaintiff on June 20, 2005 was too remote from the date of the initial EEO complaint in July 2003. Of course, the initial complaint was only the first step in this process. An investigation of the complaint was initiated and that process continued for years. More specifically, as Plaintiff Nyunt stated in his affidavit, the admonishment was issued two weeks before the time that Plaintiff was scheduled to testify at a deposition in early July 2005 in an EEOC case brought by another employee in the Burmese service, Mr. Hla, on his complaint arising out of the threats of removal at the June 13, 2003 meeting. See Affidavit of K. Nyunt at para. 3, attached to Plaintiff's Supplementary Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment.

The Plaintiff has stated that the use of reprimands and the undue scrutiny of work and leave were part of a campaign to pressure him and other older, Asian, Burmese employees to leave the service. See Affidavit of K. Nyunt at para. 3, attached to Plaintiff's Supplementary Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment. Such a campaign is certainly "harmful to the point that they could

3

well dissuade a reasonable worker from making or supporting a charge of discrimination." See *Burlington Northern & Santa Fe Railway, Co. v. White*, *supra* at 2409; *Velikonja v. Gonzales*, *supra.*

**VA 03 -29 Referral of Candidates**

VA 03 - 29 stated that applications were to be grouped every two weeks beginning with the "first cutoff will be 3/27/03" and "[s]ubsequent cutoffs every two weeks until the position is filled." Exhibit D to Defendant's Motion to Dismiss at pg. 2. There is no dispute that Plaintiff's application was received in the first two week tranche and the application of the non-citizen applicant who was selected, Mr. Than Lwin Htun, was received in the second. Ms. Fitzpatrick, the staffing specialist assigned to handle the vacancies, testified in December 2005 that this language in the vacancy announcement meant that priority in applications was granted in order to earlier received tranches. Plaintiff's Opposition to Motion to Dismiss at Fitzpatrick Deposition, Attachments at 126.

Now the agency cites the depositions of Ms Fitzpatrick and Ms. Murphy dated May 11, 2007 for the proposition that "there was no requirement that plaintiff's application be forwarded and reviewed independently of the application of Mr. Than." Defendant's Reply at 22. It should be noted that in her testimony on May 11, 2007, Ms. Fitzpatrick specifically adopted her prior deposition testimony which included her statement that the language in the vacancy announcement meant a priority for earlier application tranches. See Exhibit 2 to Defendant's Reply, Fitzpatrick Deposition at page

5. BBG defends combining application tranches with the claim that a manager can evaluate the applicant pool to "provide the highest number of applications." No statement is made anywhere that such a determination was made as to the applicant pool in M/P VA 03 -29 and, if so, the specific rationale.

If the basis of a departure from the stated intention of the very carefully crafted vacancy announcement – an other instructions too -- has become it "depends on the individual circumstances" of the case, Defendant's Reply at 22, then, the trier of fact must hear the basis for the individualized determination and weigh whether one of the circumstances bearing on the departures is the age, race, national origin, or EEO complaint status of those involved.

**Conclusion**

For the foregoing reasons summary judgment as to Plaintiff's claims of retaliation and discrimination are unwarranted. The claims must be submitted to the trier of fact.

Respectfully submitted,

Timothy B. Shea
DC Bar No. 234005
Nemirow Hu & Shea
1629 K Street, NW  Suite 500
Washington, DC  20006
Tel. 202 835 0300
Fax 202 835 0306

Attorney for Plaintiff Kyaw Zaw Nyunt