GEORGE E. MARSHALL, JR.
ARBITRATOR/MEDIATOR

854 Pico Boulevard
Santa Monica, California 90405

Telephone: [310] 463-7002
Fax: [310] 234-8247

August 27, 2007

VIA FACSIMILE AND U.S. MAIL

Stephen G. Reynolds, Esq.
Assistant General Counsel
Broadcasting Board of Governors
330 Independence Avenue, SW, Room 3349
Washington, DC 20237

Bryan G. Polisuk, Esq.
Woodley & McGillivary
1125 Fifteenth Street, NW, Suite 400
Washington, DC 20005

Re: FMCS No. 06-56331
AFGE 1812/Voice of America Arbitration

Gentlemen:

Enclosed herewith, pursuant to my letter of July 9, 2007, is my opinion and award in the captioned matter. Thank you for the opportunity to be of service to you and your respective clients.

Sincerely,

GEORGE E. MARSHALL, JR.

In the Matter of Arbitration Between ) FMCS NO. 06-56331

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1812

and

BROADCASTING BOARD OF GOVERNORS

VOICE OF AMERICA ARBITRATION

ARBITRATOR'S AWARD

The undersigned arbitrator, having been selected by the parties from a list of arbitrators supplied by the Federal Mediation and Conciliation Service, in accordance with their Negotiated Labor Management Agreement (NLMA) effective September 22, 2005, and having read the documentary evidence and other proofs of the parties, and having reviewed, analyzed, and evaluated the evidence, proofs and written argument of the parties, hereby finds, decides, and awards as follows:

1. The grievance is arbitrable for the following reasons and exhibits submitted by the parties with their respective briefs:

    a) By letter dated June 5, 2007, the Agency, through its Chief, Labor and Employee Relations, Mary Poggioli, effectively waived its right to argue questions of arbitrability relative to this grievance (Union Brief, Exhibit F).
    b) The parties submitted timely briefs on the merits of the grievance in accordance with their agreement, memorialized in Exhibit F, the letter of June 5, 2007.

2. The Agency, by interpreting and applying the statutory term "suitably qualified" to mean "equally or better qualified" to U.S. citizen members of the Union employed pursuant to a NLMA with the Agency, did violate the NLMA and the United States Information and Education Exchange Act of 1948, as amended (Act), in requiring U.S. citizen employees to be "equally or better qualified" than a non-U.S. citizen, in order to fill a vacant position, thereby depriving employee members employment and promotional opportunities under the NLMA and the Act.

3. The Agency's interpretation and application of a statutory term, inconsistent with the Agency's prior interpretation of the term, for more than two decades without protest from the Union, does not establish a past practice binding upon the Agency and the Union.

4. The grievance is sustained. The arbitrator hereby remands to the parties the determination of the remedy, the extent and calculation of damages suffered by the Union and its members as a result of the violations.

5. The arbitrator will retain jurisdiction to assist the parties with the determination and implementation of the remedy. Either party may invoke the arbitrator's retained jurisdiction by written request sent to the address listed on the transmittal letter accompanying this Award.

August 27, 2007
Santa Monica, California

GEORGE E. MARSHALL, JR.

|  |  |
|---|---|
| In the Matter of Arbitration Between | FMCS NO. 06-56331 |
|  | VOICE OF AMERICA ARBITRATION |
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1812 |  |
| and | ARBITRATOR'S OPINION |
| BROADCASTING BOARD OF GOVERNORS |  |

## STATEMENT OF THE CASE

The American Federation of Government Employees, Local 1812 (Union) filed a grievance on its behalf and on behalf of its members employed by the Broadcasting Board of Governors (BBG, or Agency) challenging the BBG's interpretation of the term "suitably qualified" as set forth in Section 8 of the United States Information and Educational Exchange Act of 1948 (P.L. 80-402), as amended and codified at 22 USC Section 1474 (Act, or Statute). The Union contends the BBG interpreted the term to mean "minimally qualified" in filling job vacancies at the Agency in the hiring of U.S. citizens vis a vis aliens prior to 1983 and now interprets the term to mean "equally or better qualified".

The BBG contends the grievance should be denied for at least two reasons: 1) it has interpreted the term "suitably qualified" to mean "equally or better qualified" for more than twenty (20) years without protest from the Union, who was advised they were going to interpret the term in this manner and 2) the term "suitably qualified" is ambiguous and under the tests set forth by the U.S. Supreme Court in Chevron, USA, Inc. v. Natural Res. Def. Counsel, Inc., 467 U.S. 837 (1984), the Court, in reviewing an agency's interpretation of its authority under a statute it administers, will uphold that interpretation as long as it is a reasonable interpretation of the statute. The BBG contends its interpretation of the statutory language is reasonable and is supported by the legislative history of the statue and its amendments.

