## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KYAW ZAW NYUNT,**

     **Plaintiff,**

     **v.**

**KENNETH Y. TOMLINSON,**
**Chairman, Broadcasting Board of Governors,**

     **Defendant.**

**Civil Action No.  06-1152 (JDB)**

## <u>MEMORANDUM OPINION</u>

Plaintiff Kyaw Zaw Nyunt brings this action against defendant Kenneth Y. Tomlinson in his official capacity as Chairman of the Broadcasting Board of Governors ("the Board" or "BBG") alleging "discrimination based on age, race, national origin, and retaliation," and seeking review of allegedly "unauthorized agency action."  Compl. at 1.  Nyunt asserts his claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq.; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981 et seq.; BBG governing law; the Administrative Procedure Act ("APA"); and the law of the District of Columbia.  Currently before the Court are Nyunt's motion for partial summary judgment and defendant's motion to dismiss or, in the alternative, for summary judgment.  Upon careful consideration of the motions and the parties' memoranda, the applicable law, and the entire record, the Court will deny Nyunt's motion, and will grant the Board's motion.

## BACKGROUND

Nyunt, a United States citizen of Burmese national origin, is an International Radio

Broadcaster (GS-11) for the Broadcasting Board of Governors.  Pl.'s Statement of Material Facts as to Which There is No Genuine Issue ("Pl.'s Statement") ¶ 1.  Specifically, he works in the Burmese Service of the Asian division of Voice of America, and has since 1998.  Prior to his employment at BBG, Nyunt worked for the British Broadcasting Company as a broadcaster from 1968 to 1971, as Deputy Chief of Mission for Burma in the Rome Embassy for three years, and as an officer for the Burmese Ministry of Foreign Affairs in Rangoon.  Id.

In the spring of 2003, when Nyunt was 58-years-old, BBG announced two vacancies for GS-12 positions in the Burmese Service.  Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s Statement") ¶ 4.  One position for an International Radio Broadcaster was designated under Vacancy Announcement Number M/P 03-26 ("VA 03-26"), and one position for an International Broadcaster was designated under Vacancy Announcement Number M/P 03-29 ("VA 03-29").  Id.  Nyunt filed timely applications for each position.

The Certificates of Eligibles for VA 03-26 demonstrate that eight people applied for the position of International Radio Broadcaster.  Def.'s Opp. Ex. M at 1-3.  Three applicants were U.S. citizens, and five were non-citizens.  The Certificates of Eligibles listed the candidates' names along with the scores they were given based upon a review of their applications.  The Certificate of Eligibles for U.S. citizens listed U. Chit Oo with a score of 97, U San Myint with a score of 89, and Nyunt with a score of 89, which was calculated incorrectly and should have been 96.  "Pursuant to 5 C.F.R. § 332.404, commonly referred to as the 'Rule of Three,' a selection [of the individual to fill the position] must be made from among the three highest-ranked applicants on the certificate of eligibles."  Def.'s Opp. Ex. U, Murphy Decl. at ¶ 5.  Thus, even though Nyunt had been assigned an incorrect score, he was still considered for the position as one of the

top three contenders.  After interviews were conducted, U San Myint ("Myint"), a 69-year-old U.S. citizen of Burmese national origin, was selected.

For VA 03-29, the Certificates of Eligibles demonstrate that six people were considered for the position of International Broadcaster.  Def.'s Opp. Ex. I at 1-2.  Three were U.S. citizens, and three were not.  This time Nyunt was ranked the highest on the Certificate of Eligibles for U.S. citizens with a score of 94, followed by U San Myint with a score of 84 and Khin M. Soe with a score of 83.67.  Id. at 2.  On the non-citizen Certificate of Eligibles, Lwin Htun Than was the highest ranked contender with a score of 99, followed by Nyi Nyi with a score of 89 and Win Aung with a score of 84.  Id. at 1.  No interviews were conducted for this position, but an offer was ultimately extended to Lwin Htun Than ("Than"), a 38-year-old non-citizen of Burmese national origin.

On November 5, 2003, Nyunt filed a formal Equal Employment Opportunity ("EEO") Complaint of Discrimination with the agency's Office of Civil Rights alleging age and national origin discrimination in the Board's failure to select him for VA 03-26 or VA 03-29.  Def.'s Opp. Ex. A.  The Office of Civil Rights sent Nyunt a letter on November 20, 2003, advising him that the following claims were being processed:

> Whether you were discriminated against based on your National Origin . . . and Age . . . when as you claim: On September 22, 2003, you learned that you were not selected for the position of International Broadcaster (Burmese), GS-1001-12, advertised under Vacancy Announcement No. M/P-03-29, and the selectee was a younger Burmese non-citizen.  On June 16, 2003, you were also not selected for Vacancy Announcement No. M/P-03-26.

Def.'s Opp. Ex. P.