Having been unable to resolve the grievance under their negotiated labor agreement, the Union and the BBG decided in lieu of an arbitration hearing to submit the matter by briefs, to this arbitrator, which were timely filed, followed by reply briefs on June 27, 2007, which were received June 28, 2007.

//
//
//
//

## HISTORY OF THE PARTIES

The U.S. Information and Educational Exchange Act of 1948 (popularly known as the Smith-Mundt Act), 22 U.S.C. Section 1431 et seq.), established the platform for the United States government's international broadcasting practices. See Agency brief, Exhibit A, Table of Authorities. Since 1948, these practices have been carried out by federal agencies that have been known by a number of different names, including the United States Information Agency (USIA) and the United States International Communication Agency (ICA).

According to the Agency brief, on October 1, 1999, the Broadcasting Board of Governors (BBG, or Agency) became the independent Federal agency responsible for all U.S. government and government sponsored, non-military, international broadcasting. This was the result of the 1998 Foreign Affairs Reform and Restructuring Act (P.L. 105-277). See Agency brief, page 2.

The broadcast entities under the control of BBG include Voice of America (VOA), Middle East Broadcasting Network (MBN), Radio Free Europe/Radio Liberty (RFE/RL), Radio Free Asia (RFA), and Radio and TV Marti. These broadcast entities carry news and informational programming to a worldwide audience of more than 140 million radio listeners, television viewers, and internet users per week in English and over forty non-English languages. Also under the supervision of the BBG, the International Broadcasting Bureau (IBB) provides administrative and engineering support for the BBG network.

Although the BBG is comprised of five broadcast organizations, the issues in this grievance relate only to the employment practices within the VOA and Radio and TV Marti.

The American Federation of Government Employees, Local 1812 (Union) is a labor organization representing approximately 800 federal employees of the BBG. The VOA, an organizational element of the Agency, is a multimedia international broadcasting service, which broadcasts more than 1,000 hours of news, information, educational, and cultural programming every week to an estimated worldwide audience of more than 115 million people. The Union and the Agency currently are parties to a Negotiated Labor-Management Agreement (NLMA or CBA) effective September 22, 2005.

## BACKGROUND

This arbitration arose upon the filing of an institutional grievance dated June 7, 2006 by the Union, in accordance with Article 21, Section 7 of the NLMA, alleging the BBG has violated "on a routine and continuing basis Section 8 of the United States

2

AUG-27-2007 15:26 From:2024521090 Case 1:06-cv-01152-JDB Document 30-2 ZEROID AND COMPANY INC. Filed 09/05/2007 Page 6 of 13

AUG-27-2007 11:48 AM GEORGE MARSHALL 210 254 8247 P.02

Information and Educational Exchange Act of 1948 (P.L. 80-402) amended in 1979 and codified at 22 USC Section 1474 (Act or Statute). Section 1474 states:

> In carrying out the provisions of this Act [22 USC Section 1431 et seq.] the Secretary, or any Government agency authorized to administer such provisions, may --
> (1) employ, without regard to the Civil Service and classification laws, aliens within the United States and abroad for service in the United States relating to the translation or narration of colloquial speech in foreign languages or the preparation and production of foreign language programs when <u>suitably qualified United States citizens are not available</u> when job vacancies occur...(Emphasis added)."

According to the Union, the BBG has been hiring non-U.S. citizens in spite of the existence of suitably qualified U.S. citizens. The basis for violating the Act is the Agency's Manual of Operations and Administration (MOA). According to Section 822 of the MOA:

822.1(a)  A non-U.S. citizen may be employed or promoted only if no <u>equally or better qualified U.S. citizen is available</u> to perform the duties of the position. (Emphasis added)

823.1(a)  The office of Personnel is responsible for assuring that a non-U.S. citizen is employed in a position covered by 821.1 of this Section and only in the absence of <u>available U.S. citizen candidates who are equally or better qualified than the non-citizen to perform the duties of the position.</u> (Emphasis Added).

821.3  The United States Information and Educational Exchange Act, P.L. 80-402, as amended, authorizes employment of non-U.S. citizens in the United States for the services described in 821.1 above <u>when equally or better qualified U.S. citizens are not available.</u> (Emphasis Added)). (Exhibit E, Union's initial brief).