Nyunt thereafter initiated this action on June 23, 2006.  In his complaint in this Court, he

alleges: (1) that the Board violated the ADEA by failing to promote him to the GS-12 positions in VA 03-26 and VA 03-29; (2) that he was discriminated against by reason of his Burmese national origin and his Asian race in violation of Title VII; (3) that the Board disregarded his rights under 42 U.S.C. §§ 1981 and 1983; (4) that the Board retaliated against him for exercising his rights by "failing to select him for a GS-12 position, imposing discipline, withholding leave, assignments, shifts, and imposing unreasonable terms and conditions of employment and in harassing him"; (5) that the Board lacked the authority to hire a non-citizen under 22 U.S.C. § 1474(1); and (6) that the Board lacked the authority to promote a non-citizen to a supervisory position.  Nyunt has now moved for partial summary judgment on Count V.

The Board has cross-moved to dismiss or, in the alternative, for summary judgment.  It argues: (1) that Nyunt's claims of discrimination based upon race and retaliation must be dismissed for failure to exhaust administrative remedies; (2) that the claims of discrimination based upon age and national origin must be dismissed because Nyunt cannot establish a prima facie case of such discrimination; (3) that his claims based upon District of Columbia law and 42 U.S.C. §§ 1981 and 1983 must be dismissed for failure to state a claim upon which relief can be granted;[1] and (4) that the Board's interpretation of 22 U.S.C. § 1474(1) is reasonable and should be upheld.  In any event, the Board argues that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

---

[1]Nyunt has failed to respond to the Board's arguments regarding the claims premised upon District of Columbia law and 42 U.S.C. §§ 1981 and 1983.  Accordingly, the Court shall deem all claims asserted under these statutes to be abandoned, and the Court will grant the Board's motion to dismiss these claims.

## LEGAL STANDARDS

### I.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>accord</u> <u>Erickson v. Pardus</u>, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1964-65; <u>see also</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1965 (citations omitted). Hence, although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,'" <u>id.</u> (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,'" <u>id.</u> at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

The notice pleading rules, however, are not meant to impose a great burden on a plaintiff. <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005); <u>see also</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to

dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Bell Atl. Corp., 127 S. Ct. at 1965)). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan, 478 U.S. at 286).

## II.    Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

### III.  The McDonnell Douglas Framework

The framework for establishing a prima facie case of discrimination or retaliation was introduced for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and courts have since routinely applied the same analysis to claims arising under the ADEA, e.g., Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999).  The first step in the analysis requires a plaintiff to carry the burden of establishing a prima facie case by a preponderance of the evidence.  McDonnell Douglas, 411 U.S. at 802; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  In order to make out a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas, 411 U.S.

at 802.  The employer's burden, however, is merely one of production.  <u>Burdine</u>, 450 U.S. at

254-55.  The employer "need not persuade the court that it was actually motivated by the

proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to

whether it discriminated against the plaintiff."  <u>Id.</u>

    If the employer is successful, the burden shifts back to the plaintiff to show that the

employer's stated reason was a pretext for discrimination or retaliation.  <u>Reeves v. Sanderson</u>

<u>Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000).  The plaintiff "may attempt to establish that he

was the victim of intentional discrimination 'by showing that the employer's proffered

explanation is unworthy of credence.'"  <u>Id.</u> (quoting <u>Burdine</u>, 450 U.S. at 256).  But "[p]roof that

the defendant's explanation is unworthy of credence is simply one form of circumstantial

evidence that is probative of intentional discrimination."  <u>Id.</u> at 147.  Thus, the trier of fact may

also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly

drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  <u>Id.</u>

(quoting <u>Burdine</u>, 450 U.S. at 255 n.10).  "Whether judgment as a matter of law is appropriate in

any particular case will depend on a number of factors . . . includ[ing] the strength of the

plaintiff's prima facie case, the probative value of the proof that the employer's explanation is

false, and any other evidence that supports the employer's case and that properly may be

considered on a motion for judgment as a matter of law."  <u>Id.</u> at 148-49.  As the D.C. Circuit has

explained:

> Assuming then that the employer has met its burden of producing a
> nondiscriminatory reason for its actions, the focus of proceedings at trial (and at
> summary judgment) will be on whether the jury could infer discrimination from the
> combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff
> presents to attack the employer's proffered explanation for its actions; and (3) any

> further evidence of discrimination that may be available to the plaintiff (such as
> independent evidence of discriminatory statements or attitudes on the part of the
> employer) or any contrary evidence that may be available to the employer (such as
> evidence of a strong track record in equal opportunity employment).

Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also

Waterhouse v. District of Columbia, 298 F.3d 989, 992-993 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the

McDonnell-Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"

Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  Once the defendant has proffered a

legitimate non-discriminatory reason for its action, then, the question is whether that proffered

reason is a pretext for discrimination.  At this point, the McDonnell Douglas shifting burdens

framework effectively evaporates -- the sole remaining issue is discrimination vel non, and "to

survive summary judgment the plaintiff must show that a reasonable jury could conclude from all

of the evidence that the adverse employment decision was made for a discriminatory reason."

Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43.

Examination of that issue in this setting therefore requires consideration of all the relevant

circumstances in evidence, including the strength of the prima facie case, any direct evidence of

discrimination, any circumstantial evidence that defendant's proffered explanation is false (which

may be enough with the prima facie case to infer unlawful discrimination), and any properly

considered evidence supporting the employer's case.  Reeves, 530 U.S. at 147-48; see also

Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004); Lathram, 336 F.3d at

1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at 1290.

**DISCUSSION**

I.    **Failure to Exhaust Administrative Remedies**

A federal employee alleging discrimination in violation of Title VII is required to timely exhaust his or her administrative remedies.  Harris v. Gonzales, 488 F.3d 442, 443 (D.C. Cir. 2007); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Thorne v. Cavazos, 744 F. Supp. 348, 350 (D.D.C. 1990).  Failure to do so will ordinarily bar a judicial remedy.  See Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985); see also Rattigan v. Gonzales, 503 F. Supp. 2d 56, 68 (D.D.C. 2007).  First, the employee is required to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Then, if the matter remains unresolved after informal counseling, the employee may file a formal discrimination complaint with the agency.  Bowie v. Ashcroft, 283 F. Supp. 2d 25, 33 (D.D.C. 2003).

Any decision on the matter may be appealed to the Equal Employment Opportunity Commission, or challenged through the filing of a civil action in federal district court.  Robinson v. Chao, 403 F. Supp. 2d 24, 28 (D.D.C. 2005); see also 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  A civil action is, however, limited in scope by the underlying administrative complaint.  A claimant may only litigate those allegations that were contained in the EEO complaint or those that are "like or reasonably related to the allegations of the charge."  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); see also Lane v. Hilbert, 2004 WL 1071330 (D.C. Cir. May 12, 2004).

In Nyunt's November 5, 2003 EEO Complaint of Discrimination, he checked the categories of age and national origin.  Although the form clearly contained categories for race

and reprisal, he failed to select either of those areas as a basis upon which he was allegedly

discriminated.  Thus, the Board now contends that Nyunt has not properly exhausted his

administrative remedies for his discrimination claims based upon race and retaliation.  In

response, Nyunt asserts two arguments.  First, he argues that his racial discrimination claim was

properly exhausted because "Burmese is as much a racial descriptor as national origin."  Pl.'s

Opp. at 8.  Second, he argues that his retaliation claim was properly exhausted because he

attached a letter to his EEO complaint with an excerpt from a threatening speech made by Khin

Maung Htay ("Htay"), the Chief of the Burmese Service.

      Based upon Nyunt's assertion that "Burmese is as much a racial descriptor as national

origin," he argues that his claim of racial discrimination should be viewed as "like or reasonably

related to" his properly exhausted national origin claim.  The Court is unconvinced by this

argument, however, which would undermine the purpose of the exhaustion doctrine -- to provide

the agency with notice to investigate possible grounds of discrimination.  Here, the agency was

unaware that race may be an issue.  Although Nyunt attempts to conflate race and national origin,

it is clear that these are ideologically distinct categories.  See Espinoza v. Farah Mfg. Co., 414

U.S. 86, 88 (1973) (defining national origin as "the country where a person was born, or, more

broadly, the country from which his or her ancestors came"); Roach v. Dresser Indus. Valve and

Instrument Div., 494 F. Supp. 215, 216 (W.D. La.1980) (finding that the legislative history of

Title VII precisely states that a person's national origin has nothing to do with race).  Indeed,

Nyunt's argument is refuted by the very language of Title VII, which separately lists "race" and

"national origin" as prohibited bases of discrimination.  See 42 U.S.C. § 2000e-16(a).

      Nyunt should have had ample warning that the law viewed these categories to be distinct

since the administrative discrimination complaint prompted him to check whether he was discriminated against because of "race or color" or because of "national origin."  Because these are two separate claims, it is unfair to assume "that a conclusion about one could reasonably be expected to grow out of an investigation of the other."  Sisay v. Greyhound Lines, Inc., 34 F. Supp. 2d 59, 64 (D.D.C. 1998) (dismissing plaintiff's national origin claim of discrimination where only racial discrimination was properly exhausted); Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner, 949 F. Supp. 13, 19 (D.D.C. 1996) (stating that allegations of race discrimination are not relevant to claims of national origin discrimination).  Thus, Nyunt cannot merge these two categories for the first time in this civil action.  The agency was only notified about potential discrimination based upon national origin, and hence the claim of racial discrimination must be dismissed for failure to exhaust administrative remedies.