The Union contends Agency policy violates the Act by allowing the Agency to hire non-U.S. citizens despite the presence of suitably qualified U.S. citizens. The policy also places a higher standard on U.S. citizens beyond the suitably qualified standard contained in the Act. Instead of being suitably qualified, the Agency now requires U.S. citizens to be equally or better qualified than a non-U.S. citizen.

In 1983, the Agency, by letter dated May 25, 1983 to Marie Ciliberti, a Vice President of the Union, confirmed their recent discussions and enclosed an "Overview" of the process the Agency was going to use to compare the qualifications of citizen

3

candidates for positions with VOA against those of non-citizen candidates and employees. In the "Overview" under the heading "Appointments of Non-U.S. Citizens" is the statement "Non-U.S. citizens may be appointed when there are no equally or better qualified U.S. citizens available." The letter went on to state its author, K. Gregg Prillaman, would like to meet with Ms. Ciliberti on May 26 to discuss the evaluation process and get your views (Agency Brief, Exhibit A). There is a hand written notation on this letter, initialed "KGP" which states "OK d by Marie Ciliberti in meeting 5/27/83". A file memo confirming the hand written notation was prepared by Prillaman dated May 27, 1983 (Agency Brief, Exhibit B).

In 1984, by letter dated May 15, 1984, to Norman Painter, Union President, the Agency sent two copies of a revision to MOA VA-820 Employing Non-U.S. Citizens for Duty in the United States, seeking Union comments or its intent to negotiate on any of the regulations by June 15, 1984 (Agency Brief, Exhibit C).

It is noted in the MOA accompanying the letter in Section 821.1 Purposes, that "Non-U.S. citizens may be employed only when at least equally qualified U.S. citizens are unavailable" while in Section 822.1 Employment and Promotion – Limitations – "a. A non-U.S. citizen may be appointed only after reasonable efforts to recruit equally or better qualified U.S. citizens have been made and have been unsuccessful. A non-U.S. citizen may be employed or promoted only if no equally or better qualified U.S. citizen is available to perform the duties of the position."

It appears no response was ever made to the letter of May 15, 1984.

Norman Painter, President of Union Local 1812, in a letter dated April 22, 1986 to Glenn Sutton, Director of Personnel for VOA, thanked him for his letter of April 18, 1986 with the material concerning the evaluation of the qualifications of U.S. citizens in comparison to non-U.S. citizens as candidates for IRB positions. Painter went on to state in the letter "this came to our surprised attention only quite recently" (Agency Brief, Exhibit E). Commenting on materials he had reviewed, Painter stated further it was obvious the Union had not been given the opportunity to negotiate on the impact of this change in the conditions of employment. Painter further stated the Union was not properly notified of the proposed change, there was no document among the materials sent by Sutton which would indicate the Union and Agency negotiated and reached agreement on this issue; for there was only a note by Gregg Prillaman that Marie Ciliberti had oked it. According to Painter, Ciliberti, as a Vice President, did not have authority to single handedly negotiate a matter of this nature and, he, Painter became President in January 1983, and was succeeded by Les Daniel as General Vice President and when this "agreement" was shown to him he had never seen it and neither had Painter.

In addition, Painter indicated to Sutton the Union was sympathetic with the problem and was willing to meet with management and enter negotiations toward reaching a workable agreement satisfactory to all parties.

4

Sutton responded to Painter's letter by letter dated May 2, 1986 (Agency Brief, Exhibit F) indicating the system by which the Agency compares the qualifications of citizens to non-citizens had been in use since May 1983 and as far as the Agency was concerned, the Union had agreed to the system which would be continued until such time as the Union submitted proposals for changes and the parties entered formal negotiations and those negotiations were completed. The Agency never received any proposals.

By letter time stamped September 22, 1986, the Agency transmitted copies of a revised MOA V-A Section 820 to Union President, Painter (Agency Brief Exhibit H). The MOA Section contained revisions unrelated to the matter in dispute here, but contained the "equally or better qualified" language now contested by the Union. Exhibit H invited questions from the Union. The Union did not question the "equally or better qualified" language.

The Agency, by memorandum dated April 19, 1988 transmitted to Union President Painter, for review prior to implementation, new internal operating guidelines the Agency planned to use to evaluate the qualifications of U.S. and non-U.S. citizens. The memorandum invited questions, comments, or suggestions on the guidelines from the Union. The guidelines in part, state, "...the Agency has interpreted the term 'suitably qualified' to mean "equally or better qualified." The Union raised no question, nor did it make any comment or suggestion concerning the quoted language.