To support his claim of retaliation, Nyunt now cites to a letter that was attached to his EEO complaint.  Def.'s Opp. Ex. A at 4-7.  On page three of the letter, Nyunt indicates that "Mr. Htay asked [all of the employees] not to complain if [they] were not selected" for the promotions. He further indicates that Htay threatened that a personnel action could be taken against any employee who did complain.  Id. at 6.  Whatever can be said of Htay's alleged conduct, this letter simply is not an allegation of retaliation.  Nyunt did not allege that he had engaged in any protected activity, and he failed to allege that any action was taken as a result of any protected activity he engaged in.  That Nyunt may have viewed Htay's alleged conduct as inappropriate and threatening is not sufficient to state a claim of retaliation.

Further cutting against both of Nyunt's arguments is the fact that the Office of Civil Rights sent him a letter on November 20, 2003, which stated that the agency was only processing

claims of discrimination based upon national origin and age. The letter clearly stated that Nyunt could notify the agency in writing within 10 days of receiving the letter if his claims had not been identified correctly. Nyunt never objected to the Board's interpretation that it should only process and investigate the two claims of discrimination that Nyunt selected on his complaint: national origin and age. The discrimination claims based upon race and retaliation therefore must be dismissed for failure to exhaust administrative remedies.

## II.    Title VII & ADEA Claims

### A.    Prima Facie Case of Discrimination

The Board next argues that Nyunt's Title VII discrimination claim based upon national origin and his ADEA age discrimination claim must be dismissed for failure to state a prima facie case of discrimination under the <u>McDonnell Douglas</u> framework. To make out a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." <u>Stella</u>, 284 F.3d at 145 (quoting <u>Brown</u>, 199 F.3d at 452). The Board concedes that Nyunt's national origin and age establish that he is a member of two protected classes and that he suffered an adverse action when he was not selected for the GS-12 positions offered through VA 03-26 and VA 03-29. The Board contests, however, Nyunt's ability to demonstrate that the adverse actions give rise to an inference of discrimination.

The Supreme Court has emphatically declared that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." <u>Burdine</u>, 450 U.S. at 253. Nyunt argues that an inference of discrimination arises merely if he demonstrates that "his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job

applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n. 44 (1977); see also Teneyck, 365 F.3d at 1150-51. The Supreme Court has indeed stated that "[e]limination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one." Int'l Bhd. of Teamsters, 431 U.S. at 358 n. 44. Hence, the Court will assume here that Nyunt has established a prima facie case of discrimination since the Board has conceded that Nyunt was qualified for each position and that each position was vacant.

### B.    The Proffered Legitimate, Non-Discriminatory Justification

Once a plaintiff has made out a prima facie case of discrimination, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for the adverse employment action. Here, the Board relies on the legitimate, non-discriminatory justification that based on an assessment of each applicant's qualifications, Myint and Than were the best qualified to fill VA 03-26 and VA 03-29. See Armstrong v. Jackson, 2006 WL 2024975, at *8 (D.D.C. July 17, 2006) (explaining that "[a]n employer's judgment that is based on an assessment of the applicant's professional qualifications constitutes a legitimate, non-discriminatory justification"); see also Crockett v. Abraham, 284 F.3d 131, 133 (D.C. Cir. 2002).

A three-member panel interviewed the candidates for VA 03-26, and each member of the panel determined that Myint was better qualified for the position than Nyunt. Irena Burgener stated that Myint "was much more specific in his responses to various questions. He had specific ideas about how he would change . . . certain aspects of the service. He seemed to have generated more original materials/reports as opposed to just reporting or passing along new

-14-

stories . . . generated by other news services." Def.'s Opp. Ex. N at 3.  Bageshwar Verma stated

that Myint's

> answers were direct and to the point.  Mr. Nyunt's answers dragged on, and
> sometimes he lost me.  Second, Mr. Myint had worked as a broadcaster and editor
> for most of his professional life, while I recall from Mr. Nyunt's resume he had
> initially worked for the BBC as a broadcaster in the 70s, then left broadcasting for
> over 25 years until he came to the VOA in 1998.  As a result, Mr. Myint's
> experience as a broadcaster was longer and more in depth.  Third, Mr. Myint gave a
> better account of himself during the interview . . . .

Def.'s Opp. Ex. S at 2.  And the third member of the interview panel, Khin Maung Htay, stated

that Myint had "been an active journalist for over 30 years and in the VOA Burmese Service for

10 years and longer than Mr. Nyunt on both counts." Def.'s Opp. Ex. T at 2.  Htay determined

that Myint was "a better and more experienced translator from English to Burmese." Id. at 3.

Thus, the interview panel unanimously agreed that Myint was the best qualified for the job.

 For the International Broadcaster position offered through VA 03-29, each subject matter

expert ranked Than the highest of all applicants on the Certificate of Eligibles and in the

Knowledge, Skills and Abilities categories.  According to the Director of Human Resources, M.