For many years, the Agency contends the Union took no issue with the Agency's interpretation of the statutory language now at issue, although the Union was informed numerous times of the policy and had many opportunities to question, comment on, and bargain over the matter. The Agency contends that its interpretation of the statute, as well as its subsequent implementation of procedures to measure the qualifications of citizen and non-U.S. citizen applicants, constitute a binding past practice on the parties as the Union has acquiesced for the better part of two decades.

The Agency contends the grievance should be denied.

In addition, the Union contends Camille Grosdidier, Ai Duy Vo and Moe Moe Htun are members of the Union and employees of the VOA. All three of these individuals, at all material times herein, have been U.S. citizens. Each of these individuals applied for vacant posted positions in the VOA and all three were advised a non-U.S. citizen was hired to fill each of the positions for which they had applied.

Camille Grosdidier (Grosdidier), employed by the VOA since June 1987 as an international broadcaster in the French to Africa Service has a bachelor's degree in Classical Archeology and Classics and a master's degree in international affairs, both from George Washington University. Since becoming employed with the VOA in 1987, Grosdidier has experience in reporting news, conducting interviews, writing news stories and features, and broadcasting. In February 2006, Grosdidier applied for the position of an international broadcaster in the French to Africa Service, GS-1001-13. Job

5

Announcement Number M/P-06-27. Grosdidier's name, along with the name of four other applicants, was sent to the ranking panel convened by the Agency's Office of Human Resources for consideration of the position. On March 31, 2006, in an e-mail (Union Brief, Exhibit B), Grosdidier was advised non-citizen Tomothee Donangmaye was selected for the position.

Ai Duy Vo (VO), employed with VOA since October 1997 as an international broadcaster, received a bachelor's degree in international relations from the National Taiwan University in 1980. Vo's work experience during his employment with VOA includes the development of weekly features on American education and also reporting trends and recent events on college campuses in the United States. Vo, in November 2006, applied for the position of an international broadcaster in the Vietnamese Service, GS-1001-12, Job Announcement Number M/P-06-200 and appeared before the interview panel convened by the Agency's Office of Human Resources. Two other applicants, including Minh Dao, were interviewed by the panel and by letter dated April 2, 2007, Vo was informed he was not selected although he was "among the qualified applicants" (Union Brief, Exhibit C).

Moe Moe Htun (Htun) was hired by VOA as an international broadcaster in the Burmese Service since 2000. Htun received a bachelor's degree in English from Rangoon University, in Rangoon, Burma in 1982 and a bachelor's degree in broadcast journalism from the Walter Cronkite School of Journalism & Mass Communication at the Arizona State University in 2000. Htun's duties at VOA have included reading and writing news for broadcasts, creating a weekly feature radio program for children stressing democratic values, and translating English to Burmese. On November 11, 2006, Htun applied for the position of an international broadcaster in the Burmese Service, GS-1001-12, Job Announcement Number M/P-06-189. In a letter dated March 9, 2007, Htun was informed although she was "among the qualified applicants considered for the position", another applicant had been selected (Union Brief, Exhibit D). Non-U.S. citizen applicant Kyaw Zan Tha was selected for the position.

## ISSUES

The Agency did not formulate an issue or issues for the arbitrator to decide in its brief or reply brief. The Union, however did submit an issue, "[w]hether the Agency has violated the United States Information and Education Act of 1948, known as the Smith Mundt Act of 1948, Pub. L. 80-402, 62 Stat. 6 (January 27, 1948) by interpreting the term "suitably qualified" to mean "equally or better qualified" and requiring a U.S. citizen to be "equally or better qualified" than a non-U.S. citizen for a vacant position", which does not appear to understand the arbitrator's role under the Federal Arbitration Act and the NLMA. Upon review of the briefs, their exhibits and Table of Authorities submitted by the parties, the arbitrator has formulated the following issues:

1. Is the grievance arbitrable?

6

2. Whether the Agency by interpreting and applying the statutory term "suitably qualified" to mean "equally or better qualified" to U.S. citizen members of the Union employed under the NLMA, violated the NLMA and the United States Information and Education Exchange Act of 1948, as amended, in requiring U.S. citizen employees to be "equally or better qualified than a non-U.S. citizen for a vacant position?