Laprell Murphy, "Mr. Than was selected because he exhibited exemplary skills with regard to the

internet, web management, editorial skills, translation skills and management skills." Def.'s Opp.

Ex. U at 3.  Than had worked for the BBC for eleven years prior to his arrival at VOA, advancing

from a part-time producer in the Burmese Section to a Senior Producer, Duty Editor and Website

Coordinator in the Burmese Section to a Regional Expert and Broadcast Journalist for BBC's

World Service.  Def.'s Opp. Ex. G. at 1.

 The selecting official, Htay, agreed with the assessment of the subject matter experts.

Htay noted that Than was "experienced in field and internet-sourcing in reporting, web designing

-15-

and web management work" and that Than had "strong editing, journalism, and leadership skills." Def.'s Opp. Ex. T at 4. According to Htay's review of their qualifications, Than had "accomplished many significant projects that includes publishing translations from English to Burmese. Mr. Nyunt has not the same amount of experience at the same level" as Than. Id. Simply stated, Htay chose Than "because his experience was superior overall." Id.

## C.    Pretext Analysis

Because the Board has put forward a legitimate, nondiscriminatory reason for its actions, Nyunt must establish that the asserted explanation is a mere pretext for unlawful discrimination. As noted above, the McDonnell Douglas burden-shifting framework is completed and the sole remaining question is discrimination vel non: "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathram, 336 F.3d at 1088.

Nyunt first argues that "there is direct proof of discrimination that obviates resort to the more refined analytical approaches" of the McDonnell Douglas burden-shifting framework. Pl.'s Opp. at 11. To support this argument, he relies on three separate claims. First, Nyunt argues that prior to the selection of Myint and Than, Htay warned him along with the other applicants that they should not complaint if they were not selected because such complaints could have an impact on their jobs. Pl.'s Opp. Ex. at 2. Although Nyunt perceived this alleged comment to be threatening, there is nothing on the face of the comment to evidence discrimination based upon national origin or age. Such a comment certainly would have been inappropriate, but that does nothing to support Nyunt's argument that he was not selected because of discrimination.

Nyunt next argues that certain comments constitute direct evidence of age discrimination

for his ADEA claim. He appears to be most upset by glowing comments made in relation to Than. Dan Robinson, the former Chief of the Burmese Service of VOA from 1997-2001, described Than as "a star on the rise," Pl.'s Opp. Ex. at 160, and Khin Maung Win, the former Supervisory Editor for the Burmese Service of VOA from 1997-2001, stated that Than "was known as a rising talent in terms of his journalism work," Pl.'s Opp. Ex. at 158. Although Nyunt takes offense at these statements, they do not evidence discrimination based upon national origin or age. These comments merely speak to Than's high qualifications and reputation. See Shager v. Upjohn Co., 913 F.2d 398, 402 (7th Cir. 1990) ("We do not hold that any and all words in praise of youth expose an employer to a trial under the age discrimination law.").

Nyunt also refers to Robinson's statement explaining that "the Burmese Service had been lagging behind in the 1990s, threatened with losing audience share because it was considered (in terms of sound) boring with tired voicing techniques." Pl.'s Opp. Ex. at 162. Robinson stated that the agency was therefore "in need of broadcasters with a vision that would appeal to younger, more contemporary audiences." Id. Robinson also explained that several broadcasters were approaching retirement and that "it made sense to recruit younger broadcasters who would be around for years to come." Id. Nyunt contends that Htay adopted this belief and allegedly declared an intent to hire younger broadcasters.

Despite that contention, however, the Court does not view these comments to be indicative of age discrimination as prohibited by the ADEA. Instead, the record supports the conclusion that the Board was validly concerned about attracting new workers to maintain or increase the market share for the Burmese Service, especially in light of the possible future attrition of several employees. See Silver v. Leavitt, 2006 WL 626928, at *14 (D.D.C. Mar. 13,

2006).  The comments Nyunt cites were not discriminatory on their face, and nothing in the

record indicates that the failure to hire him was motivated by "inaccurate and stigmatizing

stereotypes" about members of his protected classes, such as a lack of productivity or decreased

competence.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993); Breen v. Mineta, 2005

WL 3276163, at *4-5 (D.D.C. Sept. 30, 2005) (finding that federal employer's statement that

fiscal budget was strained and approximately forty percent of relevant employees were eligible

for retirement did not constitute evidence of discrimination because the statement only identified

concerns about excessive costs and the "probability of attrition of large numbers of experienced

personnel in the foreseeable future" rather than "inaccurate and denigrating generalizations about

age").  Hence, these alleged comments do not support a finding of direct discrimination.  Instead,

the Court will take these allegations into consideration along with the rest of the evidence

presented by Nyunt in assessing whether a reasonable jury could conclude that the Board's

legitimate, non-discriminatory reason was actually a pretext for discrimination.