3. Whether the Agency's interpretation and application of a statutory term, inconsistent with the Agency's prior interpretation of the term, for more than two decades without protest from the Union, establishes a past practice binding upon the Agency and the Union.

## DISCUSSION AND CONCLUSIONS

The parties have submitted many exhibits with their respective briefs, but neither party included a complete copy of their NLMA, although frequent references were made to the Agreement. The Union did attach excerpts of the NLMA Article 14 Merit Promotion and Staffing, which was quite helpful and informative. In the absence of the entire NLMA, the arbitrator has refrained from speculating as to what, if any provisions may be set forth in the CBA and what they may contain.

### Arbitrability

The Union's grievance (Union Brief, Exhibit E) indicates it is an institutional grievance filed under Article 21 of the NLMA but Article 21 was not included in the excerpts the arbitrator received. Apparently, the Agency by a letter dated August 11, 2006 advised the Union its grievance was non-arbitrable because of untimeliness and procedural deficiencies which were not elaborated in the correspondence available to the arbitrator and is made irrelevant in further statements contained in a letter dated June 5, 2007 from Mary Poggioli, Chief, Labor and Employee Relations Division (Union Brief, Exhibit F). Ms. Poggioli further stated "the parties have agreed to present their arguments to the arbitrator through briefs...on the merits, we are willing to proceed to arbitration on the merits rather than following the Article 22, Section 4 process for the resolution of questions of arbitrability." The arbitrator in reading the portions of the letter quoted above, as well as the entire letter finds the Agency waived its right to argue questions of arbitrability by proceeding to the merits. All arguments in the Agency brief relative to arbitrability are of no consequence in light of this waiver.

The grievance is arbitrable.

### Merits

The issue in the case at bar has been set out under Statement of the Case and Background, above, setting forth in abbreviated form the respective contentions of the parties. The primary dispute at this juncture of the proceedings is whether the statutory term "suitably qualified" means "minimally qualified" as the Union now contends, which

7

AUG-27-2007 15:28  From:2024521090                ZERDID AND COMPANY INC.       310 234 8247         P.07
AUG-27-2007 11:42 AM  GEORGE MARSHALL

was the Agency interpretation prior to 1983, or "equally or better qualified" as the Agency now contends. According to the Union under the "minimally qualified" interpretation, a non-U.S. citizen could only be selected for a job when no "minimally qualified" U.S. citizen was available for the job. In other words, A U.S. citizen minimally qualified for a position, would be given preference for that position over any non-U.S. citizen irrespective of the level of the non-U.S. citizen's qualifications. Both parties agree the Act provides a preference for the hiring of U.S. citizens over non-U.S. citizens, but disagree as to whether the present interpretation continues to provide that preference.

Under the Agency's "equally or better qualified" interpretation, a non-U.S. citizen may be hired unless an equally or better qualified U.S. citizen is available. The Agency says it has had difficulty finding qualified U.S. citizens to fill Agency positions and has been criticized for the quality of Agency programs, requiring the hiring of non-U.S. citizens.

In reviewing the Act, its Amendments and legislative history in the Agency Table of Authorities, Exhibit A, E, F, G, H, and Union Brief, Exhibits G-L, L-M, it is apparent the preference for U.S. citizens is maintained for vacant positions with no longer a right of a qualified U.S. citizens to bump a non-citizen in an existing position, hired at a time when no qualified citizen was available.

It is also clear "Statutory interpretation begins with the plain meaning of the statute's language. Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end." Botosan v. Paul McNally Realty, 216 F.3rd 827, 831 (9th Cir. 2000); see also BP Am. Prod. Co. Burton, 127 S. Ct. 638, 643, 166 L. Ed. 2d 494 (2006) ("Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."). Initially, the ordinary meaning of the statutory term "suitably qualified" must be determined.

The word "suitably", a derivative of the word "suitable" is defined as "well fitted for the purpose; appropriate" while the word "qualified", a derivative of the word "qualify" is defined as "competent or fit for a position or purpose." Oxford Desk Dictionary and Thesaurus Second American Edition, 2002. If the statutory term "suitably qualified" is to be interpreted in accordance with its ordinary meaning, then, as long as a U.S. citizen applicant is "well fitted" or "appropriate" for a position in the agency, then he or she must be given preference over any non-U.S. citizen, irrespective of the non-citizen's qualifications. The search, at that point, to fill the position is over.