        For his last argument of direct discrimination, Nyunt essentially argues that Than was

preselected for VA 03-29 and that VA 03-26 was merely set up to "safeguard the second

selection from criticism."  Nyunt asserts that "it was well known that [Than] had been recruited

before" and that the agency wanted to hire him.  Pl.'s Opp. at 12.  But Nyunt still fails to present

any evidence that discrimination played a role in the Board's actions.  Even if there had been

favoritism in the selection of Than, or Myint for that matter, courts have held that "[p]reselection

. . . does not violate Title VII when such preselection is based on the qualifications of the party

and not on some basis prohibited by Title VII."  Goostree v. Tennessee, 796 F.2d 854, 861 (6th

Cir.1986); Housley v. Boeing Co., 177 F. Supp. 2d 1209, 1217 (D. Kan. 2001) (stating that

"[f]avoritism based on criteria other than gender or age . . . does not violate the federal anti-discrimination laws and does not raise an inference of discrimination"), aff'd, 50 Fed. Appx. 934 (10th Cir. 2002); Shelborne v. Runyon, 1997 WL 527352, at *10 (D.D.C. Aug. 21, 1997). There is nothing in the record to indicate that the Board was motivated by any desire other than to potentially hire a superbly qualified candidate.  Therefore, Nyunt's pre-selection claim does not constitute evidence of direct discrimination.  See Oliver-Simon v. Nicholson, 384 F. Supp. 2d 298, 309-10 (D.D.C. 2005) (explaining that although plaintiff's evidence may demonstrate that there was favoritism in the selection process, her evidence was insufficient "to establish that defendant's proffered explanation is pretextual absent some actual evidence that defendant acted on a motivation to discriminate against plaintiff based on her age, race or sex").

Nyunt's remaining arguments of indirect discrimination revolve around an alleged "host of irregularities" that occurred during the selection process.  Pl.'s Opp. at 13.  For VA 03-26, he first argues that his voicing skills were superior to Myint's and that he was therefore more qualified for the position.  A plaintiff asserting that an employer's explanation is pretextual based upon comparative qualifications faces a formidable task.  "[I]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (quoting Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006)).  Courts should not second-guess or reexamine hiring decisions involving close choices between qualified candidates.  To do otherwise might "render the judiciary a 'super-personnel department that reexamines an entity's business decisions' -- a role we have repeatedly disclaimed." Id. at 707 (quoting Holcomb, 433 F.3d at 897); see also Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2003).

Here, the record does not support an inference that Nyunt was "discernibly better" than Myint.  See Jackson, 496 F.3d at 708.  The three-member interview panel had a first-hand opportunity to assess the voicing skills in dispute, which were by no means the only requirement for the position, and each panel member determined that Nyunt's voicing skills were not superior to Myint's.  Irena Burgener stated that Myint's "ability to speak and comprehend English seemed perfectly fine.  I do not think that there was a considerable difference between him and Mr. Nyunt."  Def.'s Opp. Ex. N at 3.  Bageshwar Verma stated that "as to the issue of whether Mr. Nyunt spoke or understood English better than Mr. Myint, I found them to be equal."  Def.'s Opp. Ex. S at 2.  And lastly, Htay determined that Myint's "voicing skills [were] on par if not better than Mr. Nyunt."  Def.'s Opp. Ex. T at 3.

Although Nyunt is also understandably upset by the calculation error that led to a misrepresentation of his rating on the Certificate of Eligibles for VA 03-26, nothing in the record indicates that this was anything other than an honest mistake.  Def.'s Reply Ex. 2 at 26.  And because plaintiff remained ranked among the top three applicants, even with an erroneous score of 89 instead of 96, he was not adversely impacted by this error.  He was still selected for an interview and was considered for the position.  Def.'s Opp. Ex. U at 2.  After he filed a complaint with the Office of Personnel to check the calculation of his score, his file was modified to reflect his actual rating of 96.  Id.

Relying on Salazar v. WMATA, 401 F.3d 504 (D.C. Cir. 2005), Nyunt's last argument relating to VA 03-26 is that Htay both prepared the interview questions and sat on the interview panel.  But this case is a far cry from the situation in Salazar.  There is no indication that Htay discriminated against people based upon their national origin or age, and Nyunt had made no

complaints about Htay prior to the selection process.  Unlike in <u>Salazar</u>, there is no indication

that Htay "placed himself squarely at the center of a process designed to exclude him," and there

is no indication that Htay attempted improperly to influence the other panel members.  <u>Id.</u> at 508.

Turning then to VA 03-29, Nyunt again asserts arguments that Than was pre-selected and

that the job position was tailored for him.  As the Court has explained above, without evidence of

a discriminatory motive, favoritism is not actionable under Title VII.  Nyunt also argues that

discrimination can be inferred from the fact that no interviews were conducted for VA 03-29.

However, he fails to cite anything that would have required that an interview be conducted.  To

the contrary, the Board cites a memorandum that explicitly states: "Interviews are optional . . . ."