The Agency by interpreting the term "suitably qualified" to mean " equally or better qualified" has ignored the plain meaning of the statutory term and therefore is erroneous because it ignores the explicit intent of Congress to give preference to U.S. citizens over non-U.S. citizens and requires the Agency to compare the qualifications of a U.S. citizen against the qualifications of a non-U.S. citizen. This is improper because the language of the Act makes no reference to the relative qualifications of non-U.S. citizen

applicants. The only qualifications the Agency may take into account when filling a position are the qualifications of the U.S. citizen applicant. There should be no comparison of qualifications between a U.S. citizen applicant and a non-U.S. citizen applicant. If the U.S. citizen is "suitably qualified", the analysis ends and the U.S. citizen is entitled to the job without any consideration of the non-U.S. citizen's qualifications. Thus, the Agency's interpretation of "suitably qualified" is at odds with the plain statutory language of the Act.

The arbitrator, contrary to the argument of the Agency, does not find the term "suitably qualified" to be ambiguous and subject to the two pronged test set forth by the U.S. Supreme Court in Chevron, USA, Inc. v. Natural Res. Def. Counsel, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (Agency Table of Authorities, Exhibit C) This opinion appears to be shared by the Congress when it declined to amend the statutory term at issue here when requested by the Agency to do so in 1979 and when it declined to amend at a later time when it had an opportunity to do so. See Union Brief, Exhibits G, H, K, and Agency Table of Authorities Exhibits E, F, and G.

The Committee Report Comment in Exhibit G, Agency Table of Authorities, attempts to provide some guidance to the Agency relative to the interpretation of the term "suitably qualified", finding the term "suitably qualified" "adequate to reflect the staffing needs of VOA, if interpreted correctly." The Committee Comment goes on to state "a suitably qualified person does not mean one who is qualified under minimum standards, but a person whose skills match the demands of the position as well as the demands of the Agency." Rather than accept and rely on the guidance of these comments, the Agency relied on earlier comments which led it to its "equally or better" interpretation which ignores the plain meaning of the term "suitably qualified."

The Union in its briefs recognize the plain meaning of the term "suitably qualified" and at times embraces the meaning and at other times wants to rely on the Agency's pre 1983 interpretation of "minimally qualified", which is definitely inappropriate in light of the foregoing discussion.

Since the Agency claims a past practice has been established which precludes the Union's grievance, the Agency has the burden of proving its establishment. A "past practice is a pattern of prior conduct consistently undertaken in recurring situations so as to evolve into an understanding of the parties that the conduct is the appropriate course of action. Such a practices arise as a dynamic of a collective bargaining relationship in response to traditions, customs, and unique circumstances of a work place. The factors used to determine whether work place activity qualifies as a "past practice" are clarity and consistency of the pattern of conduct, longevity and repetition of the activity, acceptability of the pattern, and mutual acknowledgement of the pattern by the parties.

In the instant case, the Agency is charged with administering a Statute and interpreting a statutory term "suitably qualified" which it has for more than two decades interpreted erroneously and applied it to the employment and promotional opportunities of its employee Union members. The Union argues such erroneous interpretation is

9

illegal for it violates the Statute, forces a party to accede to a violation of its rights under law and that any practice which violates federal law cannot constitute a binding practice on a party (citations omitted). In applying the factors stated above, the Agency cannot meet its burden of proof because it has not shown acceptability and acknowledgement of the pattern by the Union, although it has shown no protest by the Union since 1986 when the Union President was surprised by the Agency representation the Union had agreed to its interpretation of the term and the Union made it clear it had not done so. In addition, the Union's silence over the years cannot constitute acquiescence or acceptance of an erroneous interpretation. The Agency cannot meet its burden of proving the existence of a binding past practice.

Although the parties have not argued a violation of the NLMA, it would appear an erroneous interpretation of the Statue would have an impact on Article 14 of the NLMA and would constitute a violation of Agency policy to promote from within wherever possible (Section 2), and Section 10 where Ranking Panels are not properly or improperly convened or when the appropriate number of candidates are not referred for consideration and selection by the selecting official.

It would also appear the erroneous interpretation may have impacted upon the failure of the Agency to hire applicants Camille Grosdidier, Ai Duy Vo and Moe Moe Htun, there by violating their promotional opportunities under the NLMA and the NLMA as previously discussed above.

In conclusion, the grievance is sustained and granted. The determination of the remedy, determination, extent and calculation of damages, if any, is remanded to the parties. The arbitrator will retain jurisdiction to assist the parties with the determination and implementation of the remedy.

August 27, 2007
Santa Monica, California

GEORGE E. MARSHALL, JR.

10