Def.'s Opp. Ex. I at 3.

Lastly, Nyunt complains about the fact that his application was considered at the same

time as Than's.  According to Nyunt, he submitted his application on the last date for the first

batch of applications and Than submitted his application four days later in the second batch of

applications.  Thus, he argues that his application "should have been evaluated in the first tranche

without competition from applicants in later periods like [Than]."  Pl.'s Opp. at 14.  But Nyunt

fails to cite any law or regulation that would require the Board to proceed in this manner.  Indeed,

the Board's staffing specialist has stated that when the pool of applicants is small the agency

regularly combines two or more batches of applications before sending them to the managers to

review.  Def.'s Reply Ex. 2 at 30.  The Director of Human Resources has further stated that it "is

a typical business practice of the agency's personnel office to hold off on issuing certificate of

eligibles to selecting officials until after a cut off date has passed and other applications have

been received."  Def.'s Opp. to Pl.'s Surreply Ex. A ¶ 4.  Moreover, the Board cites four examples

where all applications were considered together even though some were filed after the original cutoff date. Id. Hence, the mere fact that Nyunt's application was considered together with Than's does not provide any evidence of pretext.

Considering the entire record, the strength of Nyunt's prima facie case, the strength of the Board's legitimate, non-discriminatory rationale, and the arguments relating to pretext, the Court finds that a reasonable jury could not conclude from all of the evidence that the challenged adverse employment decisions were made for a discriminatory reason. The Board's legitimate, non-discriminatory rationale is overwhelming in comparison to the scant evidence upon which Nyunt relies. Cutting further against a finding of age discrimination is the fact that Myint was selected at the age of 69, when he was eleven years older than Nyunt. And cutting further against a finding of national origin discrimination is the fact that both Myint and Than are of Burmese national origin like Nyunt. Indeed, the record reflects that numerous applicants and existing employees involved in the selection were of Burmese national origin as the vacant positions were in the Burmese Service of VOA. To the extent that Nyunt is actually complaining about disparate treatment based upon citizenship, Title VII provides no protection for such a claim. See E.E.O.C. v. United Air Lines, Inc., 287 F.3d 643, 650 (7th Cir. 2002) ("There is no question that, if the charge alleged only citizenship discrimination, it would be outside the scope of Title VII.") (citing Espinoza, 414 U.S. at 95 ("[N]othing in the Act makes it illegal to discriminate on the basis of citizenship or alienage.")); Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am., 950 F.2d 389, 391 (7th Cir. 1991) ("Title VII forbids discrimination on the basis of national origin, not of citizenship."). For all these reasons, summary judgment in the Board's favor will be granted on Nyunt's Title VII claim of national origin discrimination and on the ADEA

discrimination claim.

### III.    Failure to Establish Standing for Count V

Count V of Nyunt's complaint is brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(C), and 22 U.S.C. § 1474(1).  Under 22 U.S.C. § 1474(1), the BBG is granted the authority to "employ, without regard to the civil service and classification laws, aliens within the United States and abroad for service in the United States relating to the translation or narration of colloquial speech in foreign languages or the preparation and production of foreign language programs when suitably qualified United States citizens are not available when job vacancies occur."  Nyunt argues that the "suitably qualified" language clearly evinces Congressional intent for the Board to give a preference to qualified U.S. citizens when they are available for a vacant position regardless of the qualifications of non-citizen applicants.  The Board, on the other hand, argues that the term "suitably qualified" is ambiguous and that the agency has reasonably interpreted the phrase to require U.S. citizens to be "equally or better qualified" than non-citizen applicants.  Nyunt contends that the Board's interpretation is contrary to its statutory authority, and that the Board has therefore acted in violation of the APA.  See 5 U.S.C. § 706(2)(C).

The APA only operates as a waiver of sovereign immunity for claims seeking non-monetary relief against a United States agency or officer acting in an official capacity.  See 5 U.S.C. § 702 (allowing "[a]n action in a court of the United States seeking relief other than money damages"); Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984).  Although Nyunt seeks monetary relief for other claims asserted in his complaint, he cannot seek monetary relief under Count V.  Instead, he is limited to declaratory and injunctive relief.  Specifically, he

requests that a declaratory judgment be entered, finding the Board's interpretation of 22 U.S.C. §
1474(1) to be contrary to the statutory language, and he also seeks an injunction to prohibit the
Board from relying on its interpretation in the future.  He does not seek any relief tailored to
himself -- such as placement in the VA 03-29 position.  The relief he seeks, then, is merely
prospective and meant to address potential Board violations that may occur in the future.
Naturally, the question arises as to whether Nyunt is a proper plaintiff to pursue the claim
asserted in Count V.

Hence, before addressing the merits of this claim, the Court must undertake an
independent obligation "to ensure that it is acting within the scope of its jurisdictional authority."
Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); see
also Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior, 252 F.3d 473, 479 (D.C. Cir.
2001); Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).  The
authority of the judiciary is limited by Article III of the Constitution to the "resolution of 'cases'
and 'controversies.'"  Valley Forge Christian College v. Americans United for Separation of
Church and State, Inc., 454 U.S. 464, 471 (1982).  This principle of limited judicial authority is,
in part, manifest by the requirement that a litigant must have standing to bring an action, and thus
be "entitled to have the court decide the merits of the dispute or of particular issues."  Warth v.
Seldin, 422 U.S. 490, 498 (1975).  The standing inquiry asks "whether the plaintiff has 'alleged
such a personal stake in the outcome of the controversy' as to warrant his invocation of
federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  Id.
(quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

Standing is a requirement, therefore, that every litigant in a federal lawsuit must satisfy.

It is a burden borne by the plaintiff and each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At a minimum, a plaintiff must establish three elements: (1) that he "suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical' . . . ," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 560 (citations and quotations omitted).[2]

    The only injury Nyunt alleges here is his past injury -- that of not obtaining the International Broadcaster position designated under VA 03-29, which was extended to Than, a non-citizen. Based on this injury alone, Nyunt's standing stumbles at the causation prong of the analysis. Nyunt has difficulty demonstrating that his injury is "fairly . . . trace[able] to the challenged action of the defendant." Id. Indeed, three U.S. citizens applied for and were found qualified for the position in question. Even if non-citizens were not considered for the position, Nyunt has presented no evidence to demonstrate that he would have been the U.S. citizen selected for VA 03-29. Hence, Nyunt has difficulty showing that his injury -- the failure to obtain the job -- was caused by the Board's interpretation of 22 U.S.C. § 1474(1). Moreover,

_____

    [2]Although the "normal standards for redressability and immediacy" may be relaxed when Congress has given a class of persons a procedural right to enforce, Nyunt does not argue that he is vested with such a procedural right here. St. John's United Church of Christ v. Fed. Aviation Admin., No. 06-1386, slip op. at 6 (D.C. Cir. Mar. 21, 2008) (quoting Massachusetts v. EPA, 127 S. Ct. 1438, 1453 (2007)). He points to no statutory language which would allow a citizen suit to vindicate the alleged injury he suffered.

Nyunt has not demonstrated that the remedy he seeks would likely redress his alleged injury. He does not seek the VA 03-29 position, and he does not allege that the prospective declaratory and injunctive relief he requests would affect him in any manner. If the Court granted the requested relief, it would not remedy Nyunt's actual injury of failing to obtain the announced position in VA 03-29.

In sum, then, there is no live case or controversy to which this Court can extend its judicial powers. "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law . . . ." Valley Forge Christian College, 454 U.S. at 471. Nyunt's past injury would not be redressed by the declaration or injunction he seeks, and Nyunt alleges no future plans that would be impacted by the relief he seeks. Because "[t]he power to declare the rights of individuals and to measure the authority of governments . . . 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy'" -- which is lacking here -- the Court may not reach the merits of Count V. Id. (quoting Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345 (1892)).[3]

_____

[3]Although Nyunt does not appear to argue that the agency's alleged violation of 22 U.S.C. § 1474(1) supports his discrimination claims, the Court notes that such an argument could not prevail. The agency's widespread and possibly erroneous application of the statute would not support an inference of discrimination. As another court in this district has noted: "At most, it would show that the BBG's erroneous policy had become the norm, such that Plaintiff's non-selection was consistent with BBG policy." Wada v. Tomlinson, 517 F. Supp. 2d 148, 191 (D.D.C. 2007) (citing Fischbach v. D.C. Dep't of Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("[T]he Department's having followed a procedure other than that prescribed by its regulations lends no support at all to the plaintiff's inference that its stated reason for choosing [someone else over him] is a pretext. In fact, the procedure that the Department followed was reasonable and was, according to undisputed testimony, its usual procedure. That is, departure from the prescribed procedure had become the norm. In these circumstances, we see no basis for concluding that the procedure the Department followed was implausible or that the Department

## CONCLUSION

For the foregoing reasons, the Court will deny Nyunt's motion for partial summary judgment, and will grant the Board's motion to dismiss or, in the alternative, for summary judgment.  A separate order accompanies this memorandum opinion.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   March 21, 2008


---

did not, in fact, rely upon it.")).

The Court will dismiss Nyunt's claim in Count VI of his complaint regarding the allegedly unauthorized promotion of Than to a GS-13 supervisory position.  Nothing in 22 U.S.C. § 1474 supports the broad argument that the "BBG lacks authority to promote non-citizens to supervisory positions."  Indeed, the statute places no limits on the grade or description of a position that a non-citizen may hold.  Instead, the statute merely speaks to the general employment of non-citizens when suitably qualified citizens are available.  Here, Nyunt has not alleged that a suitably qualified U.S. citizen was available for the supervisory position.